

# EXHIBIT W

REDACTED

# EXHIBIT X

WILMERHALE

March 24, 2006

Amy Kreiger Wigmore

+1 202 663 6096 (t)
+1 202 663 6363 (f)
amy.wigmore@wilmerhale.com

***Via Facsimile and First-Class Mail***
Karen M. Robinson
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, DC 20005

Re: *Smith Kline & French Laboratories, LTD and SmithKline Beecham Corp., d/b/a*
    *GlaxoSmithKline v. Teva Pharmaceuticals USA, Inc.*, Civil Action No. 05-197 (D. Del.)

Dear Karen:

I am writing to follow up on our response to your letter of March 15, 2006, in which you
requested information regarding several individuals whose depositions Teva wishes to take in
this action.

J. Paul Hieble, Carol Harvey, and William Huffman are current employees of GSK. Mr. Hieble,
Ms. Harvey, and Mr. Huffman are willing to appear for their respective depositions at
WilmerHale's Washington, DC office. Although the dates you suggest in their letter are not
workable, we are in the process of identifying alternative dates for these depositions in the
second half of April and in May. We suggest that the scheduling of these depositions be handled
through a meet and confer process that includes the scheduling of the depositions of Teva
witnesses whom GSK wishes to depose, as set forth in Michael Gordon's letter to you dated
March 22, 2006.

Gregory Gallagher is a former employee of GSK. He will be represented by WilmerHale for
purposes of his deposition in this matter. Mr. Gallagher resides in Florida, but he is willing to
voluntarily appear for his deposition at our offices in Washington, DC. He is unavailable the
week of April 24, but we can discuss alternative dates in our meet and confer.

David Owen is a former employee of GSK. He resides in the United Kingdom. As such, Teva is
technically required to go through Hague Convention procedures to seek his deposition in this
matter. Nevertheless, Mr. Owen is willing to voluntarily appear for a deposition in this action at
our London office on May 26, 2006. Mr. Owen will be represented by WilmerHale for purposes
of his deposition in this action.

Brenda Costall is not an employee of GSK. She resides in the United Kingdom. As such, Teva
is technically required to go through Hague Convention procedures to seek her deposition in this
matter. Nevertheless, Ms. Costall is willing to voluntarily appear for a deposition in this action
at our Washington, DC office on May 5, 2006. Ms. Costall will be represented by WilmerHale
for purposes of her deposition in this action.

Karen M. Robinson
March 24, 2006
Page 2

**WILMERHALE**

Roger Eden is a former employee of GSK.  He is a resident of the United Kingdom.  We understand that Mr. Eden is traveling until next week, and we plan to contact him then.  We will let you know whether Mr. Eden will voluntarily appear for a deposition (and, if so, when and where) and whether he will be represented by WilmerHale once we have had the opportunity to speak with him.

Please let me know as soon as possible what information you have gathered regarding the availability of the Teva witnesses identified in Mr. Gordon's March 22 letter, including the name(s) and availability of Teva's 30(b)(6) corporate designee(s).  Please also let me know when you are available for a meet and confer call to discuss deposition scheduling.

Sincerely,

Amy K. Wigmore

# EXHIBIT Y

Westlaw.

--- F.3d ----                                              Page 1
--- F.3d ----, 2006 WL 1775433 (C.A.10 (Okla.))
(Cite as: --- F.3d ----)

**C**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States Court of Appeals,Tenth Circuit.
Terry MINTER, Plaintiff-Appellant,
v.
PRIME EQUIPMENT COMPANY, a Texas
corporation, Defendant-Appellee.
No. 04-7011.

June 29, 2006.

**Background:** Professional painter who was severely
injured after falling from an elevated work platform
filed a personal injury lawsuit against the
manufacturer and distributor of the work platform in
state court. Painter voluntarily dismissed state court
claim and refiled in federal court. The United States
District Court for the Eastern District of Oklahoma,
Kimberly E. West, United States Magistrate Judge,
dismissed products liability claim, and following a
jury trial, the jury found for distributor on failure to
warn claim. Appeal was taken.

**Holdings:** The Court of Appeals, McConnell, Circuit
Judge, held that:

1(1) claim by painter to pursue an alteration product
liability claim against seller of the scissor lift was not
"untimely" or "unduly delayed," as required to
amend complaint to add the claim;

2(2) alteration product liability claim would not
unduly prejudice seller;

3(3) actions by safety inspector of scissor lift in
replacing chainlink entry with a solid metal guardrail
did not fall within the impeachment exception to rule
prohibiting admission of subsequent remedial
measures; and

4(4) evidence of painter's failure to wear a safety belt
and hard hat evidence was relevant to the specific
causation issues raised by failure to warn claim.

Affirmed in part, reversed in part, and remanded.

**[1] Federal Civil Procedure 170A ☞840**

170A Federal Civil Procedure
    170AVII Pleadings and Motions
        170AVII(E) Amendments
            170Ak839 Complaint
                170Ak840 k. Time for Amendment.
Most Cited Cases
Claim by professional painter who was severely
injured after falling from an elevated work platform
to pursue an alteration product liability claim against
seller of the scissor lift was not "untimely" or
"unduly delayed," as required to amend complaint to
add the claim; when the painter filed his complaint
the evidence supplied by the defendants led him to
believe that manufacturer had manufactured and sold
the scissor lift in a defective condition and for the
first five years of litigation, the seller maintained that
it had bought the lift from manufacturer without a
solid guardrail, and presented evidence to that effect.
Fed.Rules Civ.Proc.Rule 15(a), 28 U.S.C.A.

**[2] Federal Civil Procedure 170A ☞841**

170A Federal Civil Procedure
    170AVII Pleadings and Motions
        170AVII(E) Amendments
            170Ak839 Complaint
                170Ak841 k. New Cause of Action in
General. Most Cited Cases
Seller of allegedly defective scissor lift would not be
unduly prejudiced by an added claim by professional
painter who was severely injured after falling from an
elevated work platform for alteration product
liability; similarities between the complaint and the
amended claim were obvious and the complaint
asserted a negligence claim against seller for failing
to "properly inspect, repair and maintain the lift" and
the new claim was for "materially altering the subject
scissor lift by removal of the solid guardrail safety
feature;" thus, while the two claims were different in
form, there was a significant overlap in the factual
underpinnings and defenses. Fed.Rules Civ.Proc.Rule
15(a), 28 U.S.C.A.

**[3] Evidence 157 ☞219.25(3)**

157 Evidence
    157VII Admissions
        157VII(A) Nature, Form, and Incidents in
General
            157k219.10 Subsequent Remedial Measures

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ---
--- F.3d ----, 2006 WL 1775433 (C.A.10 (Okla.))
(Cite as: --- F.3d ----)

157k219.25 Establishing Negligence or Culpable Conduct
157k219.25(3) k. Change of Design or Product. Most Cited Cases
Actions by safety inspector of scissor lift in replacing chainlink entry with a solid metal guardrail did not fall within the impeachment exception to rule prohibiting admission of subsequent remedial measures in action brought by professional painter who was seriously injured when he fell from the scissor lift equipped with chainlink entry installed; inspector did not dispute that a solid guardrail would reduce the danger of falls for lift operators who might otherwise forget to latch the chainlink entry or fail to do so properly. Fed.Rules Evid.Rule 407, 28 U.S.C.A.

[4] Products Liability 313A ☜➾81.1

313A Products Liability
    313AII Actions
        313Ak81 Admissibility of Evidence
            313Ak81.1 k. In General. Most Cited Cases
Evidence of painter's failure to wear a safety belt and hard hat was relevant to the specific causation issues raised by failure to warn claim, stemming from accident wherein painter fell from elevated platform and sustained serious injuries; the evidence had sufficient relation to the question of whether painter would have heeded an adequate warning had one been in place.

[5] Negligence 272 ☜➾413

272 Negligence
    272XIII Proximate Cause
        272k410 Failure to Act; Omissions
            272k413 k. Failure to Warn or Inadequate Warning. Most Cited Cases

Products Liability 313A ☜➾15

313A Products Liability
    313AI Scope in General
        313AI(A) Products in General
            313Ak15 k. Proximate Cause and Foreseeable Injury; Intended or Foreseeable Use. Most Cited Cases
Oklahoma law requires the plaintiff, in a failure to warn lawsuit, to "establish that the failure to warn was a proximate, producing cause of the injuries received."

Oklahoma law requires the plaintiff, in a failure to warn lawsuit, to "establish that the failure to warn was a proximate, producing cause of the injuries received."

John H. Tucker (Colin H. Tucker and Bradley S. Shelts with him on the briefs) of Rhodes, Hieronymus, Jones, Tucker & Gable, Tulsa, OK, for Plaintiff-Appellant.
James W. Connor, Jr. (Rachel C. Mathis and Thomas D. Hird with him on the brief) of Richards & Connor, Tulsa, OK, for Defendant-Appellee.

