# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SMITH KLINE & FRENCH LABORATORIES, LTD, and SMITHKLINE BEECHAM CORP., d/b/a GLAXOSMITHKLINE, | : |
| Plaintiffs, | :    Civil Action No. 05-197 GMS |
| v. | : |
| TEVA PHARMACEUTICALS USA, INC., | : |
| Defendant. | : |

## FIRST AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS OF DEFENDANT TEVA PHARMACEUTICALS USA, INC.

Defendant Teva Pharmaceuticals USA, Inc., ("Teva") answers the Complaint of Smith Kline & French Laboratories, Ltd, and SmithKline Beecham Corp., d/b/a GlaxoSmithKline, ("GSK") as follows:

1.    Teva admits that plaintiffs purport to assert the claims set forth in Paragraph 1 of the Complaint. Teva denies that plaintiffs' claims are valid or have merit. Teva admits that it has filed an Abbreviated New Drug Application ("ANDA") seeking the approval of its 4-(2-di-n-propylaminoethyl)-2(3H)-indolone ("ropinirole") hydrochloride tablets. Teva admits that the act, as alleged arises under the patent laws of the United States.

2.    Teva states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 2 of the Complaint, and on that basis denies each and every one of the allegations set forth therein.

3.      Teva states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 3 of the Complaint, and on that basis denies each and every one of the allegations set forth therein.

4.      Teva states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 4 of the Complaint, and on that basis denies each and every one of the allegations set forth therein.

5.      Teva admits the allegations set forth in Paragraph 5 of the Complaint.

6.      Teva admits that this Court has jurisdiction over plaintiffs' claims pursuant to Title 28 U.S.C. §§ 1331, 1338(a), 2201 and 2202.

7.      Teva admits that this Court has jurisdiction over Teva for the purposes of this action.

8.      Teva admits that venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 1400(b).

9.      Teva admits that United States Patent No. 4,452,808 (the "'808 patent") is entitled "4-Aminoalkyl-2(3H)-Indolones," and states on its face that it was issued on June 5, 1984, identifying Gregory Gallagher, Jr., as the inventor.  Teva further admits that the '808 patent states on its face that it was assigned to SmithKline Beckman Corporation.  Teva admits that the '808 patent purports to claim certain 4-aminoalkyl-2(3H)-indolone compounds and pharmaceutical compositions.  Teva denies that the claims of the '808 patent are valid and enforceable.  Teva states that it is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 9 of the Complaint, and on that basis denies each and every one of the remaining allegations set forth therein.

2

10.     Teva states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 10 of the Complaint, and on that basis denies each and every one of the allegations set forth therein.

11.     Teva admits that United States Patent No. 4,824,860 (the "'860 patent") is entitled "Treatment of Parkinsons Disease" and states on its face that it was issued on April 25, 1989, identifying David A. A. Owen, as the inventor. Teva further admits that the '860 patent states on its face that it was assigned to Smith Kline & French Laboratories, Ltd. Teva admits that the '860 patent purports to claim a method of treating Parkinson's Disease by administering an effective non-toxic amount of 4-aminoalkyl-2(3H)-indolone compounds. Teva denies that the claims of the '860 patent are valid and enforceable. Teva states that it is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 11 of the Complaint, and on that basis denies each and every one of the remaining allegations set forth therein.

12.     Teva states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 12 of the Complaint, and on that basis denies each and every one of the allegations set forth therein.

13.     Teva admits that GSK sells ReQuip®, a commercial formulation of ropinirole hydrochloride. Teva further admits that GSK is identified by the United States Food and Drug Administration ("FDA") as the holder of approved New Drug Application ("NDA") No. 20-658 for ropinirole hydrochloride tablets in dosages of Eq. 0.25 mg base, 0.5 mg base, 1 mg base, 2 mg base, 3 mg base, 4 mg base, and 5 mg base. Teva states that it is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in

Paragraph 13 of the Complaint, and on that basis denies each and every one of the remaining allegations set forth therein.

14.    Teva admits the allegations set forth in Paragraph 14 of the Complaint.

15.    Teva admits the allegations set forth in Paragraph 15 of the Complaint.

16.    Teva admits that the drug product for which its ANDA No. 77-460 seeks FDA approval contains as the active ingredient ropinirole hydrochloride. Teva admits that the Eq. 0.25 mg base, 0.5 mg base, 1 mg base, 2 mg base, 3 mg base, 4 mg base, and 5 mg base ropinirole hydrochloride tablets that are the subject of its ANDA No. 77-460 are bioequivalent to GSK's Eq. 0.25 mg base, 0.5 mg base, 1 mg base, 2 mg base, 3 mg base, 4 mg base, and 5 mg base Requip tablets within the meaning of FDA regulations. Teva further admits that its proposed labeling complies with FDA ANDA labeling requirements. Teva denies the remaining allegations set forth in Paragraph 16 of the Complaint.

17.    Teva admits the allegations set forth in Paragraph 17 of the Complaint.

18.    Teva admits the allegations set forth in Paragraph 18 of the Complaint.

19.    Teva reiterates its responses to the allegations contained in the preceding paragraphs as if fully set forth herein.

20.    Teva admits that the submission of Teva's ANDA No. 77-460 to obtain approval for the manufacture, use, offering for sale, sale or importation into the United States of Teva's ropinirole hydrochloride tablets constitutes a technical act of infringement under 35 U.S.C. § 271(e)(2)(A) sufficient for jurisdiction, but denies any allegation of infringement for any other purposes. Teva denies that the manufacture, use, offering for sale, sale or importation into the United States of Teva's ropinirole hydrochloride tablets would infringe any valid claim of the '808 patent or that its filing of its ANDA is grounds for a finding of infringement.

21.     Teva admits that the submission of Teva's ANDA No. 77-460 to obtain approval for the manufacture, use, offering for sale, sale or importation into the United States of Teva's ropinirole hydrochloride tablets creates an actual case or controversy with respect the infringement of the '808 patent.  Teva denies that the manufacture, use, offering for sale, sale or importation into the United States of Teva's ropinirole hydrochloride tablets would infringe any valid claim of the '808 patent.  Teva further denies the remaining allegations set forth in Paragraph 21 of the Complaint.

22.     Teva denies that FDA approval of the Teva's ANDA No. 77-460 will infringe any valid claim of the '808 patent.  Teva further denies the remaining allegations set forth in Paragraph 22 of the Complaint.

23.     Teva admits that it had knowledge of the '808 patent prior to filing Teva ANDA No. 77-460.  Teva denies that this knowledge can or does form the basis for a finding of willful infringement and as such denies the remaining allegations set forth in Paragraph 23 of the Complaint.

24.     Teva denies the allegations set forth in Paragraph 24 of the Complaint.

25.     Teva reiterates its responses to the allegations contained in the preceding paragraphs as if fully set forth herein.

26.     Teva admits that the submission of Teva's ANDA No. 77-460 to obtain approval for the manufacture, use, offering for sale, sale or importation into the United States of Teva's ropinirole hydrochloride tablets constitutes a technical act of infringement under 35 U.S.C. § 271(e)(2)(A) sufficient for jurisdiction but denies any allegation of infringement for any other purposes.  Teva denies that the manufacture, use, offering for sale, sale or importation into the

5

United States of Teva's ropinirole hydrochloride tablets would infringe any valid claim of the '860 patent or that its filing of its ANDA is grounds for a finding of infringement.

27.    Teva admits that the submission of Teva's ANDA No. 77-460 to obtain approval for the manufacture, use, offering for sale, sale or importation into the United States of Teva's ropinirole hydrochloride tablets for the treatment of Parkinson's Disease creates an actual case or controversy with respect the infringement of the '860 patent.    Teva denies that the manufacture, use, offering for sale, sale or importation into the United States of Teva's ropinirole hydrochloride tablets would infringe any valid claim of the '860 patent.    Teva further denies the remaining allegations set forth in Paragraph 27 of the Complaint.

28.    Teva denies that FDA approval of the Teva's ANDA No. 77-460 will infringe any valid claim of the '860 patent.    Teva further denies the remaining allegations set forth in Paragraph 28 of the Complaint.

29.    Teva admits that it had knowledge of the '860 patent prior to filing Teva ANDA No. 77-460.    Teva denies that this knowledge can or does form the basis for a finding of willful infringement and as such denies the remaining allegations set forth in Paragraph 29 of the Complaint.