Before LUCERO, McKAY, and McCONNELL, Circuit Judges.
McCONNELL, Circuit Judge.
*1 Terry Minter, the plaintiff-appellant, is a professional painter who was severely injured after falling from an elevated work platform. He filed a personal injury lawsuit against the manufacturer and distributor of the work platform. Although his complaint centered on design and manufacturing defect claims, a series of procedural maneuvers before trial left him with only a failure to warn claim against the distributor. The jury found for the defendant on the failure to warn claim. Mr. Minter appeals that judgment, as well as the district court's ruling that left him with only one claim. We must decide whether the district court abused its discretion by dismissing the plaintiff's product liability claim against the distributor for untimeliness and lack of notice and by not allowing an amendment to the complaint; whether the district court wrongfully excluded from trial the evidence of the distributor's subsequent remedial measures; and whether the district court improperly allowed evidence of comparative negligence into a strict liability failure to warn case.

We affirm in part, reverse in part, and remand for new proceedings in accordance with this opinion.

I. BACKGROUND

Terry Minter was hired to work as a painter at a construction site in Tulsa, Oklahoma. On the morning of July 14, 1996, he was using a "scissor lift"-a type of industrial lift that raises and lowers a platform used for work positioning-to enable him to paint the underside of a roof at the site. While working from atop the scissor lift, Mr. Minter accidentally stepped off the side of the lift platform and fell twenty feet to the ground. The impact fractured his skull, damaged his spinal cord, and resulted in permanent paralysis

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ---
--- F.3d ----, 2006 WL 1775433 (C.A.10 (Okla.))
**(Cite as: --- F.3d ----)**

from the waist down.

Mr. Minter maintains that his accident was caused by a defect in the scissor lift. At the time of the incident, he was using a 1987 "Barecat" model scissor lift manufactured by Economy Company ("Economy"), a foreign corporation. The Barecat lift was designed to have a solid metal guardrail around the entire perimeter of the lift platform. On the lift Mr. Minter was using, one of the sides had a chainlink closure instead of a solid guardrail. Mr. Minter failed to properly latch the chainlink closure on the morning of the accident, [FN1] which allowed him to step unintentionally off the platform and fall to the ground. The gravamen of the lawsuit is that the solid guardrail is a necessary part of the Barecat scissor lift's fall protection system because it is welded in place and cannot be mistakenly left open by the user. Mr. Minter argues that if there had been a solid guardrail at the lift's entrance instead of the chainlink closure, his accident would not have happened.

### The State Court Proceedings

On April 2, 1997, Mr. Minter filed a personal injury suit in the Tulsa County District Court in Oklahoma. Case No. CJ-97-01615. His complaint asserted products liability and negligence claims against the manufacturer, Economy, for failure to use reasonable care in designing, manufacturing, inspecting, and testing the scissors lift, and for failure to warn of defects in the lift. It also asserted strict liability and negligence claims against Appellee Prime Equipment Company ("Prime Equipment"), a Texas-based corporation that leases, sells, and services Economy machinery. The pleadings named four other defendants as well: G & G Leasing, the owner of the lift; Marrs Electric, Inc., the party leasing the lift at the time of the accident; Manhattan Construction, Inc., the general contractor on the site; Sundial Painting, Inc., Mr. Minter's employer; and Silverado Foods, Inc., the owner of the building where Mr. Minter was working.

\*2 At the time he filed the lawsuit, the plaintiff believed that Prime Equipment's role in the accident was limited to its maintenance and repair work on the lift. He therefore based his claim against Prime Equipment on the company's alleged failure to properly "inspect, repair, and maintain the scissors lift" when it was brought in for an annual safety inspection, in addition to its alleged failure to warn. Appellant's App. 158. During discovery, however, the plaintiff learned that Prime Equipment had owned

the scissor lift between 1987, the year the lift was manufactured, and August 1991, when Prime Equipment sold the lift to G & G Leasing. Prime Equipment was therefore in the chain of distribution for purposes of the manufacturer product liability claim against Economy.

On July 8, 1998, Mr. Minter amended his complaint to include a retailer product liability claim against Prime Equipment. Prime Equipment disclaimed any responsibility for removing the solid guardrail, and one of its employees testified that Prime Equipment bought the lift from Economy with the chainlink entry already installed. The plaintiff responded that, under Oklahoma law, Prime Equipment was "liable under the theory of manufacturer's product liability" because "[t]he liability of the manufacturer and distributor/retailer is coextensive, even though the latter may not be responsible for the existence or presence of a defect." Appellant's App. 194.

Prime Equipment defended itself against both the retailer product liability claim and the negligence claim. It responded to the product liability claim by challenging the qualifications and testimony of the only expert witness to testify on behalf of Mr. Minter that the lift was defective. Prime Equipment also introduced its own expert witnesses to testify that the lift was neither defective nor unreasonably dangerous. Those defense witnesses opined that the lift was safe when used properly, and that the American National Standard Institute's (ANSI) voluntary industry standards did not require solid guardrails until 1991, several years after the subject scissor lift was manufactured. Prime Equipment also presented evidence that Mr. Minter caused his own injuries; namely, that he failed to latch the chainlink closure or use a safety harness. Prime Equipment also filed a cross claim against Economy seeking indemnity for any liability arising out of a product liability judgment.

In response to the negligence claims, Prime Equipment relied on its defense to the product liability claim, and also prepared defenses based on comparative negligence and assumption of risk. In this connection, Prime Equipment planned to introduce evidence of Mr. Minter's history of marijuana use during work hours. Mr. Minter admitted during his deposition that he "occasionally" consumed marijuana while at work, and his medical report from after the accident showed that he had THC metabolites in his urine, which indicate recent exposure to marijuana. Mr. Minter testified that he was sober at the time of the accident and that the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ---
--- F.3d ---, 2006 WL 1775433 (C.A.10 (Okla.))
(Cite as: --- F.3d ---)

THC metabolites in his urine were from using marijuana two days before his fall. The defendants intended to introduce the evidence at trial, however, and let a jury decide whether Mr. Minter was intoxicated on the morning of the accident.

*3 The state court never had an opportunity to address the merits of Mr. Minter's product liability and negligence claims. After four years of litigation, the plaintiff settled with G & G Leasing, Manhattan Construction, Sundial Painting and Silverado Foods. Once those parties were dropped from the litigation, there was complete diversity of citizenship between the plaintiff and the defendants. On March 20, 2001, the plaintiff voluntarily dismissed his state court complaint against the two remaining defendants, Prime Equipment and Economy, in order to refile in federal court.

### The Federal District Court Proceedings

Mr. Minter retained new counsel and refiled in the United States District Court for the Eastern District of Oklahoma on March 20, 2002, exactly one year after the voluntary dismissal of his state court action. The federal complaint was significantly shorter than his state court complaint had been. Instead of compartmentalizing his various claims into categories of negligence, strict liability, and product liability, the federal complaint simply stated that Mr. Minter's injuries were caused by "defects in the design and manufacture of a scissor lift designed, manufactured and sold by Economy," and by "the failure of Prime Equipment Co., the owner, to properly inspect, repair and maintain the lift." Complaint 1. It also alleged that both defendants had failed "to warn Mr. Minter of dangers in the subject scissor lift." Id.

In what turns out to be an important fact in this appeal, Mr. Minter's federal complaint did not expressly set forth a product liability claim against Prime Equipment based on the company's alleged responsibility for alteration of the lift's guardrail system. The complaint did refer to Prime Equipment as having been "the owner" of the lift,[FN2] which put Prime Equipment in the chain of distribution of his product liability claim against Economy. This might arguably have been sufficient under the liberal pleading standards of Federal Rule of Civil Procedure 8 to provide notice of a retailer product liability claim against Prime Equipment. But there is no explicit mention in the complaint of a product liability claim based on alterations made to the lift after its manufacture.

On June 10, 2002, the parties submitted a Planning Meeting Report to the district court. The Report contained a summary of Mr. Minter's claims. This, too, made no mention of either a retailer or alteration product liability claim against Prime Equipment. The Report read as follows:
Summary of Claims:
Against defendant Prime Equipment Co.: Failure to inspect, repair and maintain scissors lift. Failure to warn.
Against defendant Economy Co.: Defective design and manufacture of scissors lift. Failure to warn.

Appellee's Supp.App. 3. Similarly, in his interrogatory answers, Mr. Minter based his claim against Prime Equipment on its alleged failure "to properly inspect, repair and maintain the scissor lift" rather than on a product liability theory. Id. at 37-38. The plaintiff did, however, describe his negligent repair and maintenance claim as predicated on the fact that the scissor lift, "as provided to [him,] was in a condition" that "was contrary to established safety standards" because it had "a detachable chain link fitted in place of a solid steel guardrail." Id.

*4 Once the case was in federal court, all three parties agreed to use the discovery material produced in the state court action. Mr. Minter and Prime Equipment also introduced additional expert witness testimony regarding the safety of the lift. The plaintiff's new expert claimed that the replacement of the solid guardrail with a chainlink closure rendered the lift unreasonably dangerous and defective. Prime Equipment filed reports from two new expert witnesses who stated that the lift was "safe for its intended use"; that the chainlink modification "did not violate any ANSI or OSHA Standards applicable to the lift" at the time of manufacture; that the lift was "not defective [when] equipped with ... properly used access point chains" instead of a solid guardrail; and that Mr. Minter caused the accident. Appellant's App. 42-43, 50-51.