30.    Teva denies the allegations set forth in Paragraph 30 of the Complaint.

### First Defense

31.    The manufacture, use, offering for sale, sale or importation of the ropinirole hydrochloride tablets that are the subject of Teva's ANDA No. 77-460 will not infringe any valid claim of the '808 patent.

32.    Teva's filing of its ANDA No. 77-460 did not infringe any valid claim of the '808 patent.

**Second Defense**

33.    Each of the claims of the '808 patent are invalid for failure to satisfy one or more of sections 101, 102, 103, 112 and 116 of Title 35 of the United States Code.

**Third Defense**

34.    The claims of the '808 patent are unenforceable for inequitable conduct for at least the reasons set forth below.

35.    The '808 patent identifies Mr. Gregory Gallagher as the sole inventor of the invention(s) claimed therein.  On December 6, 1982, Mr. Gallagher executed a declaration of inventorship (Ex. A) attesting that, in his belief, he was the sole inventor of the invention(s) claimed in the '808 patent.  This declaration was submitted to the U.S. Patent & Trademark Office ("PTO") on the same day with the application from which the '808 patent issued.

36.    Mr. Gallagher, the putative sole inventor, was not the sole inventor of the entire claimed invention(s).  Teva alleges that Mr. Gallagher's declaration statement in which he claimed to be the sole inventor of the invention(s) claimed in the '808 patent was materially false and was submitted with the intent to deceive the PTO to convince it to issue the '808 patent.

37.    On its face, independent claim 1 of the '808 patent covers numerous drug compounds and pharmaceutically acceptable salts thereof.  Only one of these claimed compounds is 4-(2-di-n-propylaminoethyl) –2(3H)-indolone (*i.e.*, ropinirole) and only one of the claimed pharmaceutically acceptable salts of ropinirole is ropinirole hydrochloride.  Furthermore, on its face, dependent claim 2 also covers compounds other than ropinirole, dependent claim 3 covers both ropinirole in its free base form and pharmaceutically acceptable salts thereof, and dependent claim 4 covers ropinirole in only its free base form.  On their face, dependent claims 6 and 7 do not cover either ropinirole or ropinirole hydrochloride.

7

38.    On its face, independent claim 8 covers compositions that include a nontoxic agonist quantity of any of the compounds covered in claim 1, and dependent claims 9, 11 and 12 also cover compositions including compounds other than ropinirole.

39.    Mr. Gallagher did not conceive of or reduce to practice the entire claimed invention(s) of the '808 patent. Mr. Gallagher never synthesized any compound covered by the claims of the '808 patent other than the salt compound ropinirole hydrochloride. Further, when Mr. Gallagher first synthesized ropinirole hydrochloride, he had no expectation as to whether it would have utility in treating the cardiovascular conditions identified in the specification of the '808 patent or for any other use. To the extent Mr. Gallagher ever appreciated that ropinirole or ropinirole hydrochloride could be used to treat the cardiovascular conditions identified in the specification of the '808 patent, he was not the first person to do so.

40.    Prior to Plaintiffs' submission to the Patent Office of the patent application from which the '808 patent issued, Mr. Gallagher did not believe that the compounds of claim 1 shared common structural features such that it would be expected that all of the claimed compounds would exhibit similar physiological effects upon administration.

41.    Other individuals at GSK tested compounds or salts that Mr. Gallagher synthesized, including ropinirole and/or ropinirole hydrochloride, to determined whether the compounds or salts exhibited cardiovascular activity. These other individuals appreciated that ropinirole or ropinirole hydrochloride had utility in treating the cardiovascular conditions identified in the '808 patent specification before Mr. Gallagher did.

42.    According to his testimony, Mr. Gallagher never reviewed the patent application from which the '808 patent issued, either before or after that application was submitted to the Patent Office. Without reviewing the patent application, and particularly its claims, Mr.

8

Gallagher was incapable of forming a good faith belief as to whether he was the sole inventor of the invention(s) claimed in the patent application and, ultimately, the '808 patent. Thus, Mr. Gallagher and other individuals working for Plaintiffs caused Mr. Gallagher's declaration of inventorship to be submitted to the Patent Office with the intent to deceive the Patent Office.

43.      Teva alleges the applicants' nonjoinder of individual(s) responsible for conceiving of portions of the claimed invention(s) covering compounds other than ropinirole or its hydrochloride salt and Mr. Gallagher's and the applicants' submission of the false declaration of inventorship were done with deceptive intent.

44.      The '808 patent is further unenforceable for inequitable conduct, because the '808 patent specification misstates that one of the claimed compounds, ropinirole, was shown to "not cause tachyphylaxis … as did its 7-hydroxy congener of the prior art" and that this was a proper basis for inferring that the remaining claimed compounds also "may not be subject to tachyphylaxis." Mr. Gallagher's signed inventorship declaration states that all of the statements in the '808 patent application were true to the best of his knowledge. However, at the time that he signed that declaration, Mr. Gallagher had not confirmed the accuracy of those statements in the '808 patent specification regarding ropinirole's lack of tachyphylaxis effects through experimental tests. Subsequently, it has been shown that ropinirole is subject to tachyphylaxis, or increasing tolerance to the administration of a drug dose.

45.      Mr. Gallagher falsely attested to this statement in the patent specification with the intent to deceive the PTO and convince it to accept the assertions in the '808 patent that ropinirole and the other claimed compounds had more selective activity and improved physiological characteristics from compounds known in the prior art. Alternatively or in addition thereto, an individual(s) who should have properly been named as a joint inventor for

the '808 patent or who was involved in the preparation or prosecution of the '808 patent application knew that the '808 patent specification statements regarding tachyphylaxis were false but permitted the '808 patent application to be submitted to the PTO with the aforementioned false statements with the intent to deceive the PTO and convince it to accept the assertions in the '808 patent that ropinirole had more selective activity and improved physiological characteristics from compounds known in the prior art.

46.     The submission of these false statements to the PTO is inherently material, and the '808 patent specification's statements differentiating the claimed invention from compounds known in the prior art made these false statements to the PTO explicitly material.

47.     The '808 patent is further unenforceable for inequitable conduct, because the '808 patent specification wrongly suggests that one of the claimed compounds, ropinirole hydrochloride, was tested to determine an effective dose "to show anti-hypertensive activity" in "an average size human." None of the claimed compounds, including ropinirole hydrochloride, was tested in humans for anti-hypertensive activity, nor were any such human test results used or usable by Mr. Gallagher or anyone else to determine an effective dose range for treating humans prior to the filing of the '808 patent application. The statements in the '808 patent implying that an effective dosage range had been determined for causing anti-hypertensive effects in humans by administering ropinirole hydrochloride were materially false. These speculative dose ranges would have been misconstrued by a reasonable PTO examiner as supporting the enablement of some or all of the claimed inventions, at least in part. Mr. Gallagher and other individuals involved in the prosecution of the '808 patent intended to deceive the PTO by allowing the '808 patent application to be submitted to the PTO with these statements suggesting that an effective dose range for ropinirole hydrochloride had been determined.

48.    The '808 patent is further unenforceable for inequitable conduct, because at least one individual who should have been named as a joint inventor with respect to the claimed invention(s), J. Paul Hieble, knew of at least one material prior art reference– Cannon, J.G., Demopoulos, B.J., Long, J.P., Flynn J.R. and Sharabi, F.M., "*Proposed Dopaminergic Pharmacophore of Lergotrile, Pergolide, and Related Ergot Alkaloid Derivatives*," J. Med. Chem. - Communications to the Editor, 1981, Vol. 24: 238-240 (1981) ("Cannon 1981 article")– and had a duty to disclose material prior art references to the PTO pursuant to § 1.56 of Title 37 of the Code of Federal Regulations.  The Cannon 1981 article discloses a structurally similar compound to ropinirole and describes that compound as having both cardiovascular and central nervous system dopamine-agonist effects when administered in animal models.  Rather than disclose that material prior art to the PTO, Mr. Gallagher and/or other individuals substantively involved in the prosecution of the patent application from which the '808 patent issued intentionally omitted Mr. Hieble from the list of inventors for the '808 patent with the intent to deceive the PTO and prevent the disclosure of material prior art to the PTO during the examination of the patent application.