Shortly before the scheduled start of trial, the defendants came forward with a new revelation about the history of the scissor lift's guardrail system. Throughout the preceding five years of litigation, Prime Equipment had always maintained that the manufacturer, Economy, was responsible for installing the chainlink entry on the lift. On June 12, 2003, however, three weeks before the scheduled start of trial, Prime Equipment and Economy entered a Joint Stipulation stating that Economy was not responsible for the missing solid guardrail at the lift's

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----

Page 5

--- F.3d ----, 2006 WL 1775433 (C.A.10 (Okla.))

(Cite as: --- F.3d ----)

entrance. The Joint Stipulation stated that the "Scissor Lift was manufactured by the Defendant, Economy Company, with four solid side rails," and that the "scissor lift's condition was substantially and materially altered after the lift left Defendant Economy's possession and was sold...." Appellant's App. 73. Moreover, Prime Equipment produced a new expert witness report along with the Joint Stipulation stating that the lift was manufactured with a solid guardrail around the entire perimeter of the lift platform. At the same time, Prime Equipment filed an evidentiary motion that stated that "Plaintiff is pursuing Prime [Equipment] on a negligence theory only." Appellee's Supp.App. 10. In combination, these positions had the potential to erase from the litigation Mr. Minter's product liability claim based on the allegedly defective guardrail system: the Joint Stipulation absolved Economy of responsibility and the evidentiary motion took the position that any responsibility that Prime Equipment might have for altering the guardrail system was beyond the scope of plaintiff's negligence theory.

Six days after the defendants filed the Joint Stipulation, the district court unexpectedly transferred the case to a different Judge. As a part of the transfer, the district court struck all of the pending motions and scheduled dates previously set in the case. A status conference was held before the new judge on July 1, 2003, at which time the court ordered that all previously decided motions in the case be re-urged before the court. The court set the deadline for amendments to the pleadings for July 16, 2003, and scheduled jury selection for December 1, 2003 and the start of trial for December 15, 2003.

*5 The parties resubmitted their Report on the Planning Meeting on July 7, 2003. The new Report was a copy of the one filed a year earlier,[FN3] and therefore included the "Summary of Claims" section that failed to mention an alteration product liability claim against Prime Equipment.

On October 30, 2003, the parties filed their evidentiary motions. Mr. Minter filed motions in limine to exclude evidence of his marijuana use and his failure to wear a hard hat or safety belt on the day of the accident. Prime Equipment filed a motion to exclude evidence that it had replaced the chainlink closure with a solid guardrail after the accident. In that motion, Prime Equipment again stated that "Plaintiff is pursuing Prime [Equipment] on a negligence theory only." Appellee's Supp.App. 19.

The parties met in mid-November to discuss jury

instructions and draft a proposed pretrial order. At that meeting, the plaintiff notified Prime Equipment that it intended to include a product liability claim against Prime Equipment for altering the guardrail on the lift. Prime Equipment told the plaintiff that it would object to inclusion of that claim.

The parties submitted their proposed pretrial order to the district court on November 24, 2003, two hours before the pretrial conference. The proposed order contained the plaintiff's claim that Prime Equipment "materially altered the subject scissor lift by removal of the [ ] solid guardrail safety feature rendering the product defective and unreasonably dangerous at the time of sale." Pretrial Order 3. It also contained Prime Equipment's objection to the claim as a "belated attempt to add a products liability claim against it, for the very first time in th[e] Pretrial Order." *Id.* at 6. The district court did not sign the pretrial order at that time.

At the conclusion of the pretrial conference, the district court issued its ruling on the pending evidentiary motions. The court denied the plaintiff's motion to exclude evidence of his marijuana use on the ground that it was relevant for evaluating Prime Equipment's comparative negligence and assumption of risk defenses. It also denied the plaintiff's motion to exclude evidence that he was not wearing a hard hat or safety belt at the time of the accident, holding that such evidence was relevant "to show Plaintiff's conduct in the workplace." The court granted Prime Equipment's motion to exclude evidence of its subsequent remedial measures to the lift.

On the morning of December 1, 2003, with the dispute over the alteration product liability claim still unresolved, the district court signed and entered the pretrial order. It contained the plaintiff's product liability claim against Prime Equipment arising from the "material alterations" to the lift, along with a motion by Prime Equipment to strike the claim. The pretrial order also specified that the parties would not dispute that the lift was "manufactured and sold by Economy Co. with a solid guardrail around entire upper perimeter of the scissor lift platform," or that Prime Equipment "sold the scissor lift to G & G Leasing" with "the solid guardrail ... removed from the entry end and replaced with a[ ] chain entry." Appellant's App. 86.

*6 After the district court entered the pretrial order into the record, the plaintiff announced that he was voluntarily dismissing his negligence claim against Prime Equipment. He then asked the district court to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ---
--- F.3d ----, 2006 WL 1775433 (C.A.10 (Okla.))
(Cite as: --- F.3d ----)

Page 6

reconsider its ruling on the "very prejudicial" marijuana evidence, which he argued was irrelevant to the product liability claims. Prime Equipment responded that because all of the claims against it were based in negligence, and because the plaintiff had just dismissed all of his negligence claims, Prime Equipment should be dismissed from the lawsuit. The court took all of these matters under consideration.

On December 4, 2003, three days after voir dire, the court heard arguments regarding the status of the plaintiff's remaining claims against Prime Equipment and Economy. At the start of the hearing, the plaintiff stipulated to a dismissal of his design and manufacturing product liability claims against Economy, explaining that the evidence produced by both defendants now showed that Economy had manufactured and sold the lift with solid guardrails on all four sides. The only claim remaining against Economy was a product liability claim for failure to provide adequate warnings on the lift.

On December 12, 2003, three days before the start of trial, the district court ruled on the outstanding motions. It granted the plaintiff's motion to exclude the marijuana evidence. It also allowed Mr. Minter to proceed to trial against Prime Equipment with his failure to warn claim, which the court ruled was based on a product liability theory. However, the court granted Prime Equipment's motion to strike the alteration product liability claim, explaining that "any claim now asserted by Plaintiff for products liability stemming from the alteration of the subject lift is deemed to have never been a part of this action." Order 6. The court determined that none of the plaintiff's filings before the pretrial order provided notice of a product liability claim against Prime Equipment for altering the lift. It declared that the prejudice to Prime Equipment that would arise from allowing the claim is "obvious." *Id.* at 5. The court noted that "[t]he assertion of this claim [first] became apparent when the parties attempted to formulate a Pretrial Order. Contrary to this Court's Scheduling Order, [the] proposed Pretrial Order ... was not submitted to this Court until two hours before the scheduled Pretrial Conference." *Id.* at 5. Moreover, Prime Equipment had already entered into a Joint Stipulation with Economy stating that the scissor lift left Economy's control with all four solid guardrails in place, which meant that Prime Equipment could not file a cross-claim against Economy as it did in the underlying state court case. The court concluded that "[i]t is unlikely that Prime [Equipment] would have taken this somewhat curious measure unless it believed that a products liability claim had not been

stated against it." *Id.* at 6.

### The Trial

*7 Mr. Minter settled with Economy on the eve of trial. When the jury trial began on December 15, 2003, the only claim remaining in the action was therefore against Prime Equipment for failure to provide adequate warning of defects in the lift.

Before the start of opening arguments, the plaintiff tried again to add a product liability claim against Prime Equipment based on alterations made to the lift. He filed a Federal Rule of Civil Procedure 15(b) motion for an amendment to conform to the evidence, arguing that the amendment was "necessary to carry out [his] claim for relief" and would "not prejudice Prime [Equipment]'s defense of the products claim." Appellant's App. 262. The court determined that it was unable to rule on his Rule 15(b) motion at that time. Rule 15(b) authorizes the amendment of pleadings to conform to evidence presented at trial, *see* Fed.R.Civ.P. 15(b), and the plaintiff filed his motion before any evidence had been presented. The court told the parties that it would reserve its consideration of the motion until later in the case.

With no real alternative left, the plaintiff proceeded to trial with only a failure to warn claim against Prime Equipment. In presenting his case to the jury, the plaintiff argued that because the guardrail system had been altered, the original warnings posted by the manufacturer were no longer adequate, and Prime Equipment had an obligation to post additional warnings. As a result, much of the case still concerned the removal of the solid guardrail and whether the chainlink closure was unreasonably dangerous, even though the plaintiff could not assert an alteration product liability claim. Prime Equipment consistently objected to the introduction of evidence regarding the alteration on the ground that it was irrelevant to the failure to warn claim. The district court usually overruled the objection, but in each case it noted that the evidence was restricted to Mr. Minter's failure to warn claim. At the close of the plaintiff's case, the court denied the plaintiff's Rule 15(b) motion for leave to amend the pleadings to conform to the evidence.