49.    Teva alleges that the information withheld and the submission of misleading and/or incorrect declaration testimony during the prosecution of the '808 patent were material to the patentability of the claimed invention(s).

50.    Teva alleges that the withholding of information and the submission of misleading and/or incorrect declaration testimony during the prosecution of the '808 patent were done with the intention of deceiving the PTO.

51.     The intentional withholding of material information and submission of false and misleading declaration testimony during prosecution of the '808 patent constituted inequitable conduct which renders the '808 patent unenforceable.

### Fifth Defense

52.     The manufacture, use, offering for sale, sale or importation of the ropinirole hydrochloride tablets that are the subject of Teva's ANDA No. 77-460 will not infringe any valid claim of the '860 patent.

53.     Teva's filing of its ANDA No. 77-460 did not infringe any valid claim of the '860 patent.

### Sixth Defense

54.     Each of the claims of the '860 patent are invalid for failure to satisfy one or more of sections 101, 102, 103, 112 and 116 of Title 35 of the United States Code.

### Seventh Defense

55.     The '860 patent and all of the claims therein are unenforceable for inequitable conduct.

56.     The '860 patent identifies Dr. David A. A. Owen as the sole inventor of the invention(s) claimed therein.

57.     On May 19, 1988, Plaintiffs submitted a declaration of inventorship executed by Dr. Owen (Ex. B) attesting that, in his belief, he was the sole inventor of the invention(s) claimed in the '808 patent.  In his declaration, Dr. Owen further attested that he had reviewed and underst[oo]d the contents of the above-identified specification, including the claims ..."  This declaration was submitted to the PTO with the application from which the '860 patent issued.

58.    Dr. Owen, the putative sole inventor, was not the sole inventor of the entire claimed invention(s). Dr. Owen's declaration statement in which he claimed to be the sole inventor of the invention(s) claimed in the '860 patent was materially false and was submitted with the intent to deceive the PTO to convince it to issue the '860 patent.

59.    On its face, independent claim 1 of the '860 patent is directed to a method of treating Parkinson's disease by administering one of numerous specified drug compounds or pharmaceutically acceptable salts thereof. Only one of these specified compounds is 4-(2-di-n-propylaminoethyl) –2(3H)-indolone (*i.e.*, ropinirole) and only one of the claimed pharmaceutically acceptable salts of ropinirole is ropinirole hydrochloride. Furthermore, on its face, dependent claim 2 covers the method of treatment in which ropinirole in its free base form is administered.

60.    To the extent Dr. Owen considered using indolone compounds to treat Parkinson's disease, Dr. Owen never conceived of using any compound other than ropinirole or its salts for that purpose. However, claim 1 of the '860 patent identifies many compounds other than ropinirole or its hydrochloride salt for use in the claimed method of treatment of Parkinson's Disease. Yet in his declaration of inventorship, Dr. Owen falsely attested to the PTO that he was the sole inventor of the '860 patent. Plaintiffs' nonjoinder of individual(s) responsible for conceiving of portions of the claimed invention(s) covering compounds other than ropinirole or its hydrochloride salt was done with the intent to deceive the PTO so that the '860 patent would be issued.

61.    Further, even to the extent Dr. Owen considered using ropinirole or its salts to treat Parkinson's disease, he was not the first person to develop a definite and permanent idea that those compounds could be used for that purpose. The idea that ropinirole could be used to

13

treat Parkinson's Disease was first proposed in a September 1986 report by Professors Brenda Costall and R.J. Naylor of the University of Bradford that was received by Dr. Owen. Despite knowing that Professors Costall and Naylor had conceived of a method of treating Parkinson's disease by administering ropinirole before he had conceived of that idea, Dr. Owen nevertheless submitted a sworn declaration to the PTO in which he claimed that, based on his review of the claims and specification of the patent application from which the '860 patent issued, he was the sole inventor of the whole invention(s) claimed therein. At the time he submitted the declaration, Dr. Owen knew that his assertion of sole inventorship was false. Dr. Owen's submission of his false inventorship declaration to the PTO was intended to deceive the PTO regarding the correct inventorship of the '860 patent and convince the PTO to issue the '860 patent.

62. The '860 patent specification misleadingly states that the anti-Parkinsonian activity of ropinirole and the other claimed compounds is the result of their post-synaptic, rather than pre-synaptic, site of action and that the fact that ropinirole and the other claimed compounds were known to act pre-synaptically would not lead a person of ordinary skill in the art to conclude that these compounds could be used to treat Parkinson's disease. The '860 patent supported this assertion by mischaracterizing the prior art bromocriptine compound as a "post-synaptic dopamine agonist" in the brain and, on that basis, distinguishing the activity in the brain of the claimed indolone compounds of the '860 patent from the well-known pre-synaptic activity of certain indolone derivatives as cardiovascular agents. However, GSK's own researchers had previously published articles indicating that bromocriptine was a pre-synaptic dopamine agonist, such as Robert M. DeMarinis *et al.*, "Syntheses and In-Vitro Evaluation of 4-(2-Aminoethyl)-2(3H)-indolones and Related Compounds as Peripheral Prejunctional Dopamine Receptor

Agonists," J. Med. Chem. 29:939-947 (1986). The characterization of bromocriptine in the '860 patent specification directly contradicted the published articles by GSK's own researchers. Moreover, Dr. Owen, a co-author of the paper by DeMarinis *et al.*, did not disclose this material prior art to the PTO. Disclosure of this prior art would have enabled the PTO examiner to independently discover the false statements in the '860 patent regarding the post-synaptic activity of bromocriptine. A reasonable PTO examiner would have considered this prior art knowledge and the DeMarinis *et al.* paper material to patentability. As admitted in the '860 patent specification, the pre-synaptic activity of ropinirole as a cardiovascular agent was well-known in the art. Furthermore, although the false statements in the '860 patent were brought to the attention of Plaintiffs' patent attorneys and/or agents involved in the prosecution of the '860 patent application, neither Plaintiffs nor Dr. Owen took steps to correct the false statements in the '860 patent specification. Accordingly, Dr. Owen and other individuals acting on behalf of Plaintiffs who were substantially involved in the prosecution of the application from which the '860 patent issues intentionally withheld from the PTO information material to the patentability of the invention(s) claimed in the '860 patent and did so with the intent to deceive the PTO and convince it to issue the '860 patent.

63.    Teva alleges that the withholding of information and the submission of misleading and/or false declaration testimony during the prosecution of the '860 patent were material to the patentability of the claimed invention(s).

64.    Teva alleges that this information was withheld and the misleading and/or incorrect declaration testimony was submitted with the intention of deceiving the PTO to cause the PTO to issue the '860 patent.

65.    The withholding of material information and submission of misleading and/or incorrect declaration testimony during prosecution of the '860 patent constituted inequitable conduct which renders the '860 patent unenforceable.

## PRAYER FOR RELIEF

WHEREFORE, defendant Teva Pharmaceuticals USA, Inc. respectfully requests that:

a)  The Complaint of Plaintiffs Smith Kline & French Laboratories, Ltd, and SmithKline Beecham Corp., d/b/a GlaxoSmithKline, be dismissed with prejudice;

b)  The filing of Teva's ANDA No. 77-460 be found not to infringe any valid claims of the '808 patent;

c)  The filing of Teva's ANDA No. 77-460 be found not to infringe any valid claims of the '860 patent;

d)  The manufacture, use, offering for sale, sale or importation into the United States of Teva's ropinirole hydrochloride tablets that are the subject of Teva's ANDA No. 77-460 be found not to infringe any valid claim of the '808 patent;

e)  The manufacture, use, offering for sale, sale or importation into the United States of Teva's ropinirole hydrochloride tablets that are the subject of Teva's ANDA No. 77-460 be found not to infringe any valid claim of the '860 patent;

f)  The '808 patent and each of its claims be found invalid;

g)  The '808 patent and each of its claims be found unenforceable on grounds of inequitable conduct;

h)  The '860 patent and each of its claims be found invalid;

i)  The '860 patent and each of its claims be found unenforceable on grounds of inequitable conduct;

j)  Teva be awarded its costs in this action;

k)  Teva be awarded its attorneys' fees pursuant to 35 U.S.C. § 285; and

l)  Teva be awarded such other and further relief as this Court may deem just and proper.