Prime Equipment then proceeded to put on its defense. It called a number of rebuttal witnesses who testified about the safety of the lift and adequacy of the posted warnings. Prime Equipment also presented evidence that Mr. Minter had failed to latch the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2006 WL 1775433 (C.A.10 (Okla.))
**(Cite as: --- F.3d ----)**

chainlink closure, wear a hard hat, or use a safety belt. During closing arguments, Prime Equipment used this evidence to argue that Mr. Minter was responsible for his own injuries: "if Mr. Minter had latched the chains and/or put on the safety belt, the accident would not have occurred." Appellant's App. 572.

On December 18, 2003, the jury returned a verdict in favor of Prime Equipment on the failure to warn claim. The court entered the judgment on December 22, 2003. The plaintiff timely filed his notice of appeal.

### Appeal

Mr. Minter raises four issues on appeal. The first two relate to his alteration product liability claim against Prime Equipment: He asserts that the district court erred by granting Prime Equipment's motion to strike the product liability claim from the pretrial order, and that it erred again when it denied his Rule 15(b) motion to amend the pleadings to conform to the evidence. The second two issues relate to the district court's evidentiary rulings: The plaintiff contends that the court wrongfully excluded the evidence of Prime Equipment's subsequent remedial measures and that it improperly admitted the evidence that he failed to wear a hard hat or safety belt on the day of the accident.

### II. DISCUSSION

#### A. Amendment to the Pleadings

*8 [1] Mr. Minter's appeal centers on the district court's decision not to permit him to pursue an alteration product liability claim against Prime Equipment. Procedurally, this question arose in two orders of the district court: the order striking the plaintiff's products liability claim from the pretrial order, and the order denying his Rule 15(b) motion to amend the complaint to conform to the evidence. Mr. Minter raises both issues on appeal, but needs to prevail on only one. We address his argument that the district court erred in striking the alteration product liability claim from the pretrial order. For purposes of this opinion, we assume without deciding, that Mr. Minter did not properly plead the alteration product liability claim in his federal court complaint, and that the proposed pretrial order was the first time Mr. Minter raised the alteration claim.

Federal Rule of Civil Procedure 15(a) provides that, after a responsive pleading has been served, a party may amend its pleading "only by leave of court or by written consent of the adverse party." The Rule specifies that "leave shall be freely given when justice so requires." Although the plaintiff included his products liability claim against Prime Equipment in the proposed pretrial order without filing a formal Rule 15(a) motion to amend the complaint, "[w]hen an issue is set forth in the pretrial order, [w]e it is not necessary to amend previously filed pleadings because the pretrial order is the controlling document for trial." _Wilson v. Muckala_, 303 F.3d 1207, 1215 (10th Cir.2002) (internal quotation marks omitted). Consequently, Mr. Minter's attempt to add a new claim to the pretrial order was the equivalent of asking leave to amend his complaint, and must be evaluated by the court under the standards set forth in Rule 15(a). _See Wilson_, 303 F.3d at 1215; 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, _Federal Practice and Procedure_ § 1525 (2d ed.1990).

"[T]he grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court," _Zenith Radio Corp. v. Hazeltine Research, Inc._, 401 U.S. 321, 330, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971), and we will not reverse the court's decision "absent an abuse of discretion." _Wessel v. City of Albuquerque_, 299 F.3d 1186, 1197 (10th Cir.2002) (internal quotation marks omitted). But the Rule itself states that "leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). The purpose of the Rule is to provide litigants "the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." _Hardin v. Manitowoc-Forsythe Corp._, 691 F.2d 449, 456 (10th Cir.1982). In _Foman v. Davis_, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), the Supreme Court held:

If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.-the leave sought should, as the rules require, be "freely given."

*9 _Id._ at 182, 83 S.Ct. 227 (quoting Fed.R.Civ.P. 15(a)); _see also Duncan v. Manager, Dept. of Safety,_

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

397 F.3d 1300, 1315 (10th Cir.2005); _Frank v. U.S._
_West,_ 3 F.3d 1357, 1365 (10th Cir.1993). The district
court struck Mr. Minter's alteration product liability
claim from the pretrial order on the grounds that it
was prejudicial and untimely. Prejudice and
timeliness are obviously closely related, but we will
evaluate each.[FN4]

### 1. Timeliness

In _Foman,_ the Supreme Court listed "undue delay" as
one of the justifications for denying a motion to
amend. 371 U.S. at 182, 83 S.Ct. 227. Emphasis is on
the adjective: "Lateness does not of itself justify the
denial of the amendment." _R.E.B., Inc. v. Ralston_
_Purina Co.,_ 525 F.2d 749, 751 (10th Cir.1975). Rule
15(a) does not restrict a party's ability to amend its
pleadings to a particular stage in the action.
Fed.R.Civ.P. 15(a); _see also_ 6 Wright, Miller &
Kane, _Federal Practice and Procedure_ § 1488 (2d
ed.1990). However, "[a] party who delays in seeking
an amendment is acting contrary to the spirit of the
rule and runs the risk of the court denying permission
because of the passage of time." _Id._ The longer the
delay, "the more likely the motion to amend will be
denied, as protracted delay, with its attendant burdens
on the opponent and the court, is itself a sufficient
reason for the court to withhold permission to
amend." _Steir v. Girl Scouts of the USA,_ 383 F.3d 7,
12 (1st Cir.2004); _see also USX Corp. v. Barnhart,_
395 F.3d 161, 167 (3d Cir.2004) ("[D]elay alone is
an insufficient ground to deny leave to amend. At
some point, however, delay will become undue,
placing an unwarranted burden on the court, or will
become prejudicial, placing an unfair burden on the
opposing party." (internal citations and quotation
marks omitted)).

The courts of appeal are not in agreement regarding
the showing necessary to establish "undue" delay.
Some circuits hold that an amendment may be denied
for undue delay only if the trial court finds prejudice,
bad faith, futility, or (in some circuits) a substantial
burden on the court.[FN5] This Circuit, however,
focuses primarily on the reasons for the delay. We
have held that denial of leave to amend is appropriate
"when the party filing the motion has no adequate
explanation for the delay." _Frank v. U.S. West,_ 3 F.3d
1357, 1365-66 (10th Cir.1993); _see also Durham v._
_Xerox Corp.,_ 18 F.3d 836, 840 (10th Cir.1994)
("[U]nexplained delay alone justifies the district
court's discretionary decision."); _Fed. Ins. Co. v._
_Gates Learjet Corp.,_ 823 F.2d 383, 387 (10th
Cir.1987) ("Courts have denied leave to amend in

situations where the moving party cannot
demonstrate excusable neglect. For example, courts
have denied leave to amend where the moving party
was aware of the facts on which the amendment was
based for some time prior to the filing of the motion
to amend.").[FN6]

Courts will properly deny a motion to amend when it
appears that the plaintiff is using Rule 15 to make the
complaint "a moving target," _Viernow v. Euripides_
_Dev. Corp.,_ 157 F.3d 785, 800 (10th Cir.1998), to
"salvage a lost case by untimely suggestion of new
theories of recovery," _Hayes v. Whitman,_ 264 F.3d
1017, 1027 (10th Cir.2001), to present "theories
seriatim" in an effort to avoid dismissal, _Pallottino v._
_City of Rio Rancho,_ 31 F.3d 1023, 1027 (10th
Cir.1994), or to "knowingly delay[ ] raising [an]
issue until the 'eve of trial,'" _Walters v. Monarch_
_Life Ins. Co.,_ 57 F.3d 899, 903 (10th Cir.1995).

**\*10** Mr. Minter attempted to assert an alteration
product liability claim against Prime Equipment just
three weeks before the scheduled start of trial; and
the district court took note of his tardiness when it
struck the amended claim from the pretrial order.
Courts "do not normally expect to see claims or
defenses not contained in the pleadings appearing for
the first time in the pretrial order." _Wilson v._
_Muckala,_ 303 F.3d 1207, 1215-16 (10th Cir.2002). In
this case, however, the plaintiff has provided an
adequate explanation for the delay, and therefore his
alteration product liability claim is not "untimely" or
"unduly delayed."

When the plaintiff filed his complaint on March 20,
2002, the evidence supplied by the defendants during
discovery in the state case led him to believe that
Economy had manufactured and sold the scissor lift
in a defective condition. For the first five years of this
litigation, Prime Equipment maintained that it had
bought the lift from Economy without the solid
guardrail, and presented evidence to that effect. In
accordance with this apparent state of the facts, the
stripped-down complaint filed in federal court
included defective design and manufacturing claims
against Economy, while holding Prime Equipment
responsible for negligent maintenance and repair (in
addition to suing both for insufficient warnings). On
May 21, 2003, however, one week after the close of
discovery, Economy submitted an expert witness
report stating that the lift's guardrail system had been
altered sometime after leaving its control. Within a
month, Prime Equipment reversed its position and
stipulated that Economy manufactured and sold the
scissor lift with four solid guardrails. The plaintiff's

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

attempt to assert a new claim in the pretrial order-to shift from a manufacturer product liability claim against Economy to an alteration product liability claim against Prime Equipment-was a response to these late disclosures from Prime Equipment and Economy. Consequently, this case is distinguishable from those where courts denied leave to amend because the "plaintiff was aware of all the information on which his proposed amended complaint was based prior to filing the original complaint." _McKnight v. Kimberly Clark Corp._, 149 F.3d 1125, 1130 (10th Cir.1998).