## COUNTERCLAIMS
### Jurisdiction and Venue

66.    These counterclaims seek declaratory judgments pursuant to 28 U.S.C. §§ 2201 and 2202.

67.    This Court has jurisdiction over these counterclaims pursuant to Title 35 U.S.C. and 28 U.S.C. §§ 1331 and 1338(a).

68.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

69.    A justiciable controversy exists between the parties hereto with respect to validity, scope, and infringement of certain claims of U.S. Patent Nos. 4,452,808 and 4,824,860.

### Acts Giving Rise to this Action

70.    GSK is identified by the FDA as the holder of approved NDA No. 20-658 for ropinirole hydrochloride tablets in dosages of Eq. 0.25 mg base, 0.5 mg base, 1 mg base, 2 mg base, 3 mg base, 4 mg base, and 5 mg base.

71.    GSK caused the '808 and '860 patents to be listed in the FDA publication entitled "Approved Drug Products With Therapeutic Equivalence Evaluation" (the "Orange Book") as patents which claim the drug for which GSK submitted the NDA or which claim a method of using such drug and with respect to which a claim of patent infringement could reasonably be asserted if a person not licensed by the owner engaged in the manufacture, use, or sale of the drug, or in the method of using the drug.  GSK is also the record owner of these two patents.

72.    Teva submitted its ANDA No. 77-460 to obtain FDA approval to engage in the commercial manufacture, use and sale of Eq. 0.25 mg base, 0.5 mg base, 1 mg base, 2 mg base, 3 mg base, 4 mg base, and 5 mg base ropinirole hydrochloride tablets, prior to the expiration of the '808 and '860 patents.

73.    Teva sent GSK letters dated February 21, 2005 ("Notification Letters") notifying each that Teva's ANDA was received by the FDA, and that Teva's ANDA contained a

"paragraph IV certification" that the '808 and '860 patents are invalid, unenforceable and/or will not be infringed by the commercial manufacture, use, or sale of the product described in Teva's ANDA.

### First Counterclaim

74.    Teva reiterates the allegations contained in paragraphs 1-73 as if fully set forth herein.

75.    The manufacture, use, offer to sell, sale, and/or importation into the United States of the ropinirole hydrochloride tablets that are the subject of Teva's ANDA No. 77-460 will not infringe any valid claim of the '808 patent.  Nor did the filing of Teva's ANDA infringe any valid claim of the '808 patent.

### Second Counterclaim

76.    Teva reiterates the allegations contained in paragraphs 1-75 as if fully set forth herein.

77.    The '808 patent is invalid for failure to satisfy the provisions of one or more of sections 101, 102, 103, 112 and 116 of Title 35 of the United States Code.

### Third Counterclaim

78.    Teva reiterates the allegations contained in paragraphs 1-77 as if fully set forth herein.

79.    Teva alleges that the '808 patent and each of the claims therein are unenforceable for inequitable conduct.  Individuals substantially involved in the prosecution of the '808 patent knowingly withheld material information from the PTO and/or submitted false and misleading information to the PTO with the intent to deceive the PTO and cause it to issue the '808 patent.

80.    Mr. Gregory Gallagher, the putative sole inventor of the '808 patent, and/or other individuals involved in the prosecution of the patent application from which the '808 patent

issued intentionally misled the PTO by submitting false declaration statements representing that Mr. Gallagher was the sole inventor of the entire alleged invention(s) claimed in the '808 patent.

81.    Mr. Gallagher and/or other individuals substantively involved in the prosecution of the '808 patent intentionally misled the PTO by including statements in the patent specification indicating that ropinirole and the other claimed compounds, unlike the prior art, did not exhibit tachyphylaxis, even though the tests necessary to demonstrate a lack of tachyphylaxis were not conducted prior to the filing date of the '808 patent and when the proper tests were conducted, the results supported the opposite conclusion.

82.    Mr. Gallagher and/or other individuals substantively involved in the prosecution of the '808 patent intentionally misled the PTO by including statements in the patent specification suggesting tests had been conducted in human patients to determine an effective dose of ropinirole hydrochloride that was sufficient to show anti-hypertensive activity, even though no such tests had been done by the filing date of the application from which the '808 patent issued.

83.    At least one individual who should have been named as a joint inventor of the '808 patent knew of material prior art – Cannon, J.G., Demopoulos, B.J., Long, J.P., Flynn J.R. and Sharabi, F.M., "*Proposed Dopaminergic Pharmacophore of Lergotrile, Pergolide, and Related Ergot Alkaloid Derivatives,*" J. Med. Chem. - Communications to the Editor, 1981, Vol. 24: 238-240 (1981) ("Cannon 1981 article")–but did not disclose that prior art reference to the PTO despite having a duty to disclose material prior art references to the PTO pursuant to § 1.56 of Title 37 of the Code of Federal Regulations.

84.     Based on the inequitable conduct committed by Mr. Gallagher and/or other individuals substantially involved in the prosecution of the '808 patent, the '808 patent and all of its claims are unenforceable.

### Fourth Counterclaim

85.     Teva reiterates the allegations contained in paragraphs 1-84 as if fully set forth herein.

86.     The manufacture, use, offer to sell, sale, and/or importation into the United States of the ropinirole hydrochloride tablets that are the subject of Teva's ANDA No. 77-460 will not infringe any valid claim of the '860 patent. Nor did the filing of Teva's ANDA infringe any valid claim of the '860 patent.

### Fifth Counterclaim

87.     Teva reiterates the allegations contained in paragraphs 1-86 as if fully set forth herein.

88.     The '860 patent is invalid for failure to satisfy the provisions of one or more of sections 101, 102, 103, 112 and 116 of Title 35 of the United States Code.

### Sixth Counterclaim

89.     Teva reiterates the allegations contained in paragraphs 1-88 as if fully set forth herein.

90.     Teva alleges that the '860 patent and all of the claims therein are unenforceable for inequitable conduct.

91.     Teva alleges that Dr. David A. A., Owen, the putative sole inventor of the '860 patent, and/or other individuals involved in the prosecution of the patent application from which the '860 patent issued intentionally misled the PTO by submitting false declaration statements

representing that Dr. Owen was the sole inventor of the entire alleged invention(s) claimed in the '860 patent.

92.    Teva alleges Dr. Owen and/or other individuals involved in the prosecution of the patent application from which the '860 patent issued intentionally misled the PTO by mischaracterizing the properties of the prior art compound bromocriptine and withholding prior art references which would have indicated to the PTO that what was already known in the art about ropinirole would have been sufficient for a person of ordinary skill in the art to appreciate that ropinirole could be used to treat humans with Parkinson's disease.

93.    Based on the inequitable conduct committed by Dr. Owen and/or other individuals substantially involved in the prosecution of the '860 patent, the '860 patent and all of its claims are unenforceable.

**PRAYER FOR RELIEF**

WHEREFORE, defendant Teva Pharmaceuticals USA, Inc. respectfully requests that:

a)    The filing of Teva's ANDA No. 77-460 be declared not to infringe any valid claims of the '808 and '860 patents;

b)    The manufacture, use, offer to sell, sale, and/or importation into the United States of Teva's ropinirole hydrochloride tablets that are the subject of Teva's ANDA No. 77-460 be declared not to infringe any valid claims of the '808 and '860 patents;

c)    The '808 patent be declared invalid;

d)    The '808 patent be declared unenforceable on grounds of inequitable conduct;

e)    The '860 patent be declared invalid;

f)    The '860 patent be declared unenforceable on grounds of inequitable conduct;

g)    Teva be awarded its costs in this action;

h)    Teva be awarded its attorneys' fees pursuant to 35 U.S.C. § 285; and

i)    Teva be awarded such other and further relief as this Court may deem just and proper.