During oral argument, Prime Equipment argued that the amendment was untimely because Mr. Minter waited more than six months after he learned of the Joint Stipulation before asserting the alteration product liability claim against it. The record shows that the plaintiff delayed in asserting the alteration product liability claim against Prime Equipment because he believed it was already fairly encompassed by his pleadings.[FN7] Indeed, on appeal the plaintiff continues to take that position, arguing that the district court erred in striking the products liability claim from the pretrial order. Although we do not reach that argument, in light of the liberal pleading requirements of Rule 8(a) we consider it a colorable argument. In retrospect, the plaintiff could have avoided this entire controversy if he had filed a formal motion to amend his complaint soon after the defendants entered into the Joint Stipulation. Nonetheless, his assumption regarding the scope of his original pleading constitutes an excusable cause for the delay, especially in light of the defendant's own dilatoriness in waiting until discovery was closed and the trial was shortly scheduled to begin to spring the fact that it was changing its position regarding a key fact in the case. Consequently, Mr. Minter's alteration product liability claim cannot be considered "untimely" or "unduly delayed."

## 2. Undue Prejudice

**\*11** The second, and most important, factor in deciding a motion to amend the pleadings, is whether the amendment would prejudice the nonmoving party. "Rule 15 ... was designed to facilitate the amendment of pleadings except where prejudice to the opposing party would result." _United States v. Hougham_, 364 U.S. 310, 316, 81 S.Ct. 13, 5 L.Ed.2d 8 (1960). _See also Evans v. McDonald's Corp._, 936 F.2d 1087, 1090-91 (10th Cir.1991) ("As a general rule, a plaintiff should not be prevented from pursuing a valid claim ..., provided always that a late

shift in the thrust of the case will not prejudice the other party in maintaining his defense upon the merits." (internal quotation marks omitted)); _Eastern Food Servs., Inc. v. Pontifical Catholic Univ. Servs. Ass'n_, 357 F.3d 1, 8 (1st Cir.2004) ("Once the adversary has answered, amendment is no longer allowed as of right, Fed.R.Civ.P. 15(a), but in general permission is liberally granted where there is no prejudice."); 6 Wright, Miler & Kane, _Federal Practice and Procedure_ § 1487 (2d ed. 1990) ("Perhaps the most important factor listed by the Court and the most frequent reason for denying leave to amend is that the opposing party will be prejudiced if the movant is permitted to alter his pleading.").

Courts typically find prejudice only when the amendment unfairly affects the defendants "in terms of preparing their defense to the amendment." _Patton v. Guyer_, 443 F.2d 79, 86 (10th Cir.1971). Most often, this occurs when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues. _Compare Hom v. Squire_, 81 F.3d 969, 973 (10th Cir.1996) (finding prejudicial a motion "to add an entirely new and different claim to [the plaintiff's] suit little more than two months before trial"), _with Gillette v. Tansy_, 17 F.3d 308, 313 (10th Cir.1994) (finding no evidence of prejudice when the "Petitioner's [amended] claims track the factual situations set forth in his [original] claims"), _Childers v. Indep. Sch. Dist. No. 1_, 676 F.2d 1338, 1343 (10th Cir.1982) (ruling that the district court's refusal to allow an amendment was "particularly egregious in this case because the subject matter of the amendment was already alleged in the complaint"), _and R.E.B., Inc. v. Ralston Purina Co._, 525 F.2d 749, 751-52 (10th Cir.1975) (finding no prejudice when "[t]he amendments did not propose substantially different issues").

**[2]** Prime Equipment repeatedly asserts that the addition of an alteration product liability claim to the pleadings would result in "obvious" prejudice to it, but offers little explanation as to how it would be prejudiced in light of the similarities between the complaint and the amended claim. The complaint asserted a negligence claim against Prime Equipment for failing to "properly inspect, repair and maintain the lift." Complaint 1. The new claim against Prime Equipment was for "materially alter[ing] the subject scissor lift by removal of the [ ] solid guardrail safety feature." Appellant's App. 81. While the two claims are different in form, there is a significant overlap in the factual underpinnings and defenses. Both claims rely on the proposition that Mr. Minter was injured

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

because "the scissor lift as provided to [him] was in a condition with a detachable chain link fitted in place of a solid steel guardrail[, which] ... was contrary to established safety standards." Appellee's Supp.App. 37-38. Moreover, most of Prime Equipment's defenses to the negligence claim apply with equal force to the product liability claim, including its defenses that the lift was safe for its intended use, that it did not violate the applicable ANSI or OSHA standards at the time of manufacture, that it was not defective or unreasonably dangerous, and that Mr. Minter's actions were the sole cause of the accident. Prime Equipment's only defense to the negligence claim that it could not use against the product liability claim is comparative negligence, which would include the marijuana evidence. Moreover, Prime Equipment defended against a retailer's product liability claim in the underlying state court action, and all of the discovery materials from that case were available to Prime Equipment in its defense below. These circumstances belie Prime Equipment's argument that it was unprepared for Mr. Minter's late assertion of an alteration product liability claim.

*12 Prime Equipment's claim of prejudice thus rests, in reality, on the viability of two defenses it argues it would have prepared if it had known about the alteration product liability claim at an earlier stage in the litigation. First, Prime Equipment alleges that it would have conducted more discovery to determine who was responsible for altering the lift. Second, it argues that it never would have signed the Joint Stipulation, which helped to exonerate Economy from the product liability claim, if it thought there was a product liability claim against it as well.

Prime Equipment contends that it would have been prejudiced by the late addition of an alteration product liability claim because "the evidence was inconclusive as to who altered" the lift, and it would have "discovered this case up differently" if it thought the case "was about alteration." Appellee's Br. 6-7, 12. The Plaintiff counters that "[t]he fact that 'Prime [Equipment] removed the bar' is evident from the [Joint] Stipulation, and the Record," Appellant's Reply Br. 2, since Prime Equipment stipulated that the "scissor lift was ... manufactured and sold by Economy Co. with a solid guardrail around the entire upper perimeter of the scissor lift platform," and that "[w]hen Prime Equipment sold the scissor lift, the solid guardrail had been removed from the entry end and replaced with a[ ] chain entry." Pretrial Order 8. Nonetheless, Prime Equipment maintains that the lift may have been altered by someone else. During arguments before the district court, Prime Equipment

explained that Economy had "two [sales] invoices on the same day; one [scissor lift] goes to [a company named] Forte Rents up north someplace, and the other one goes to ... Prime [Equipment]." Appellee's Br. 12. Prime Equipment speculates that Forte Rents may have modified the guardrail system on the lift it bought from Economy, and then sold that lift to Prime Equipment.

Although an amendment may be prejudicial if its timing prevents the defendant from pursuing a potentially promising line of defense, Prime Equipment's assertion that Forte Rents may have altered the lift and sold it to Prime Equipment is far too speculative to support such a finding. Prime Equipment does not cite any evidence indicating that it purchased the lift from Forte Rents.[FN8] In fact, before Prime Equipment entered into the Joint Stipulation, it argued that it purchased the lift from Economy with a chainlink entry; and at trial one of Prime Equipment's employees testified that the company bought the lift "brand new" from Economy, and that "Prime [Equipment] did not buy used equipment for rental." Appellee's Supp.App. 81; Appellant's App. 311. Moreover, if there was any evidence that Forte Rents was responsible for the alteration, it should have surfaced during the underlying state court action, where Prime Equipment was defending against a retailer product liability claim and could have impleaded any upstream distributor. Prime Equipment had incentive and opportunity to conduct discovery on this issue during the underlying state court litigation, from which most of the discovery in this case was gathered, and we therefore find no support for its claim of prejudice.

*13 More importantly, however, Prime Equipment's claim of prejudice fails because its attempt to pin responsibility for the alteration on an upstream distributor is not a defense to an alteration product liability claim. Even if Prime Equipment could produce evidence to support its theory that Forte Rents altered the lift, "[i]n a strict liability action it is immaterial to the plaintiff's case that the defect in the product was not caused by the distributor." *Braden v. Hendricks,* 695 P.2d 1343, 1350 (Okla.1985). Under Oklahoma law, it is enough that Prime Equipment admits to selling the lift in its altered condition. *Id.* Consequently, there is no merit to Prime Equipment's claim that the amendment is prejudicial because it was prevented from arguing that Forte Rents altered the lift.[FN9]

Prime Equipment's second claim of prejudice arises

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ---
--- F.3d ----, 2006 WL 1775433 (C.A.10 (Okla.))
(Cite as: --- F.3d ----)

out of the Joint Stipulation. During the underlying state court action, where the plaintiff asserted negligence and product liability claims against both defendants, Prime Equipment filed a cross-claim against Economy for indemnity from the plaintiff's manufacturer product liability claim. The Joint Stipulation prevented Prime Equipment from filing a similar motion in the federal case, and Prime Equipment argues that it "never would have made such a stipulation had there been an alteration product liability claim against it." Appellee's Br. 7. The district court agreed with Prime Equipment, concluding that the "somewhat curious" Joint Stipulation was consistent with Prime Equipment's position that "it believed that a products liability claim had not been stated against it." Order 6.