Date: _____

Respectfully submitted,

_____
Josy W. Ingersoll (#1088)
**YOUNG CONANWAY STARGATT
& TAYLOR, LLP**
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware  19899-0391
(302) 571-6600

Jay P. Lefkowitz
Edward C. Donovan
Charanjit Brahma
Corey J. Manley
*Admitted pro hac vice*
**KIRKLAND & ELLIS LLP**
655 15th Street, N.W.
Washington, D.C. 20005-5793
(202) 879-5000

*Attorneys for Teva Pharmaceuticals USA, Inc.*

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| SMITH KLINE & FRENCH LABORATORIES, LTD, and SMITHKLINE BEECHAM CORP., d/b/a GLAXOSMITHKLINE, | : : : | |
| Plaintiffs, | : : : | Civil Action No. 05-197 GMS |
| v. | : : | |
| TEVA PHARMACEUTICALS USA, INC., | : : : | |
| Defendant. | : : : | |

## FIRST AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS OF DEFENDANT TEVA PHARMACEUTICALS USA, INC.

Defendant Teva Pharmaceuticals USA, Inc., ("Teva") answers the Complaint of Smith Kline & French Laboratories, Ltd, and SmithKline Beecham Corp., d/b/a GlaxoSmithKline, ("GSK") as follows:

1.     Teva admits that plaintiffs purport to assert the claims set forth in Paragraph 1 of the Complaint.  Teva denies that plaintiffs' claims are valid or have merit.  Teva admits that it has filed an Abbreviated New Drug Application ("ANDA") seeking the approval of its 4-(2-di-n-propylaminoethyl)-2(3H)-indolone ("ropinirole") hydrochloride tablets.  Teva admits that the act, as alleged arises under the patent laws of the United States.

2.     Teva states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 2 of the Complaint, and on that basis denies each and every one of the allegations set forth therein.

3.     Teva states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 3 of the Complaint, and on that basis denies each and every one of the allegations set forth therein.

4.     Teva states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 4 of the Complaint, and on that basis denies each and every one of the allegations set forth therein.

5.     Teva admits the allegations set forth in Paragraph 5 of the Complaint.

6.     Teva admits that this Court has jurisdiction over plaintiffs' claims pursuant to Title 28 U.S.C. §§ 1331, 1338(a), 2201 and 2202.

7.     Teva admits that this Court has jurisdiction over Teva for the purposes of this action.

8.     Teva admits that venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 1400(b).

9.     Teva admits that United States Patent No. 4,452,808 (the "'808 patent") is entitled "4-Aminoalkyl-2(3H)-Indolones," and states on its face that it was issued on June 5, 1984, identifying Gregory Gallagher, Jr., as the inventor. Teva further admits that the '808 patent states on its face that it was assigned to SmithKline Beckman Corporation. Teva admits that the '808 patent purports to claim certain 4-aminoalkyl-2(3H)-indolone compounds and pharmaceutical compositions. Teva denies that the claims of the '808 patent are valid and enforceable. Teva states that it is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 9 of the Complaint, and on that basis denies each and every one of the remaining allegations set forth therein.

2

10.    Teva states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 10 of the Complaint, and on that basis denies each and every one of the allegations set forth therein.

11.    Teva admits that United States Patent No. 4,824,860 (the "'860 patent") is entitled "Treatment of Parkinsons Disease" and states on its face that it was issued on April 25, 1989, identifying David A. A. Owen, as the inventor.  Teva further admits that the '860 patent states on its face that it was assigned to Smith Kline & French Laboratories, Ltd.  Teva admits that the '860 patent purports to claim a method of treating Parkinson's Disease by administering an effective non-toxic amount of 4-aminoalkyl-2(3H)-indolone compounds.  Teva denies that the claims of the '860 patent are valid and enforceable.  Teva states that it is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 11 of the Complaint, and on that basis denies each and every one of the remaining allegations set forth therein.

12.    Teva states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 12 of the Complaint, and on that basis denies each and every one of the allegations set forth therein.

13.    Teva admits that GSK sells ReQuip®, a commercial formulation of ropinirole hydrochloride.  Teva further admits that GSK is identified by the United States Food and Drug Administration ("FDA") as the holder of approved New Drug Application ("NDA") No. 20-658 for ropinirole hydrochloride tablets in dosages of Eq. 0.25 mg base, 0.5 mg base, 1 mg base, 2 mg base, 3 mg base, 4 mg base, and 5 mg base.  Teva states that it is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in

Paragraph 13 of the Complaint, and on that basis denies each and every one of the remaining allegations set forth therein.

14.     Teva admits the allegations set forth in Paragraph 14 of the Complaint.

15.     Teva admits the allegations set forth in Paragraph 15 of the Complaint.

16.     Teva admits that the drug product for which its ANDA No. 77-460 seeks FDA approval contains as the active ingredient ropinirole hydrochloride.  Teva admits that the Eq. 0.25 mg base, 0.5 mg base, 1 mg base, 2 mg base, 3 mg base, 4 mg base, and 5 mg base ropinirole hydrochloride tablets that are the subject of its ANDA No. 77-460 are bioequivalent to GSK's Eq. 0.25 mg base, 0.5 mg base, 1 mg base, 2 mg base, 3 mg base, 4 mg base, and 5 mg base Requip tablets within the meaning of FDA regulations.  Teva further admits that its proposed labeling complies with FDA ANDA labeling requirements.  Teva denies the remaining allegations set forth in Paragraph 16 of the Complaint.

17.     Teva admits the allegations set forth in Paragraph 17 of the Complaint.

18.     Teva admits the allegations set forth in Paragraph 18 of the Complaint.

19.     Teva reiterates its responses to the allegations contained in the preceding paragraphs as if fully set forth herein.

20.     Teva admits that the submission of Teva's ANDA No. 77-460 to obtain approval for the manufacture, use, offering for sale, sale or importation into the United States of Teva's ropinirole hydrochloride tablets constitutes a technical act of infringement under 35 U.S.C. § 271(e)(2)(A) sufficient for jurisdiction, but denies any allegation of infringement for any other purposes.  Teva denies that the manufacture, use, offering for sale, sale or importation into the United States of Teva's ropinirole hydrochloride tablets would infringe any valid claim of the '808 patent or that its filing of its ANDA is grounds for a finding of infringement.

21.     Teva admits that the submission of Teva's ANDA No. 77-460 to obtain approval for the manufacture, use, offering for sale, sale or importation into the United States of Teva's ropinirole hydrochloride tablets creates an actual case or controversy with respect the infringement of the '808 patent.  Teva denies that the manufacture, use, offering for sale, sale or importation into the United States of Teva's ropinirole hydrochloride tablets would infringe any valid claim of the '808 patent.  Teva further denies the remaining allegations set forth in Paragraph 21 of the Complaint.

22.     Teva denies that FDA approval of the Teva's ANDA No. 77-460 will infringe any valid claim of the '808 patent.  Teva further denies the remaining allegations set forth in Paragraph 22 of the Complaint.

23.     Teva admits that it had knowledge of the '808 patent prior to filing Teva ANDA No. 77-460.  Teva denies that this knowledge can or does form the basis for a finding of willful infringement and as such denies the remaining allegations set forth in Paragraph 23 of the Complaint.

24.     Teva denies the allegations set forth in Paragraph 24 of the Complaint.

25.     Teva reiterates its responses to the allegations contained in the preceding paragraphs as if fully set forth herein.

26.     Teva admits that the submission of Teva's ANDA No. 77-460 to obtain approval for the manufacture, use, offering for sale, sale or importation into the United States of Teva's ropinirole hydrochloride tablets constitutes a technical act of infringement under 35 U.S.C. § 271(e)(2)(A) sufficient for jurisdiction but denies any allegation of infringement for any other purposes.  Teva denies that the manufacture, use, offering for sale, sale or importation into the

United States of Teva's ropinirole hydrochloride tablets would infringe any valid claim of the '860 patent or that its filing of its ANDA is grounds for a finding of infringement.

27.    Teva admits that the submission of Teva's ANDA No. 77-460 to obtain approval for the manufacture, use, offering for sale, sale or importation into the United States of Teva's ropinirole hydrochloride tablets for the treatment of Parkinson's Disease creates an actual case or controversy with respect the infringement of the '860 patent. Teva denies that the manufacture, use, offering for sale, sale or importation into the United States of Teva's ropinirole hydrochloride tablets would infringe any valid claim of the '860 patent. Teva further denies the remaining allegations set forth in Paragraph 27 of the Complaint.

28.    Teva denies that FDA approval of the Teva's ANDA No. 77-460 will infringe any valid claim of the '860 patent. Teva further denies the remaining allegations set forth in Paragraph 28 of the Complaint.

29.    Teva admits that it had knowledge of the '860 patent prior to filing Teva ANDA No. 77-460. Teva denies that this knowledge can or does form the basis for a finding of willful infringement and as such denies the remaining allegations set forth in Paragraph 29 of the Complaint.