We believe that concerns about prejudice run the other way. It is true, as the district court observed, that the strategy behind the Joint Stipulation is "somewhat curious." But one thing is clear: the defendants' change in position potentially undermined the plaintiff's entire products liability case. During the first five years of the litigation, when the complaint was formulated and until after completion of discovery, Prime Equipment maintained and presented evidence that the chainlink closure had been installed on the lift before it came into Prime Equipment's possession. Plaintiff crafted his case accordingly, suing Economy for defective design and manufacture, and Prime Equipment for negligent maintenance and repair. The revelation of June 12, 2003 changed all of that. Prime Equipment entered a Joint Stipulation and submitted evidence that at the time the lift was sold by Economy, it was equipped with a solid metal guardrail. At the same time, Prime Equipment filed an evidentiary motion limiting the plaintiff to "a negligence theory only." Appellee's Supp.App. 10. Unless his complaint were construed to include a products liability claim against Prime Equipment or he were permitted to amend, Mr. Minter would be left with no products liability claim at all. If Prime Equipment could absolve Economy of responsibility for the defect, and simultaneously avoid liability by holding the plaintiff to a narrow construction of the complaint, this would mean that *no one* could be held responsible for the alleged defect. We do not think it is "prejudicial" to Prime Equipment not to allow this gambit to succeed. On the contrary, allowing Mr. Minter to assert an alteration product liability claim against Prime Equipment is necessary so that he is not prejudiced by Prime Equipment's extraordinary change in its account of what happened.

*14 Due to the rather unusual circumstances surrounding the Joint Stipulation and Prime Equipment's objection to the pretrial order, we agree with the plaintiff that the district court's finding of prejudice was a clear error. "The Federal Rules of Civil Procedure are designed to put an end to the 'sporting theory of justice,' by which the result depends on ... the skill and strategy of counsel." *Mid-West Paper Prods. Co. v. Cont'l Group, Inc.,* 596 F.2d 573, 579 (3d Cir.1979) (internal quotation marks omitted). *See United States ex rel. Precision Co. v. Koch Indus., Inc.,* 31 F.3d 1015, 1018 (10th Cir.1994) ("The Federal Rules ... accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." (internal quotation marks omitted)); 6 Wright, Miller & Kane, *Fed. Prac. & Proc.*3d § 1488 (2d ed.1990). Although Prime Equipment gave up the ability to file a cross-claim against Economy when it entered into the Joint Stipulation, it did so as part of a strategy designed to avoid a decision on the merits of Mr. Minter's product liability claim. Prime Equipment cannot now argue that the amendment to add an alteration product liability claim against it is prejudicial *because of* the Joint Stipulation. Whatever harm befalls Prime Equipment as a result of entering into the Joint Stipulation is of its own making, and therefore does not qualify as prejudice under Rule 15(a).

### B. Evidentiary Rulings

[3] Mr. Minter argues that the jury verdict in favor of Prime Equipment on the failure to warn claim must be vacated because of two allegedly erroneous evidentiary rulings in the proceedings below. The first alleged error is the district court's decision to exclude the evidence of Prime Equipment's repair work on the scissor lift after Mr. Minter's accident. The second is the district court's decision to admit evidence that Mr. Minter was not wearing a safety belt or hard hat on the day of his injury. We review the district court's evidentiary rulings for an abuse of discretion, *United States v. Apperson,* 441 F.3d 1162, 1198 (10th Cir.2006), and affirm.

### 1. Subsequent Remedial Measure

Federal Rule of Evidence 407 provides:
When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of subsequent measures is not

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                    Page 12
--- F.3d ----, 2006 WL 1775433 (C.A.10 (Okla.))
(Cite as: --- F.3d ----)

admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

Rule 407 "codifie[s] the generally accepted common law rule which excluded remedial measures which were taken after an accident." *Rimkus v. Northwest Colo. Ski Corp.*, 706 F.2d 1060, 1064 (10th Cir.1983). The Advisory Committee articulated two rationales for Rule 407. First, it observed that subsequent remedial measures often are "not in fact an admission, since the conduct is equally consistent with injury by mere accident or through contributory negligence." Fed.R.Evid. 407 advisory committee's note. Second, it found that there is an important "social policy of encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety." *Id.; see also Rimkus,* 706 F.2d at 1064. The application of Rule 407 in any particular case must be guided by these two considerations. *See Kelly v. Crown Equip. Co.,* 970 F.2d 1273, 1276 (3d Cir.1992).

*15 More than a year after Mr. Minter's accident, Prime Equipment was hired to perform the annual safety inspection on the scissor lift. It made a number of repairs while it had possession of the lift. One of those was to replace the chainlink entry with a solid metal guardrail. In the proceedings below, the plaintiff sought to introduce evidence of Prime Equipment's repair work on the scissor lift. Before the start of trial, Prime Equipment filed a motion in limine to exclude the evidence of this repair work pursuant to Rule 407. The district court granted Prime Equipment's motion, concluding that "the addition of the metal rod represents a subsequent remedial measure." Order, Nov. 24, 2003, at 4-5. On appeal, the plaintiff offers two reasons why the district court's ruling was erroneous.

The plaintiff first contends that Prime Equipment should be estopped from arguing that the installation of a solid guardrail constitutes a "remedial measure" because at trial it took the position that a chainlink entry is just as safe as a bar. Rule 407 defines a remedial measure as one that, "if taken previously, would have made the injury or harm less likely to occur." Fed.R.Evid. 407. If Prime Equipment had, as the plaintiff contends, "submitted evidence that the [solid guardrail] would not have made the event less

likely to occur because the chain was just as safe and effective as the bar," Appellant's Br. 33, then this Court would have to address the legal underpinnings of this estoppel claim. Yet Prime Equipment never argued that a chainlink entry is just as safe as a solid guardrail. It argued that a "properly used" chainlink entry is just as safe as a solid guardrail, and that Mr. Minter caused his own accident by failing to close the chainlink entry before operating the scissor lift. Prime Equipment does not dispute Mr. Minter's claim that a solid guardrail would have helped prevent his fall. Under Rule 407, therefore, Prime Equipment's act of replacing the chainlink entry with a solid guardrail is undoubtedly a subsequent remedial measure.

Mr. Minter's second argument is that the evidence of Prime Equipment's subsequent repair work on the lift should have been admitted at trial to rebut the testimony of one of Prime Equipment's witnesses. Rule 407 states that it "does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as ... impeachment." Fed.R.Evid. 407. The impeachment exception to Rule 407 is necessary to prevent litigants from taking "unfair advantage" of the Rule by adopting a position at trial that is inconsistent with their previous decision to take remedial measures after the accident. *Wood v. Morbark Indus., Inc.,* 70 F.3d 1201, 1208 (11th Cir.1995) (evidence of subsequent modifications can be introduced to rebut testimony that "left the jury with the impression that [the defendant] had made no modifications to the [product]"); *see also In re Air Crash Disaster,* 86 F.3d 498, 531 (6th Cir.1996) (evidence of subsequent design changes to correct deficiencies is admissible to rebut a witness's claim that the product was "state of the art"); *Polythane Sys., Inc. v. Marina Ventures Int'l., Ltd.,* 993 F.2d 1201, 1210-11 (5th Cir.1993) (evidence of subsequent modifications is admissible to impeach testimony that the product was "one of the strongest in the world").

*16 The impeachment exception, however, must be read narrowly, lest it swallow the rule. Applied loosely, "any evidence of subsequent remedial measures might be thought to contradict and so in a sense impeach [a party's] testimony." *Complaint of Consolidated Coal Co.,* 123 F.3d 126, 136 (3d Cir.1997) (emphasis and internal quotation marks omitted). As the Seventh Circuit explained in *Probus v. K-Mart, Inc.,* 794 F.2d 1207 (7th Cir.1986):
It is undoubtedly true that evidence of subsequent remedial measures can be said to contradict, and hence, in a sense, 'impeach' a defendant's contention

--- F.3d ---
--- F.3d ----, 2006 WL 1775433 (C.A.10 (Okla.))
**(Cite as: --- F.3d ----)**

that he was exercising due care or that materials used in the manufacture of a product were appropriate for their intended application. Yet allowing that and no more to satisfy the impeachment exception would elevate it to the rule.