30.    Teva denies the allegations set forth in Paragraph 30 of the Complaint.

### First Defense

31.    The manufacture, use, offering for sale, sale or importation of the ropinirole hydrochloride tablets that are the subject of Teva's ANDA No. 77-460 will not infringe any valid claim of the '808 patent.

32.    Teva's filing of its ANDA No. 77-460 did not infringe any valid claim of the '808 patent.

**Second Defense**

33.     Each of the claims of the '808 patent are invalid for failure to satisfy one or more

of sections 101, 102, 103, 112 and 116 of Title 35 of the United States Code.

**Third Defense**

34.     The claims of the '808 patent are unenforceable for inequitable conduct for at

least the reasons set forth below.

35.     The '808 patent identifies Mr. Gregory Gallagher as the sole inventor of the

invention(s) claimed therein.  On December 6, 1982, Mr. Gallagher executed a declaration of

inventorship (Ex. A) attesting that, in his belief, he was the sole inventor of the invention(s)

claimed in the '808 patent.  This declaration was submitted to the U.S. Patent & Trademark

Office ("PTO") on the same day with the application from which the '808 patent issued.

36.     Mr. Gallagher, the putative sole inventor, was not the sole inventor of the entire

claimed invention(s).  Teva alleges that Mr. Gallagher's declaration statement in which he

claimed to be the sole inventor of the invention(s) claimed in the '808 patent was materially false

and was submitted with the intent to deceive the PTO to convince it to issue the '808 patent.

37.     On its face, independent claim 1 of the '808 patent covers numerous drug

compounds and pharmaceutically acceptable salts thereof.   Only one of these claimed

compounds is 4-(2-di-n-propylaminoethyl) –2(3H)-indolone (*i.e.*, ropinirole) and only one of the

claimed pharmaceutically acceptable salts of ropinirole is ropinirole hydrochloride.

Furthermore, on its face, dependent claim 2 also covers compounds other than ropinirole,

dependent claim 3 covers both ropinirole in its free base form and pharmaceutically acceptable

salts thereof, and dependent claim 4 covers ropinirole in only its free base form.  On their face,

dependent claims 6 and 7 do not cover either ropinirole or ropinirole hydrochloride.

38.    On its face, independent claim 8 covers compositions that include a nontoxic agonist quantity of any of the compounds covered in claim 1, and dependent claims 9, 11 and 12 also cover compositions including compounds other than ropinirole.

39.    Mr. Gallagher did not conceive of or reduce to practice the entire claimed invention(s) of the '808 patent.  Mr. Gallagher never synthesized any compound covered by the claims of the '808 patent other than the salt compound ropinirole hydrochloride.  Further, when Mr. Gallagher first synthesized ropinirole hydrochloride, he had no expectation as to whether it would have utility in treating the cardiovascular conditions identified in the specification of the '808 patent or for any other use.  To the extent Mr. Gallagher ever appreciated that ropinirole or ropinirole hydrochloride could be used to treat the cardiovascular conditions identified in the specification of the '808 patent, he was not the first person to do so.

40.    Prior to Plaintiffs' submission to the Patent Office of the patent application from which the '808 patent issued, Mr. Gallagher did not believe that the compounds of claim 1 shared common structural features such that it would be expected that all of the claimed compounds would exhibit similar physiological effects upon administration.

41.    Other individuals at GSK tested compounds or salts that Mr. Gallagher synthesized, including ropinirole and/or ropinirole hydrochloride, to determined whether the compounds or salts exhibited cardiovascular activity.  These other individuals appreciated that ropinirole or ropinirole hydrochloride had utility in treating the cardiovascular conditions identified in the '808 patent specification before Mr. Gallagher did.

42.    According to his testimony, Mr. Gallagher never reviewed the patent application from which the '808 patent issued, either before or after that application was submitted to the Patent Office.  Without reviewing the patent application, and particularly its claims, Mr.

Gallagher was incapable of forming a good faith belief as to whether he was the sole inventor of the invention(s) claimed in the patent application and, ultimately, the '808 patent. Thus, Mr. Gallagher and other individuals working for Plaintiffs caused Mr. Gallagher's declaration of inventorship to be submitted to the Patent Office with the intent to deceive the Patent Office.

43.    Teva alleges the applicants' nonjoinder of individual(s) responsible for conceiving of portions of the claimed invention(s) covering compounds other than ropinirole or its hydrochloride salt and Mr. Gallagher's and the applicants' submission of the false declaration of inventorship were done with deceptive intent.

44.    The '808 patent is further unenforceable for inequitable conduct, because the '808 patent specification misstates that one of the claimed compounds, ropinirole, was shown to "not cause tachyphylaxis … as did its 7-hydroxy congener of the prior art" and that this was a proper basis for inferring that the remaining claimed compounds also "may not be subject to tachyphylaxis." Mr. Gallagher's signed inventorship declaration states that all of the statements in the '808 patent application were true to the best of his knowledge. However, at the time that he signed that declaration, Mr. Gallagher had not confirmed the accuracy of those statements in the '808 patent specification regarding ropinirole's lack of tachyphylaxis effects through experimental tests. Subsequently, it has been shown that ropinirole is subject to tachyphylaxis, or increasing tolerance to the administration of a drug dose.

45.    Mr. Gallagher falsely attested to this statement in the patent specification with the intent to deceive the PTO and convince it to accept the assertions in the '808 patent that ropinirole and the other claimed compounds had more selective activity and improved physiological characteristics from compounds known in the prior art. Alternatively or in addition thereto, an individual(s) who should have properly been named as a joint inventor for

the '808 patent or who was involved in the preparation or prosecution of the '808 patent application knew that the '808 patent specification statements regarding tachyphylaxis were false but permitted the '808 patent application to be submitted to the PTO with the aforementioned false statements with the intent to deceive the PTO and convince it to accept the assertions in the '808 patent that ropinirole had more selective activity and improved physiological characteristics from compounds known in the prior art.

46.     The submission of these false statements to the PTO is inherently material, and the '808 patent specification's statements differentiating the claimed invention from compounds known in the prior art made these false statements to the PTO explicitly material.

47.     The '808 patent is further unenforceable for inequitable conduct, because the '808 patent specification wrongly suggests that one of the claimed compounds, ropinirole hydrochloride, was tested to determine an effective dose "to show anti-hypertensive activity" in "an average size human." None of the claimed compounds, including ropinirole hydrochloride, was tested in humans for anti-hypertensive activity, nor were any such human test results used or usable by Mr. Gallagher or anyone else to determine an effective dose range for treating humans prior to the filing of the '808 patent application. The statements in the '808 patent implying that an effective dosage range had been determined for causing anti-hypertensive effects in humans by administering ropinirole hydrochloride were materially false. These speculative dose ranges would have been misconstrued by a reasonable PTO examiner as supporting the enablement of some or all of the claimed inventions, at least in part. Mr. Gallagher and other individuals involved in the prosecution of the '808 patent intended to deceive the PTO by allowing the '808 patent application to be submitted to the PTO with these statements suggesting that an effective dose range for ropinirole hydrochloride had been determined.

10

48.     The '808 patent is further unenforceable for inequitable conduct, because at least one individual who should have been named as a joint inventor with respect to the claimed invention(s), J. Paul Hieble, knew of at least one material prior art reference– Cannon, J.G., Demopoulos, B.J., Long, J.P., Flynn J.R. and Sharabi, F.M., "*Proposed Dopaminergic Pharmacophore of Lergotrile, Pergolide, and Related Ergot Alkaloid Derivatives,*" J. Med. Chem. - Communications to the Editor, 1981, Vol. 24: 238-240 (1981) ("Cannon 1981 article")– and had a duty to disclose material prior art references to the PTO pursuant to § 1.56 of Title 37 of the Code of Federal Regulations.  The Cannon 1981 article discloses a structurally similar compound to ropinirole and describes that compound as having both cardiovascular and central nervous system dopamine-agonist effects when administered in animal models.  Rather than disclose that material prior art to the PTO, Mr. Gallagher and/or other individuals substantively involved in the prosecution of the patent application from which the '808 patent issued intentionally omitted Mr. Hieble from the list of inventors for the '808 patent with the intent to deceive the PTO and prevent the disclosure of material prior art to the PTO during the examination of the patent application.

49.     Teva alleges that the information withheld and the submission of misleading and/or incorrect declaration testimony during the prosecution of the '808 patent were material to the patentability of the claimed invention(s).