*Id.* at 1210. Consequently, the impeachment exception has been confined to evidence of subsequent remedial measures that is "necessary to prevent the jury from being misled." *Wood,* 70 F.3d at 1208; *see also Complaint of Consolidated Coal Co.,* 123 F.3d at 136 ("[T]he evidence offered for impeachment must contradict the witness's testimony directly."); *Harrison v. Sears, Roebuck & Co.,* 981 F.2d 25, 31 (1st Cir.1992) (noting that the impeachment exception requires "a great[ ] nexus between the statement sought to be impeached and the remedial measure").

According to the plaintiff, the evidence of Prime Equipment's subsequent remedial measures should have been admitted at trial to rebut the testimony from Prime Equipment's expert witness that the chainlink entry was "basically equivalent" to a solid guardrail. Appellant's App. 493-94. Yet this testimony is not directly contradicted by the evidence of Prime Equipment's decision to install a solid guardrail on the lift. The witness testified that a chainlink entry is "basically equivalent" to a solid guardrail "as long as [it is] in place," and that the chainlink entry was not unreasonably dangerous because "if [it] would have been properly latched, [Mr. Minter] would not have fallen out of the scissor lift and been injured." *Id.* at 493-95. This testimony is consistent with the evidence at trial that the ANSI safety standards were changed in 1991 to require solid guardrails in response to reports of workers operating the lift without latching the chainlink entry. Moreover, Prime Equipment did not dispute that a solid guardrail reduces the danger of falls for lift operators who might otherwise forget to latch the chainlink entry or fail to do so properly. Consequently, the evidence of Prime Equipment's subsequent repair work on the guardrail does not fall within the impeachment exception to Rule 407.

### 2. The Safety Belt and Hard Hat Evidence

Mr. Minter's last argument on appeal is that the district court wrongfully denied his motion in limine regarding the evidence that he was not wearing a safety belt or hard hat at the time of the accident. Both types of safety equipment were available to Mr. Minter on the day of the incident, and the district

court concluded that the safety belt and hard hat evidence "is admissible to show Plaintiff's conduct in the workplace. The resulting effect from the failure to employ these safety devices is a matter for the jury to consider in their deliberations." Order, Nov. 24, 2003, at 3. Consequently, Prime Equipment was allowed to argue at trial that "a safety belt would have prevented [Mr. Minter] from falling out of the lift had he been wearing it," Appellant's App. 495, and to introduce the portions of Mr. Minter's deposition testimony where he admitted that a hard hat "might have saved [his] head from hurting." Appellee's Supp.App. 29. On appeal, the plaintiff contends that the safety belt and hard hat evidence was relevant only to a comparative negligence defense, and since he voluntarily dismissed his negligence claims against Prime Equipment before trial, the evidence should have been excluded. Prime Equipment defends the admission of the safety belt and hard hat evidence on the ground that it was relevant to the issues of causation and mitigation of damages, and was therefore properly admitted at trial.

**\*17** [4][5] We affirm the district court's ruling on the narrow ground that the safety belt and hard hat evidence was relevant to the specific causation issues raised by Mr. Minter's failure to warn claim. Oklahoma law requires the plaintiff, in a failure to warn lawsuit, to "establish that the failure to warn was a proximate, producing cause of the injuries received." *Duane v. Okla. Gas & Elec. Co.,* 833 P.2d 284, 286 (Okla.1992). Mr. Minter therefore had to show that if Prime Equipment had posted an adequate warning on the lift, he would have heeded it. *See, e.g., Daniel v. Ben E. Keith Co.,* 97 F.3d 1329, 1333 (10th Cir.1996). Although there is a presumption under Oklahoma law that the plaintiff would have read and heeded an adequate warning, the defendant may rebut that presumption by showing that the warning would not have altered the plaintiff's behavior. *Id.* at 1332. Prime Equipment argues that Mr. Minter's failure to wear a safety belt or hard hat on the day of the accident demonstrates his "propensity for recklessness." Appellee's Br. 35. While Prime Equipment may be overstating its case, we find that the safety belt and hard hat evidence bears sufficient relation to the question of whether Mr. Minter would have heeded an adequate warning that Prime Equipment was entitled to present the safety belt and hard hat evidence to the jury. *Cf. Daniel,* 97 F.3d at 1333.

### III. CONCLUSION

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

— F.3d —
--- F.3d ---, 2006 WL 1775433 (C.A.10 (Okla.))
(Cite as: --- F.3d ---)

The order of the district court striking from the pretrial order Mr. Minter's product liability claim against Prime Equipment stemming from the alteration of the scissor lift is therefore **REVERSED**, and the case is **REMANDED** to the district court for further proceedings. The evidentiary rulings of the district court related to the failure to warn claim are upheld, and the jury verdict on that claim is **AFFIRMED**.

FN1. According to the workers who came to Mr. Minter's aid after his fall, the chainlink closure on the lift was not latched. Mr. Minter testified that he remembered closing it, but his memory of the accident was limited due to the severe head injury he suffered from the fall. At trial, Mr. Minter argued that he latched the chainlink entry, but the latch must have jammed. Prime Equipment argued that Mr. Minter simply failed to latch the chainlink entry. This dispute is irrelevant for purposes of Mr. Minter's appeal.

FN2. There appears to have been some confusion at first as to whether Prime Equipment still owned the lift at the time of the accident, or whether it had sold the lift to G & G Leasing in 1991. In either event, Prime Equipment would still be strictly liable under a product liability theory. *See Allenberg v. Bentley Hedges Travel Serv., Inc.,* 22 P.3d 223, 227-28 (Okla.2001).

FN3. The parties made a handwritten adjustment to the case number listed on the Report, indicating that the case had been assigned to a new judge, but otherwise left the original Planning Meeting Report unchanged.

FN4. Neither party has argued that Rule 16(b) is relevant to this question. Some Circuits hold that a party seeking to amend the pleadings, after the deadline set for such amendments in the scheduling order, must satisfy a "good cause" requirement. *See, e.g., Parker v. Columbia Pictures Indus.,* 204 F.3d 326, 340 (2d Cir.2000); *Hawthorne Land Co. v. Occidental Chem. Corp.,* 431 F.3d 221, 227 (5th Cir.2005); *Leary v. Daeschner,* 349 F.3d 888, 909 (6th Cir.2003); *In re Milk Prods. Antitrust Litig.,* 195 F.3d 430, 437-38 (8th Cir.1999);

*Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 607-08 (9th Cir.1992). This requires the moving party to show that it has been diligent in attempting to meet the deadlines, which means it must provide an adequate explanation for any delay. *See Parker,* 204 F.3d at 340-41; *Hawthorne,* 431 F.3d at 228; *Leary,* 349 F.3d at 907; *In re Milk Prods.,* 195 F.3d at 437-38; *Johnson,* 975 F.2d at 609-10. This Circuit adopted a similar interpretation of Rule 16(b)'s "good cause" requirement in the context of counterclaims asserted after the scheduling order deadline, *SIL-FLO, Inc. v. SFHC, Inc.,* 917 F.2d 1507, 1518-19 (10th Cir.1990), but has not done so in the context of an amendment to the complaint.

We do not decide whether a party seeking to amend its pleadings after the scheduling order deadline must show "good cause" for the amendment under Rule 16(b) in addition to the Rule 15(a) requirements. Neither party raises the question, and given the rough similarity between the "good cause" standard of Rule 16(b) and our "undue delay" analysis under Rule 15, it would not affect the outcome of this case.

FN5. This is the majority rule, followed by the Second, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth and D.C. Circuits. *See Block v. First Blood Assocs.,* 988 F.2d 344, 350 (2d Cir.1993) ("Mere delay, however, absent a showing of bad faith or undue prejudice to deny the right to amend." (internal quotation marks omitted)); *Edwards v. City of Goldsboro,* 178 F.3d 231, 242 (4th Cir.1999) ("Delay alone is an insufficient reason to deny leave to amend. Rather, the delay must be accompanied by prejudice, bad faith, or futility.") (internal citation omitted); *Mayeaux v. La. Health Servs. & Indem. Co.,* 376 F.3d 420, 427 (5th Cir.2004) ("[D]elay alone is an insufficient basis for denial of leave to amend: The delay must be *undue,* i.e., it must prejudice the nonmoving party or impose unwarranted burdens on the court."); *Wade v. Knoxville Utils. Bd.,* 259 F.3d 452, 458-59 (6th Cir.2001) ("Delay by itself is not sufficient reason to deny a motion to amend. Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted.");

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2006 WL 1775433 (C.A.10 (Okla.))
(Cite as: --- F.3d ----)

*Doherty v. Davy Songer, Inc.,* 195 F.3d 919, 922 (7th Cir.1999) ("[M]ere delay, without a showing of prejudice, is not sufficient to deny the amendment."); *Doe v. Cassel,* 403 F.3d 986, 991 (8th Cir.2005) ("Delay alone is not enough to deny a motion to amend; prejudice to the nonmovant must also be shown." (internal quotation marks omitted)); *Bowles v. Reade,* 198 F.3d 752, 758 (9th Cir.1999) ("Undue delay by itself ... is insufficient to justify denying a motion to amend ... [absent] a contemporaneous specific finding of prejudice to the opposing party, bad faith by the moving party, or futility of amendment."); *Atchinson v. Dist. of Columbia,* 73 F.3d 418, 426 (D.C.Cir.1996) ("Consideration of whether delay is undue, however, should generally take into account the actions of other parties and the possibility of any resulting prejudice.").