50.     Teva alleges that the withholding of information and the submission of misleading and/or incorrect declaration testimony during the prosecution of the '808 patent were done with the intention of deceiving the PTO.

51.    The intentional withholding of material information and submission of false and misleading declaration testimony during prosecution of the '808 patent constituted inequitable conduct which renders the '808 patent unenforceable.

### Fifth Defense

52.    The manufacture, use, offering for sale, sale or importation of the ropinirole hydrochloride tablets that are the subject of Teva's ANDA No. 77-460 will not infringe any valid claim of the '860 patent.

53.    Teva's filing of its ANDA No. 77-460 did not infringe any valid claim of the '860 patent.

### Sixth Defense

54.    Each of the claims of the '860 patent are invalid for failure to satisfy one or more of sections 101, 102, 103, 112 and 116 of Title 35 of the United States Code.

### Seventh Defense

55.    The '860 patent and all of the claims therein are unenforceable for inequitable conduct.

56.    The '860 patent identifies Dr. David A. A. Owen as the sole inventor of the invention(s) claimed therein.

57.    On May 19, 1988, Plaintiffs submitted a declaration of inventorship executed by Dr. Owen (Ex. B) attesting that, in his belief, he was the sole inventor of the invention(s) claimed in the '808 patent.  In his declaration, Dr. Owen further attested that he had reviewed and underst[oo]d the contents of the above-identified specification, including the claims ..."  This declaration was submitted to the PTO with the application from which the '860 patent issued.

58.    Dr. Owen, the putative sole inventor, was not the sole inventor of the entire claimed invention(s). Dr. Owen's declaration statement in which he claimed to be the sole inventor of the invention(s) claimed in the '860 patent was materially false and was submitted with the intent to deceive the PTO to convince it to issue the '860 patent.

59.    On its face, independent claim 1 of the '860 patent is directed to a method of treating Parkinson's disease by administering one of numerous specified drug compounds or pharmaceutically acceptable salts thereof. Only one of these specified compounds is 4-(2-di-n-propylaminoethyl) −2(3H)-indolone (*i.e.*, ropinirole) and only one of the claimed pharmaceutically acceptable salts of ropinirole is ropinirole hydrochloride. Furthermore, on its face, dependent claim 2 covers the method of treatment in which ropinirole in its free base form is administered.

60.    To the extent Dr. Owen considered using indolone compounds to treat Parkinson's disease, Dr. Owen never conceived of using any compound other than ropinirole or its salts for that purpose. However, claim 1 of the '860 patent identifies many compounds other than ropinirole or its hydrochloride salt for use in the claimed method of treatment of Parkinson's Disease. Yet in his declaration of inventorship, Dr. Owen falsely attested to the PTO that he was the sole inventor of the '860 patent. Plaintiffs' nonjoinder of individual(s) responsible for conceiving of portions of the claimed invention(s) covering compounds other than ropinirole or its hydrochloride salt was done with the intent to deceive the PTO so that the '860 patent would be issued.

61.    Further, even to the extent Dr. Owen considered using ropinirole or its salts to treat Parkinson's disease, he was not the first person to develop a definite and permanent idea that those compounds could be used for that purpose. The idea that ropinirole could be used to

treat Parkinson's Disease was first proposed in a September 1986 report by Professors Brenda Costall and R.J. Naylor of the University of Bradford that was received by Dr. Owen. Despite knowing that Professors Costall and Naylor had conceived of a method of treating Parkinson's disease by administering ropinirole before he had conceived of that idea, Dr. Owen nevertheless submitted a sworn declaration to the PTO in which he claimed that, based on his review of the claims and specification of the patent application from which the '860 patent issued, he was the sole inventor of the whole invention(s) claimed therein. At the time he submitted the declaration, Dr. Owen knew that his assertion of sole inventorship was false. Dr. Owen's submission of his false inventorship declaration to the PTO was intended to deceive the PTO regarding the correct inventorship of the '860 patent and convince the PTO to issue the '860 patent.

62.    The '860 patent specification misleadingly states that the anti-Parkinsonian activity of ropinirole and the other claimed compounds is the result of their post-synaptic, rather than pre-synaptic, site of action and that the fact that ropinirole and the other claimed compounds were known to act pre-synaptically would not lead a person of ordinary skill in the art to conclude that these compounds could be used to treat Parkinson's disease. The '860 patent supported this assertion by mischaracterizing the prior art bromocriptine compound as a "post-synaptic dopamine agonist" in the brain and, on that basis, distinguishing the activity in the brain of the claimed indolone compounds of the '860 patent from the well-known pre-synaptic activity of certain indolone derivatives as cardiovascular agents. However, GSK's own researchers had previously published articles indicating that bromocriptine was a pre-synaptic dopamine agonist, such as Robert M. DeMarinis *et al.*, "Syntheses and In-Vitro Evaluation of 4-(2-Aminoethyl)-2(3H)-indolones and Related Compounds as Peripheral Prejunctional Dopamine Receptor

Agonists," J. Med. Chem. 29:939-947 (1986). The characterization of bromocriptine in the '860 patent specification directly contradicted the published articles by GSK's own researchers. Moreover, Dr. Owen, a co-author of the paper by DeMarinis *et al.*, did not disclose this material prior art to the PTO. Disclosure of this prior art would have enabled the PTO examiner to independently discover the false statements in the '860 patent regarding the post-synaptic activity of bromocriptine. A reasonable PTO examiner would have considered this prior art knowledge and the DeMarinis *et al.* paper material to patentability. As admitted in the '860 patent specification, the pre-synaptic activity of ropinirole as a cardiovascular agent was well-known in the art. Furthermore, although the false statements in the '860 patent were brought to the attention of Plaintiffs' patent attorneys and/or agents involved in the prosecution of the '860 patent application, neither Plaintiffs nor Dr. Owen took steps to correct the false statements in the '860 patent specification. Accordingly, Dr. Owen and other individuals acting on behalf of Plaintiffs who were substantially involved in the prosecution of the application from which the '860 patent issues intentionally withheld from the PTO information material to the patentability of the invention(s) claimed in the '860 patent and did so with the intent to deceive the PTO and convince it to issue the '860 patent.

63.    Teva alleges that the withholding of information and the submission of misleading and/or false declaration testimony during the prosecution of the '860 patent were material to the patentability of the claimed invention(s).

64.    Teva alleges that this information was withheld and the misleading and/or incorrect declaration testimony was submitted with the intention of deceiving the PTO to cause the PTO to issue the '860 patent.

65.    The withholding of material information and submission of misleading and/or incorrect declaration testimony during prosecution of the '860 patent constituted inequitable conduct which renders the '860 patent unenforceable.

## PRAYER FOR RELIEF

WHEREFORE, defendant Teva Pharmaceuticals USA, Inc. respectfully requests that:

a) The Complaint of Plaintiffs Smith Kline & French Laboratories, Ltd, and SmithKline Beecham Corp., d/b/a GlaxoSmithKline, be dismissed with prejudice;

b) The filing of Teva's ANDA No. 77-460 be found not to infringe any valid claims of the '808 patent;

c) The filing of Teva's ANDA No. 77-460 be found not to infringe any valid claims of the '860 patent;

d) The manufacture, use, offering for sale, sale or importation into the United States of Teva's ropinirole hydrochloride tablets that are the subject of Teva's ANDA No. 77-460 be found not to infringe any valid claim of the '808 patent;

e) The manufacture, use, offering for sale, sale or importation into the United States of Teva's ropinirole hydrochloride tablets that are the subject of Teva's ANDA No. 77-460 be found not to infringe any valid claim of the '860 patent;

f) The '808 patent and each of its claims be found invalid;

g) The '808 patent and each of its claims be found unenforceable on grounds of inequitable conduct;

h) The '860 patent and each of its claims be found invalid;

i) The '860 patent and each of its claims be found unenforceable on grounds of inequitable conduct;

j) Teva be awarded its costs in this action;

k) Teva be awarded its attorneys' fees pursuant to 35 U.S.C. § 285; and

l) Teva be awarded such other and further relief as this Court may deem just and proper.

## COUNTERCLAIMS
### Jurisdiction and Venue

16

66.     These counterclaims seek declaratory judgments pursuant to 28 U.S.C. §§ 2201 and 2202.

67.     This Court has jurisdiction over these counterclaims pursuant to Title 35 U.S.C. and 28 U.S.C. §§ 1331 and 1338(a).