FN6. This approach is also followed by the First, Third, and Eleventh Circuits. *See Hayes v. New England Millwork Distribs., Inc.,* 602 F.2d 15, 19-20 (1st Cir.1979) ("[W]here, as here, a considerable period of time has passed between the filing of the complaint and the motion to amend, courts have placed the burden upon the movant to show some valid reason for his neglect and delay." (internal quotation marks omitted)); *Arthur v. Maersk, Inc.,* 434 F.3d 196, 204 (3d Cir.2006) ("When a party fails to take advantage of previous opportunities to amend, without adequate explanation, leave to amend is properly denied."); *Andrx Pharm., Inc. v. Elan Corp.,* 421 F.3d 1227, 1237 (11th Cir.2005) ("We agree with the district court that [Plaintiff's] explanations for its delay in filing for leave to amend do not demonstrate that justice required the grant of the motion to amend.").

FN7. When the plaintiff asserted his products liability claim in the pretrial order, Prime Equipment objected on the ground that it was a "belated attempt to add a products liability claim against it, for the very first time." Pretrial Order 6. The plaintiff responded that his complaint fairly encompassed the claim because it identified both Prime Equipment and Economy as "sellers of the scissor lift," and therefore "alleged facts to support recovery [from

Prime Equipment] based upon products liability." Appellant's App. 243-44.

FN8. Prime Equipment argues that the "[e]vidence indicated that it was not Prime [Equipment] that altered the lift," Appellee's Br. 22, but the evidence it refers to is the testimony of a witness who claimed that Economy altered the lift-a position that Prime Equipment explicitly disavowed in the Joint Stipulation.

FN9. Although Prime Equipment might wish to implead the upstream distributor, the fact that it could not do so in this action does not constitute prejudice. If Prime Equipment were to be found liable under an alteration product liability theory, and after the judgment it discovered evidence establishing that Forte Rents altered the lift, Prime Equipment could file a separate action for indemnity against Forte Rents as an upstream distributor. *See* Fed.R.Civ.P. 14(a); Okla. Stat. tit. 12 § 2014; *State Farm Mut. Auto. Ins. Co. v. Perry,* 104 P.3d 1136, 1138-39 & n. 3 (Okla.Civ.App.2004).

C.A.10 (Okla.),2006.
Minter v. Prime Equipment Co.
--- F.3d ----, 2006 WL 1775433 (C.A.10 (Okla.))

Briefs and Other Related Documents (Back to top)

• 2005 WL 2124421 (Appellate Brief) Appellant's Reply Brief (May 23, 2005) Original Image of this Document (PDF)
• 2005 WL 1910511 (Appellate Brief) Brief of Appellee Prime Equipment Company (Apr. 28, 2005)
• 04-7011 (Docket) (Jan. 26, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT Z

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SMITH KLINE & FRENCH LABORATORIES LIMITED and SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE, | ) ) ) ) ) ) | |
| Plaintiffs, | ) | Civil Action No.    05-197-GMS |
| v. | ) ) | |
| TEVA PHARMACEUTICALS USA, INC., | ) ) | |
| Defendant. | ) ) ) | |

**Plaintiffs' Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1)**

Pursuant to Fed. R. Civ. P. 26(a)(1), Plaintiffs Smith Kline & French Laboratories Limited

and SmithKlineBeecham Corporation d/b/a GlaxoSmithKline (hereinafter collectively "GSK")

provide the following initial disclosures to Defendant Teva Pharmaceuticals USA, Inc. ("Teva USA")

These disclosures are based upon information reasonably available to GSK at present, and GSK

reserves the right to supplement or modify them as it obtains additional information. GSK expressly

does not waive attorney-client privilege, work product protection or any other applicable privilege

through these disclosures, nor does it waive its right to object on proper grounds to any discovery

request relating to the subject matter of these disclosures.

A.    **List of Knowledgeable Individuals**

The following persons may have discoverable information with respect to GSK's claims or

defenses:

1.    Gregory Gallagher, Jr.
      7632 Harrington Lane
      Bradenton, FL

Mr. Gallagher is the named inventor of United States Patent Number 4,452,808.

2.    David A. A. Owen
Coppice Farm, Stanton upon Hine Heath
Shrewsbury, Shropshire SY4 4ET
United Kingdom

Dr. Owen is the named inventor of United States Patent Number 4,824,860.

Mr. Gallagher and Dr. Owen should only be contacted through Wilmer Cutler Pickering Hale and Dorr, LLP.

**B.    Categories of Relevant Documents**

The following documents, data compilations, and tangible things are within GSK's possession, custody, or control and may be used to support its claims or defenses. These documents are in the custody of GSK, by and through Wilmer Cutler Pickering Hale and Dorr, LLP, located at The Willard Office Building, 1445 Pennsylvania Avenue, NW, Washington, DC, 20004.

1.    U.S. Patent Number 4,452,808 and the extension of the term for the patent

2.    U.S. Patent Number 4,824,860

3.    Documents showing assignment of U.S. Patent Number 4,452,808 to GSK

4.    Documents showing assignment of U.S. Patent Number 4,824,860 to GSK

5.    Prosecution file history for U.S. Patent Number 4,452,808

6.    Prosecution file history for U.S. Patent Number 4,824,860

7.    Documents relating to the ANDA No. 77-460 and amendments thereto submitted to the FDA by Teva USA

8.    Documents sufficient to show the sales of GSK's Requip product

**C.    Calculation of Damages**

GSK is not aware at the present time of any activity Teva USA has engaged in that would entitle GSK to damages in this action. Accordingly, GSK is unable to calculate any damages at this

2

time.  GSK reserves the right to pursue damages or other monetary relief (including but not limited to

treble damages and prejudgment interest).

**D.     Insurance**

GSK is not aware of any insurance agreement under which any person carrying on an

insurance business may be liable to satisfy part or all of a judgment which may be entered in this

action or to indemnify or reimburse for payments made to satisfy the judgment.


*Patricia S. Rogowski*

Paul E. Crawford (Bar No. 493)
Patricia Smink Rogowski (Bar No. 2632)
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 North Orange Street
Wilmington, DE  19801
(302) 658-9141

William F. Lee
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA  02109
 (617) 526-6000

William G. McElwain
Henry N. Wixon
Amy K. Wigmore
Michael E. Gordon
WILMER CUTLER PICKERING
HALE AND DORR LLP
The Willard Office Building
1455 Pennsylvania Ave., NW
Washington, DC  20004
(202) 942-8000

*Attorneys for Plaintiffs*

3

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SMITH KLINE & FRENCH LABORATORIES LIMITED and SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE, <br><br> Plaintiffs, <br><br> v. <br><br> TEVA PHARMACEUTICALS USA, INC., <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) |

Civil Action No. ___05-197-GMS___

### NOTICE OF SERVICE

PLEASE TAKE NOTICE that on August 5, 2005 true and correct copies of PLAINTIFF'S INITIAL DISCLOSURES PURSUANT TO FED. R. CIV. 26(a)(1) were served on the attorneys of record at the following addresses specified below:

**Via Hand Delivery**
Josy W. Ingersoll, Esq.
Young Conaway Stargatt & Taylor LLP
1000 West Street, 17th Floor
Wilmington, DE 19801

**Via Facsimile**
Stephen D. Dove, Esq.
Steven A. Engel, Esq.
Karen M. Robinson, Esq.
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, DC 20005-5793

---

*/s/  Patricia S. Rogowski*
Patricia Smink Rogowski (Bar No. 2632)
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 North Orange Street
Wilmington, DE 19801
(302) 658-9141

William F. Lee
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

William G. McElwain
Henry N. Wixon
Amy K. Wigmore
WILMER CUTLER PICKERING
HALE AND DORR LLP
The Willard Office Building
1455 Pennsylvania Ave., NW
Washington, DC  20004
(202) 942-8000

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of August, 2005, I electronically filed a **NOTICE OF SERVICE** with the Clerk of Court using CM/ECF which will send notification of such filing to

> Josy W. Ingersoll, Esq.
> Young Conaway Stargatt & Taylor LLP
> 1000 West Street, 17th Floor
> Wilmington, DE 19801

I hereby certify that on August 5, 2005, I have served the document by first class mail to the following non-registered participants:

> Stephen D. Dove, Esq.
> Steven A. Engel, Esq.
> Karen M. Robinson, Esq.
> Kirkland & Ellis LLP
> 655 Fifteenth Street, N.W.
> Washington, DC 20005-5793

> */s/ Patricia S. Rogowski*
> Patricia Smink Rogowski (#2632)
> Connolly Bove Lodge & Hutz LLP
> P.O. Box 2207
> 1007 N. Orange Street
> Wilmington, DE 19899
> (302) 658-9141
> progowski@cblh.com