68.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

69.     A justiciable controversy exists between the parties hereto with respect to validity, scope, and infringement of certain claims of U.S. Patent Nos. 4,452,808 and 4,824,860.

## Acts Giving Rise to this Action

70.     GSK is identified by the FDA as the holder of approved NDA No. 20-658 for ropinirole hydrochloride tablets in dosages of Eq. 0.25 mg base, 0.5 mg base, 1 mg base, 2 mg base, 3 mg base, 4 mg base, and 5 mg base.

71.     GSK caused the '808 and '860 patents to be listed in the FDA publication entitled "Approved Drug Products With Therapeutic Equivalence Evaluation" (the "Orange Book") as patents which claim the drug for which GSK submitted the NDA or which claim a method of using such drug and with respect to which a claim of patent infringement could reasonably be asserted if a person not licensed by the owner engaged in the manufacture, use, or sale of the drug, or in the method of using the drug.  GSK is also the record owner of these two patents.

72.     Teva submitted its ANDA No. 77-460 to obtain FDA approval to engage in the commercial manufacture, use and sale of Eq. 0.25 mg base, 0.5 mg base, 1 mg base, 2 mg base, 3 mg base, 4 mg base, and 5 mg base ropinirole hydrochloride tablets, prior to the expiration of the '808 and '860 patents.

73.     Teva sent GSK letters dated February 21, 2005 ("Notification Letters") notifying each that Teva's ANDA was received by the FDA, and that Teva's ANDA contained a

"paragraph IV certification" that the '808 and '860 patents are invalid, unenforceable and/or will not be infringed by the commercial manufacture, use, or sale of the product described in Teva's ANDA.

## First Counterclaim

74. Teva reiterates the allegations contained in paragraphs 1-73 as if fully set forth herein.

75. The manufacture, use, offer to sell, sale, and/or importation into the United States of the ropinirole hydrochloride tablets that are the subject of Teva's ANDA No. 77-460 will not infringe any valid claim of the '808 patent. Nor did the filing of Teva's ANDA infringe any valid claim of the '808 patent.

## Second Counterclaim

76. Teva reiterates the allegations contained in paragraphs 1-75 as if fully set forth herein.

77. The '808 patent is invalid for failure to satisfy the provisions of one or more of sections 101, 102, 103, 112 and 116 of Title 35 of the United States Code.

## Third Counterclaim

78. Teva reiterates the allegations contained in paragraphs 1-77 as if fully set forth herein.

79. Teva alleges that the '808 patent and each of the claims therein are unenforceable for inequitable conduct. Individuals substantially involved in the prosecution of the '808 patent knowingly withheld material information from the PTO and/or submitted false and misleading information to the PTO with the intent to deceive the PTO and cause it to issue the '808 patent.

80. Mr. Gregory Gallagher, the putative sole inventor of the '808 patent, and/or other individuals involved in the prosecution of the patent application from which the '808 patent

issued intentionally misled the PTO by submitting false declaration statements representing that Mr. Gallagher was the sole inventor of the entire alleged invention(s) claimed in the '808 patent.

81.    Mr. Gallagher and/or other individuals substantively involved in the prosecution of the '808 patent intentionally misled the PTO by including statements in the patent specification indicating that ropinirole and the other claimed compounds, unlike the prior art, did not exhibit tachyphylaxis, even though the tests necessary to demonstrate a lack of tachyphylaxis were not conducted prior to the filing date of the '808 patent and when the proper tests were conducted, the results supported the opposite conclusion.

82.    Mr. Gallagher and/or other individuals substantively involved in the prosecution of the '808 patent intentionally misled the PTO by including statements in the patent specification suggesting tests had been conducted in human patients to determine an effective dose of ropinirole hydrochloride that was sufficient to show anti-hypertensive activity, even though no such tests had been done by the filing date of the application from which the '808 patent issued.

83.    At least one individual who should have been named as a joint inventor of the '808 patent knew of material prior art – Cannon, J.G., Demopoulos, B.J., Long, J.P., Flynn J.R. and Sharabi, F.M., *"Proposed Dopaminergic Pharmacophore of Lergotrile, Pergolide, and Related Ergot Alkaloid Derivatives,"* J. Med. Chem. - Communications to the Editor, 1981, Vol. 24: 238-240 (1981) ("Cannon 1981 article")–but did not disclose that prior art reference to the PTO despite having a duty to disclose material prior art references to the PTO pursuant to § 1.56 of Title 37 of the Code of Federal Regulations.

84.    <u>Based on the inequitable conduct committed by Mr. Gallagher and/or other individuals substantially involved in the prosecution of the '808 patent, the '808 patent and all of its claims are unenforceable.</u>

### Fourth Counterclaim

85.    Teva reiterates the allegations contained in paragraphs 1-84 as if fully set forth herein.

86.    The manufacture, use, offer to sell, sale, and/or importation into the United States of the ropinirole hydrochloride tablets that are the subject of Teva's ANDA No. 77-460 will not infringe any valid claim of the '860 patent.  Nor did the filing of Teva's ANDA infringe any valid claim of the '860 patent.

### Fifth Counterclaim

87.    Teva reiterates the allegations contained in paragraphs 1-86 as if fully set forth herein.

88.    The '860 patent is invalid for failure to satisfy the provisions of one or more of sections 101, 102, 103, 112 and 116 of Title 35 of the United States Code.

### Sixth Counterclaim

89.    <u>Teva reiterates the allegations contained in paragraphs 1-88 as if fully set forth herein.</u>

90.    <u>Teva alleges that the '860 patent and all of the claims therein are unenforceable for inequitable conduct.</u>

91.    <u>Teva alleges that Dr. David A. A. Owen, the putative sole inventor of the '860 patent, and/or other individuals involved in the prosecution of the patent application from which the '860 patent issued intentionally misled the PTO by submitting false declaration statements</u>

20

representing that Dr. Owen was the sole inventor of the entire alleged invention(s) claimed in the '860 patent.

92.    Teva alleges Dr. Owen and/or other individuals involved in the prosecution of the patent application from which the '860 patent issued intentionally misled the PTO by mischaracterizing the properties of the prior art compound bromocriptine and withholding prior art references which would have indicated to the PTO that what was already known in the art about ropinirole would have been sufficient for a person of ordinary skill in the art to appreciate that ropinirole could be used to treat humans with Parkinson's disease.

93.    Based on the inequitable conduct committed by Dr. Owen and/or other individuals substantially involved in the prosecution of the '860 patent, the '860 patent and all of its claims are unenforceable.

**PRAYER FOR RELIEF**

WHEREFORE, defendant Teva Pharmaceuticals USA, Inc. respectfully requests that:

a)    The filing of Teva's ANDA No. 77-460 be declared not to infringe any valid claims of the '808 and '860 patents;

b)    The manufacture, use, offer to sell, sale, and/or importation into the United States of Teva's ropinirole hydrochloride tablets that are the subject of Teva's ANDA No. 77-460 be declared not to infringe any valid claims of the '808 and '860 patents;

c)    The '808 patent be declared invalid;

d)    The '808 patent be declared unenforceable on grounds of inequitable conduct;

e)    The '860 patent be declared invalid;

f)    The '860 patent be declared unenforceable on grounds of inequitable conduct;

g)    Teva be awarded its costs in this action;

h)    Teva be awarded its attorneys' fees pursuant to 35 U.S.C. § 285; and

i)    Teva be awarded such other and further relief as this Court may deem just and proper.

21

Date: _____                   Respectfully submitted,


                                            _____
                                            Josy W. Ingersoll (#1088)
                                            **YOUNG CONANWAY STARGATT**
                                            **& TAYLOR, LLP**
                                            The Brandywine Building
                                            1000 West Street, 17th Floor
                                            P.O. Box 391
                                            Wilmington, Delaware  19899-0391
                                            (302) 571-6600

                                            Jay P. Lefkowitz
                                            Edward C. Donovan
                                            Charanjit Brahma
                                            Corey J. Manley
                                            *Admitted pro hac vice*
                                            **KIRKLAND & ELLIS LLP**
                                            655 15th Street, N.W.
                                            Washington, D.C. 20005-5793
                                            (202) 879-5000

                                            *Attorneys for Teva Pharmaceuticals USA, Inc.*