# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SMITH KLINE & FRENCH LABORATORIES LIMITED and SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE, <br><br> Plaintiff, <br><br> v. <br><br> TEVA PHARMACEUTICALS USA, INC., <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) )     Civil Action No. 05-197-GMS |

**PLAINTIFF GLAXOSMITHKLINE'S SECOND SUPPLEMENTAL RESPONSES TO
DEFENDANT'S FIRST SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiffs

SmithKline and French Laboratories, Ltd. and SmithKline Beecham Corporation, doing business

as GlaxoSmithKline ("GSK"), hereby respond to the First Set of Interrogatories from Defendant

Teva Pharmaceuticals USA, Inc. ("Teva") as follows:

**GENERAL OBJECTIONS**

GSK incorporates by reference, as if fully set forth herein, the General Objections that

GSK has made in its Responses and Objections to Defendant's First Set of Requests for

Production of Documents and Things.

**Interrogatory No. 7:**

To the extent Plaintiffs allege that there exist any secondary considerations of nonobviousness within the meaning of Graham v. John Deere Co., 383 U.S. 1, 17-18 (1966), with respect to any Asserted Claim of the Patents-In-Suit, including, but not limited to, any allegation of commercial success, long-felt need, failure of others, or "unexpected results" (within the meaning of *In re Geisler*, 116 F.3d 1465, 1469-70 (Fed. Cir. 1997)), state in detail and with particularity the bases for the allegation and identify all documents, things, witnesses or other evidence on which Plaintiffs rely or may rely in support of such allegation(s).

**Response:**

GSK objects to this interrogatory as premature to the extent that it calls for information that will properly be the subject of expert discovery. GSK objects to this interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it calls for "all documents, things, [and] witnesses" regarding the subject matter of the interrogatory. GSK further objects to this interrogatory because it contains two subparts, each of which, pursuant to Local Rule 26.1(b), counts as a separate interrogatory.

Subject to and without waiving the foregoing objections and its General Objections, GSK responds as follows:

The synthesis of ropinirole produced surprising and unexpected results in that one of ordinary skill in the art would not have expected ropinirole or other claimed compounds, each of which lacks a 7-hydroxy group, to have dopamine agonist activity. In addition, others tried and failed to develop a compound that had the favorable pharmacological profile demonstrated by the claimed compounds of the '808 patent. Furthermore, as indicated by its ANDA, Teva has copied or intends to copy the compounds disclosed in the '808 patent.

-10-

The discovery that ropinirole could treat Parkinson's disease was surprising and unexpected because this compound had previously been reported as not producing the central behavioral effects often seen with dopamine agonists. Dr. Owen realized that, contrary to expectations, ropinirole had CNS effects and could be a successful treatment for central nervous system disorders such as Parkinson's disease. In addition, ropinirole's use for Parkinson's disease satisfied a long-standing clinical need for treatments that targeted only certain dopamine receptors and therefore created fewer side effects. Ropinirole showed distinct unexpected advantages over known dopamine agonists in having been found to have additional effects on the central nervous system, namely, anti-depressant and anxiolytic effects, and minimal liability to cause dyskinesia. Ropinirole's more selective binding activity and fewer side effects therefore expanded the treatment options for Parkinson's patients. Likewise, ropinirole's use for the treatment of Restless Legs Syndrome (RLS) has satisfied a long-standing clinical need for RLS patients. Furthermore, as indicated by its ANDA, Teva has copied or intends to copy the compounds disclosed in the '860 patent.

Products sold by GSK embodying the inventions claimed in the '808 and '860 patent have enjoyed substantial commercial success attributable to the patented features of the claimed inventions for the treatment of Parkinson's Disease and Restless Legs Syndrome.

Subject to and without waiving the foregoing objections and its General Objections, and pursuant to Fed. R. Civ. P. 33(d), GSK will produce or make available non-privileged documents from which additional responsive information, if any, relevant to this litigation may be derived, to the extent that they exist in GSK's files and can be located through a reasonable search. Sales information is provided in GSK's annual reports, which have been produced at GSK-REQ010541-010841 and GSK-REQ011654-015612. In addition, documents related to the

commercial success of Requip and its satisfaction of long-felt clinical needs for Parkinson's Disease and RLS patients have been produced at, *e.g.*, GSK-REQ-025074 – GSK-REQ092483. A summary document setting forth financial information regarding Requip has been produced at GSK-REQ094245 – GSK-REQ094254.

**Interrogatory No. 8:**

State whether any of the Patents-In-Suit or Related Applications have ever been asserted in or been the subject of any litigation, arbitration, negotiation, mediation, administrative proceeding (including reissue, reexamination, interferences, and oppositions), or otherwise the subject of an infringement, enforceability, or invalidity assertion by or against a third party, and describe in detail any such circumstances including the concerned patent or application, parties, and court, tribunal or agency (if appropriate), and the two persons most knowledgeable concerning the circumstances.

**Response:**

GSK objects to this request as overly broad in that it seeks information related to other proceedings, regardless of whether this information is relevant to the issues in this case. GSK objects to this interrogatory because it contains two subparts, each of which, pursuant to Local Rule 26.1(b), counts as a separate interrogatory.

Subject to and without waiving the foregoing objections and its General Objections, GSK responds that, aside from this action, the Patents-In-Suit or Related Applications have not been asserted in litigation, arbitration, negotiation, mediation, administrative proceeding (including reissue, reexamination, interferences, and oppositions), or otherwise the subject of an infringement, enforceability, or invalidity assertion by or against a third party.

-12-

**Interrogatory No. 9:**

Identify the name and last known address of each person reasonably likely to have information that bears significantly on the claims and defenses in the present action (including all claims and defenses to Teva's counterclaims), identifying the subjects of the information; and identify by production number or other specific reference all documents, data, compilations, and tangible things in the possession, custody, or control of that person that are likely to bear significantly on the claims and defenses in the present action.

**Response:**

GSK objects to this interrogatory as overbroad to the extent that it requires the identification and address of "each" person and "all" of such person's documents, compilations and tangible things significantly bearing on the claims and defenses in the present action. GSK objects to the request for identification of "all" documents as overly broad and unduly burdensome. GSK will only produce documents in own possession, custody and control; potentially responsive documents provided by Dr. Costall have been produced at GSK-REQ015682-015843. GSK further objects to this interrogatory to the extent that the documents, compilations, and tangible things requested are not within the possession, custody, or control of GSK or are protected from disclosure by the attorney-client privilege and/or attorney work product doctrine. Finally, GSK objects to this interrogatory because it contains three subparts, each of which, pursuant to Local Rule 26.1(b), counts as a separate interrogatory.

Subject to and without waiving the foregoing objections and its General Objections, GSK responds as follows:

-13-

The following persons have been identified by GSK as potentially having information that bears on the present action.

| Name | Subject of Information | Last Known Address |
|---|---|---|
| Brenda Costall, Ph.D. | Aided in testing the effect of ropinirole on the central nervous system | School of Pharmacy, University of Bradford Bradford West Yorkshire BD7 1DP, UK |
| William H. Edgerton | Assisted in prosecution of '808 patent | *Deceased* |
| Roger J. Eden | Involved in pharmacological testing of ropinirole in the United Kingdom | 242 Daniells Welwyn Garden City, Herts AL7 1QQ United Kingdom |
| Vincent L. Fabiano | Assisted in prosecution of '860 patent | Ranbaxy Pharmaceuticals Inc. 600 College Road East Suite 2100 Princeton, NJ 08540 |
| Gregory H. Gallagher | Named inventor of the '808 patent | 7032 Harrington Lane Bradenton, FL 34202 |
| Peter J. Giddings, Ph.D. | Assisted in prosecution of '860 patent | GlaxoSmithKline Services Unlimited 980 Great West Road Brentford Middlesex TW8 9GS |
| Carol Harvey, Ph.D. | A project team leader for drug development of ropinirole in the United Kingdom | GlaxoSmithKline 709 Swedeland Road King of Prussia, PA 19406 |
| J. Paul Hieble, Ph.D. | Involved in the pharmacological testing of ropinirole in the United States | GlaxoSmithKline 709 Swedeland Road King of Prussia, PA 19406 |

| William F. Huffman, Ph.D. | One of the named inventors of the '944 patent | GlaxoSmithKline<br>709 Swedeland Road<br>King of Prussia, PA 19406 |
| David A. A. Owen, Ph.D. | Named inventor of the '860 patent | Coppice Farm<br>Stanton upon Hine Heath<br>Shrewsbury<br>Shropshire SY4 4ET |
| Kevin Reeves | Commercial Success of ReQuip | GlaxoSmithKline<br>5 Moore Drive<br>Research Triangle Park, NC 27789 |
| Annette Wright | Conducted testing of ropinirole in the United Kingdom under direction of Dr. Owen. | 51 Ladder Hill<br>Wheatley<br>Oxford OX33 1SX |

**Interrogatory No. 10:**

Identify each witness that Plaintiffs intend to call at any hearing or trial and the subject matter of the testimony of each such witness, including the facts to which such persons are expected to testify and any exhibits expected to be used in connection with the testimony, and, if testifying as an expert: the opinions to which such expert(s) is expected to testify; the person's qualifications, and all documents authored or contributed to and all presentations given or participated in by such person; all prior hearing, deposition, and trial testimony by such person; a report of the expert's opinion; and all documents and other information relied upon or used by the witness in preparing for his or her testimony and report.

**Response:**

GSK objects to this request as premature because and the deadlines for expert reports and pre-trial submissions have not yet occurred. Additionally, GSK objects to this inquiry to the extent that the information requested is protected from disclosure by the attorney-client privilege and/or attorney work product doctrine. GSK further objects to, as overbroad and duly burdensome, Teva's requests for "all documents authored or contributed to and all presentations given or participated in by" and "all prior hearing, deposition, and trial testimony by" GSK's expert witnesses. Such requests are not limited to any particular subject matter or any particular date range, and, to the extent such information is publicly available, can be located just as easily by Teva as GSK. Finally, GSK further objects to this interrogatory because it contains eight subparts, each of which, pursuant to Local Rule 26.1(b), counts as a separate interrogatory.

Subject to and without waiving the foregoing objections and its General Objections, GSK will provide information regarding identification of fact and expert witnesses in accordance with the deadlines for expert discovery and trial set forth by the Court.

SMITH KLINE & FRENCH LABORATORIES
LIMITED AND SMITHKLINE BEECHAM
CORPORATION, D/B/A GLAXOSMITHKLINE
By their attorneys,

William G. McElwain, Esq.
Henry N. Wixon, Esq.
Amy K. Wigmore, Esq.
Michael Gordon, Esq.
Mark L. Rienzi, Esq.
WILMER, CUTLER, PICKERING,
HALE AND DORR LLP
1875 Pennsylvania Ave, NW
Washington, DC 20006
Phone: (202) 942-8400
Fax:   (202) 942-8484

William F. Lee, Esq.
WILMER, CUTLER, PICKERING,
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Phone: (617) 526-6000

Patricia Smink Rogowski, Esq.
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building, 1107 North Orange Street
Wilmington, DE 19801
Phone: (302) 658-9141
Fax : (302) 658-5614

Dated: June 29, 2006

-17-

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SMITH KLINE & FRENCH                )
LABORATORIES LIMITED and            )
SMITHKLINE BEECHAM                  )
CORPORATION d/b/a                   )
GLAXOSMITHKLINE,                    )
                                    )
      Plaintiff,        )        Civil Action No. 05-197-GMS
                                    )
v.                                  )
                                    )
TEVA PHARMACEUTICALS USA, INC.,     )
                                    )
      Defendant.       )

## PLAINTIFF GLAXOSMITHKLINE'S
## RESPONSES AND OBJECTIONS TO DEFENDANT'S
## FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

Pursuant to Federal Rules of Civil Procedure 26 and 34, and United States District Court

for the District of Delaware Local Civil Rule 26.1, Plaintiffs Smith Kline & French Laboratories

Limited and SmithKline Beecham Corporation, d/b/a GlaxoSmithKline (collectively, "GSK")

hereby make the following responses and objections to Defendant Teva Pharmaceuticals USA,

Inc.'s ("Teva") First Set of Requests for Production of Documents and Things.

## GENERAL OBJECTIONS

1.     GSK objects to Defendant's "Definitions" and "Instructions" to the extent they

seek to impose any obligation in addition to or different from those imposed by the Federal Rules

of Civil Procedure or the Local Rules for the United States District Court for the District of

Delaware.

**Document Request No. 43:**

All documents and things concerning any actual or proposed settlement or resolution of any allegation of infringement of the Patents-In-Suit.

**Response:**

GSK objects to this request as overbroad, in that it seeks documents that are not relevant to this case, and is not calculated to lead to the discovery of admissible evidence. Subject to its General Objections, GSK will produce non-privileged documents to the extent they exist in GSK's files and can be located through a reasonable search.

**Document Request No. 44:**

All documents and things concerning any royalties paid under any of the Patents-In-Suit.

**Response:**

Subject to its General Objections, GSK will produce non-privileged documents to the extent they exist in GSK's files and can be located through a reasonable search.

**Document Request No. 45:**

All documents and things concerning any alleged secondary considerations of non-obviousness as defined in Graham v. John Deere Co., of Kansas City, 383 U.S. 1 (1966), and subsequent Federal Circuit caselaw.

**Response:**

GSK objects to this request as overly broad and unduly burdensome in that it seeks "all documents and things concerning" secondary considerations. Subject to its General and Specific Objections, GSK will produce non-privileged responsive documents sufficient to show relevant

-33-

secondary considerations, to the extent they exist in GSK's files and can be located through a reasonable search.

## Document Request No. 46:

A copy of the document retention policies for every assignee of the Patents-in-Suit from the time of ownership to the present day.

**Response:**

GSK objects to this request as overbroad, in that it seeks documents not relevant to any issue in this case, and is not calculated to lead to the discovery of admissible evidence. Subject to its General and Specific Objections, GSK will produce such policies in effect from the date of Teva's Patent Certification Notice to GSK regarding ANDA 77-460.

## Document Request No. 47:

All documents relating to the ownership of the patent-in-suit or any foreign counterpart including any contracts, correspondence, drafts, relating to any conveyance of rights.

**Response:**

GSK objects to this request as overbroad and unduly burdensome, in that rights to foreign counterparts are not at issue in this litigation. Accordingly, this request seeks documents not relevant to any issue in this litigation and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to its General Objections, GSK will produce non-privileged responsive documents sufficient to show the ownership of the Patents-In-Suit to the extent they exist in GSK's files and can be located through a reasonable search.

SMITH KLINE & FRENCH LABORATORIES
LIMITED AND SMITHKLINE BEECHAM
CORPORATION, D/B/A GLAXOSMITHKLINE
By their attorneys,

10/3/05

William G. McElwain, Esq.
Henry N. Wixon, Esq.
Amy K. Wigmore, Esq.
Michael Gordon, Esq.
Mark L. Rienzi, Esq.
WILMER, CUTLER, PICKERING,
HALE AND DORR LLP
The Willard Office Building
1455 Pennsylvania Avenue, NW
Washington, DC 20004
Phone: (202) 942-8400
Fax:    (202) 942-8484

William F. Lee, Esq.
WILMER, CUTLER, PICKERING,
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Phone: (617) 526-6000

Patricia Smink Rogowski, Esq.
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building, 1107 North Orange Street
Wilmington, DE  19801
Phone: (302) 658-9141
Fax : (302) 658-5614

# EXHIBIT C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SMITH KLINE & FRENCH LABORATORIES LIMITED and SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE,    )<br>)<br>)<br>)<br>)<br>)<br>Plaintiff,    )<br>)<br>v.    )<br>)<br>TEVA PHARMACEUTICALS USA, INC., )<br>)<br>Defendant.    )<br>) | Civil Action No. 05-197-GMS |

## PLAINTIFF GLAXOSMITHKLINE'S
## RESPONSES AND OBJECTIONS TO DEFENDANT'S
## SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

Pursuant to Federal Rules of Civil Procedure 26 and 34, and United States District Court for the District of Delaware Local Civil Rule 26.1, Plaintiffs Smith Kline & French Laboratories Limited and SmithKline Beecham Corporation, d/b/a GlaxoSmithKline (collectively, "GSK") hereby make the following responses and objections to Defendant Teva Pharmaceuticals USA, Inc.'s ("Teva") First Set of Requests for Production of Documents and Things.

## GENERAL OBJECTIONS

1.     GSK incorporates by reference GSK's General Objections to Defendant's First Set of Requests for Production of Documents and Things as if set forth fully herein.

## SPECIFIC RESPONSES AND OBJECTIONS

**Document Request No. 50:**

All Documents Concerning any business plans, marketing studies, sales estimates, projected costs, projected market growth or market share, pricing analyses, profit or incremental profitability analyses, or other financial analyses, whether prepared by or on behalf of Plaintiffs, Concerning ropinirole or ropinirole hydrochloride or the decision to file any NDA Concerning products containing ropinirole or ropinirole hydrochloride.

**Response:**

GSK objects to this request as overbroad, unduly burdensome, and not calculated to lead to the discovery of admissible evidence in that it seeks "all documents concerning" the listed documents. GSK further objects to this request to the extent it seeks documents protected by the attorney-client privilege or the work product doctrine. Subject to its Specific and General Objections, GSK will produce non-privileged documents constituting or containing business plans, strategic plans, and marketing studies to the extent they exist in GSK's files and can be located through a reasonable search. These documents contain sales estimates, projected costs, projected market growth and market share, and profitability and other financial analyses. In addition, GSK will provide a compilation of such data showing annual sales, costs (including costs for marketing and promotion), market share, profitability and price, to the extent this information exists in GSK's files and can be located through a reasonable search.

**Document Request No. 51:**

All Documents Concerning the marketing, distribution, importation, packaging, offer for sale or sale of Plaintiffs ropinirole or ropinirole hydrochloride products, including but not limited

to memoranda, package inserts and outserts, containers, trade literature, commercial brochures, promotional material, printed or electronic advertisements, correspondence, marketing proposals presentations, sales incentives, contracts and kits.

**Response:**

GSK objects to this request as overbroad, unduly burdensome, and not calculated to lead to the discovery of admissible evidence in that it seeks "all documents concerning" the "marketing, distribution, importation, packaging, offer for sale or sale" of ropinirole products. GSK further objects to this request to the extent it seeks documents protected by the attorney-client privilege or the work product doctrine. GSK further objects to this request to the extent it seeks documents already in Teva's possession, such as the Requip package insert. *See, e.g.,* TEV-RQ006555-73. Subject to its Specific and General Objections, GSK will produce non-privileged documents constituting or containing business plans, strategic plans, and marketing studies to the extent they exist in GSK's files and can be located through a reasonable search. These documents contain information concerning the marketing, distribution, packaging, and sales of ropinirole products. GSK will also produce advertising and promotional materials for Requip to the extent they exist in GSK's files and can be located through a reasonable search. In addition, GSK will provide a compilation document showing annual sales, costs (including costs for marketing and promotion), market share, profitability and price, to the extent this information exists in GSK's files and can be located through a reasonable search.


## Document Request No. 52:

All Documents and things reflecting the sales, costs of sales, and pricing of GSK products containing any compound described or claimed in the '808 patent or '860 patent.

**Response:**

GSK objects to this request as duplicative of requests 50 and 51 to the extent it seeks documents concerning ropinirole and ropinirole hydrochloride. GSK further objects to this request as overbroad, unduly burdensome, and not calculated to lead to the discovery of admissible evidence in that it seeks "all documents concerning" the listed documents. GSK further objects to this request to the extent it seeks documents protected by the attorney-client privilege or the work product doctrine. Subject to its Specific and General Objections, GSK states that it does not currently market any responsive compounds other than those described in requests 50 and 51. GSK incorporates herein its responses and objections to requests 50 and 51.

**Document Request No. 53:**

All Documents and things reflecting the costs of marketing and promotion of GSK products containing any compound described or claimed in the '808 patent or the '860 patent.

**Response:**

GSK objects to this request as duplicative of requests 50 and 51 to the extent it seeks documents concerning ropinirole and ropinirole hydrochloride. GSK further objects to this request as overbroad, unduly burdensome, and not calculated to lead to the discovery of admissible evidence in that it seeks "all documents concerning" reflecting costs of marketing and promotion of products containing any compound described or claimed in the Patents-in-Suit. GSK further objects to this request to the extent it seeks documents protected by the attorney-client privilege or the work product doctrine. Subject to its Specific and General Objections, GSK states that it does not currently market any responsive compounds other than those

described in requests 50 and 51.  GSK incorporates herein its responses and objections to requests 50 and 51.

**Document Request No. 54:**

All Documents and things Concerning the marketing and promotion of GSK products containing any compound described or claimed in the '808 patent or '860 patent.

**Response:**

GSK objects to this request as duplicative of requests 50 and 51 to the extent it seeks documents concerning ropinirole and ropinirole hydrochloride.  GSK further objects to this request as overbroad, unduly burdensome, and not calculated to lead to the discovery of admissible evidence in that it seeks "all documents concerning" marketing and promotion. GSK further objects to this request to the extent it seeks documents protected by the attorney-client privilege or the work product doctrine.  Subject to its Specific and General Objections, GSK states that it does not currently market any responsive compounds other than those described in requests 50 and 51.  GSK incorporates herein its responses and objections to requests 50 and 51.

**Document Request No. 55:**

All Documents and things Concerning business plans or strategies concerning entry into the market of generic equivalents to any GSK product containing any compound described or claimed in the '808 patent or '860 patent, including Requip.

**Response:**

GSK objects to this request as overbroad, unduly burdensome, and not calculated to lead to the discovery of admissible evidence in that it requests "all documents concerning" business

plans and strategies concerning generic entry. GSK further objects to this request to the extent it

seeks documents protected by the attorney-client privilege or the work product doctrine. Subject

to its Specific and General Objections, GSK will produce non-privileged responsive documents

to the extent they exist and can be located through a reasonable search.


**Document Request No. 56:**

All Documents and things Concerning complaints about GSK's ropinirole or ropinirole

hydrochloride products, including adverse incident reports.

**Response:**

GSK objects to this request as overbroad, unduly burdensome, and not calculated to lead

to the discovery of admissible evidence in that it requests "all documents concerning" complaints

about ropinirole products. GSK also objects to this request as vague and ambiguous in that the

term "complaints" is undefined. GSK further objects to this request to the extent it seeks

documents protected by the attorney-client privilege or the work product doctrine. GSK further

objects to this request to the extent it seeks individual patient identifiable information. GSK's

Requip product label and Physician's Desk Reference entry set forth a detailed accounting of

adverse incidents during clinical trials, and have already been produced by Teva. *See* TEV-

RQ007303-20. GSK will not produce additional documents in response to this request.


**Document Request No. 57:**

All Documents and things Concerning Plaintiffs' contention that Teva willfully infringed

either the '808 patent or the '860 patent.

**Response:**

Subject to its General Objections, GSK will produce non-privileged responsive documents, to the extent they exist in GSK's files, are not already in Teva's possession, and can be located through a reasonable search.

**Document Request No. 58:**

All Documents and things Concerning testing, study and/or analysis of any compound described or claimed in the '944 patent.

**Response:**

GSK objects to this request as overbroad, unduly burdensome, and not calculated to lead to the discovery of admissible evidence in that it requests "all documents concerning" compounds and patents other than the compound and patents at issue in this lawsuit.

**Document Request No. 59:**

All Documents and things Concerning testing, study and/or analysis of any dopamine agonist prior to May 19, 1988.

**Response:**

GSK objects to this request as overbroad, unduly burdensome, and not calculated to lead to the discovery of admissible evidence in that it requests "all documents concerning" testing of compounds other than the compound at issue in this lawsuit.

**Document Request No. 60:**

All Documents and things Concerning Dr. Joseph G. Cannon.

**Response:**

GSK objects to this request as seeking documents neither relevant to this litigation nor reasonably likely to lead to admissible evidence, in that it seeks all documents concerning Dr. Cannon, regardless of whether those documents have any relevance to any issue in this case. Subject to its General and Specific Objections, GSK has produced or will produce non-privileged responsive documents to the extent they exist in GSK's files, can be located through a reasonable search, and relate to the Patents-in-Suit.

**Document Request No. 61:**

All Documents and things Concerning any of the compounds described in the Cannon Publications.

**Response:**

GSK objects to this request as seeking documents neither relevant to this litigation nor reasonably likely to lead to admissible evidence, in that it seeks all documents concerning broad classes of compounds having no relationship to any issue in this case, including compounds belonging to several different classes such as apomorphines, octahydrobenzo[f]quinolines, aminotetralines and ergot alkaloids.

**Document Request No. 62:**

All Documents and things Concerning testing of indolone derivatives to treat Parkinson's disease.

**Response:**

Subject to and without waiving its General Objections, GSK has already produced alll responsive non-privileged documents to the extent they exist in GSK's files, can be located through a reasonable search, and pre-date the issuance dates of the Patents-in-Suit.

**Document Request No. 63:**

All Documents and things Concerning the Gallagher Article, including all Documents and things Concerning tests, studies and analyses underlying the assertions made in that article.

**Response:**

Subject to and without waiving its General Objections, GSK has already produced all responsive non-privileged documents, to the extent they exist in GSK's files, can be located through a reasonable search, and pre-date the issuance dates of the Patents-in-Suit.

**Document Request No. 64:**

All Documents and things Concerning or underlying the statements in the '860 patent at column 1, line 54-column 2, line 3.

**Response:**

Subject to and without waiving its General Objections, GSK has already produced all responsive non-privileged documents, to the extent they exist in GSK's files, can be located through a reasonable search, and pre-date the issuance dates of the Patents-in-Suit.

**Document Request No. 65:**

All Documents and things Concerning the "known dopamine agonists" referenced in column 1, line 60-61 of the '860 patent.

**Response:**

GSK objects to this Request as overbroad and unduly burdensome, to the extent it extends to compounds that are unrelated to any issue in this case. Subject to and without waiving its General Objections, GSK has produced responsive non-privileged documents that relate to the Patents-in-Suit, to the extent they exist in GSK's files, can be located through a reasonable search, pre-date the issuance dates of the Patents-in-Suit.

**Document Request No. 66:**

All Documents and things Concerning the statement in the '808 patent that one of ordinary skill in the art would not expect compounds referenced at column 1, lines 38-42 to have cardiovascular activity, including any tests, studies or analyses underlying that statement.

**Response:**

Subject to and without waiving its General Objection, GSK has produced all responsive, non-privileged documents, to the extent they exist in GSK's files and can be located through a reasonable search, and pre-date the issuance dates of the Patents-in-Suit.

**Document Request No. 67:**

All patent applications pending, issued, or abandoned Concerning dopamine agonists.

**Response:**

GSK objects to this request to as overbroad, unduly burdensome, and not calculated to lead to the discovery of admissible evidence.  In particular, this request seeks documents concerning compounds and patent applications that have no relationship to any issue in this case.

**Document Request No. 68:**

Samples of GSK's Requip product and any other product containing any compound described in the '808 patent or the '860 patent.

**Response:**

GSK objects to this request to the extent it seeks items that are not relevant to any issue in this case.

**Document Request No. 69:**

All Documents and things Concerning the conception, reduction to practice, testing, and analysis of any compound claimed or disclosed in the '944 patent.

**Response:**

GSK objects to this request as overbroad, unduly burdensome, and not calculated to lead to the discovery of admissible evidence in that it requests "all documents concerning the conception, reduction to practice, testing, and analysis" of compounds that are not related to any issue in this litigation.

> SMITH KLINE & FRENCH LABORATORIES
> LIMITED AND SMITHKLINE BEECHAM
> CORPORATION, D/B/A GLAXOSMITHKLINE
> By their attorneys,

William G. McElwain, Esq.
Henry N. Wixon, Esq.
Amy K. Wigmore, Esq.
Michael Gordon, Esq.
Mark L. Rienzi, Esq.
WILMER, CUTLER, PICKERING,
HALE AND DORR LLP
The Willard Office Building
1455 Pennsylvania Avenue, NW
Washington, DC 20004
Phone: (202) 942-8400
Fax:    (202) 942-8484

William F. Lee, Esq.
WILMER, CUTLER, PICKERING,
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Phone: (617) 526-6000

Patricia Smink Rogowski, Esq.
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building, 1107 North Orange Street
Wilmington, DE 19801
Phone: (302) 658-9141
Fax : (302) 658-5614

DATED: April 27, 2006

-12-

# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| SMITH KLINE & FRENCH LABORATORIES LIMITED and SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE, | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 05-197-GMS |
| v. | ) ) | |
| TEVA PHARMACEUTICALS USA, INC., | ) ) | |
| Defendant. | ) ) | |

**PLAINTIFFS' OBJECTIONS TO
NOTICE TO TAKE RULE 30(b)(6) DEPOSITION**

Pursuant to Federal Rules of Civil Procedure 26 and 30, the Plaintiffs Smith Kline &

French Laboratories Limited and SmithKline Beecham Corporation, d/b/a GlaxoSmithKline

(collectively, "GSK") hereby state their objections to the Notice of Deposition to Plaintiffs

GlaxoSmithkline ("Notice"), served by the Defendant Teva Pharmaceuticals USA, Inc.'s

("Teva") on April 5, 2006.

**GENERAL OBJECTIONS**

Each of GSK's responses, in addition to being subject to any specifically stated

objections, is subject to and incorporates the following General Objections.  The assertion of the

same, similar, or additional objections, or a partial response to an individual topic specified in the

Notice (collectively the "Topics"), does not waive any of GSK's General Objections.

1.    GSK incorporates by reference, as if fully set forth herein, the General Objections

that GSK has made in its Responses and Objections to Defendant's First Set of Requests for

**Topic No. 5**

*The facts and circumstances related to any claim that the invention(s) claimed in the Patents-in-Suit are non-obvious based on their "commercial success" as defined in Graham v. John Deere Co., 383 U.S. 1 (1966).*

**Response:** GSK objects to the extent that this Topic calls for a legal conclusion and/or expert testimony. Subject to and without waiving the foregoing General and Specific Objections, GSK will designate one or more persons with knowledge reasonably identified as responsive to this Topic to testify at a mutually agreeable time.

**Topic No. 6**

*The facts and circumstances related to the market for ropinirole from the product launch until present.*

**Response:** GSK objects to the extent that this Topic calls for expert testimony. Subject to and without waiving the foregoing General and Specific Objections, GSK will designate one or more persons with knowledge reasonably identified as responsive to this Topic to testify at a mutually agreeable time.

**Topic No. 7**

*Customers, revenues, and profits related to sales of ropinirole for treating Parkinson's Disease.*

**Response:** GSK objects to the extent that this Topic is overly broad and to the extent it calls for expert testimony. GSK further objects that this Topic is overly burdensome and not

5

reasonably calculated to lead to discoverable evidence to the extent it covers the identities of specific customers. Subject to and without waiving the foregoing General and Specific Objections, GSK will designate one or more persons with knowledge reasonably identified as responsive to this Topic (aside from specific customer identities) to testify at a mutually agreeable time.

**Topic No. 8**

*Expenses and costs related to sales of ropinirole for treating Parkinson's Disease.*

**Response:** GSK objects to the extent that this Topic is overly broad and to the extent it calls for expert testimony. Subject to and without waiving the foregoing General and Specific Objections, GSK will designate one or more persons with knowledge reasonably identified as responsive to this Topic to testify at a mutually agreeable time.

**Topic No. 9**

*Information related to customer purchase decisions related to ropinirole for treating Parkinson's Disease including any survey data.*

**Response:** GSK objects to the extent that this Topic is overly broad and to the extent it calls for expert testimony. GSK further objects to this Topic to the extent it calls for information outside GSK's possession, custody, and control. Subject to and without waiving the foregoing General and Specific Objections, GSK will designate one or more persons with knowledge reasonably identified as responsive to this Topic to testify at a mutually agreeable time.

US1DOCS 5637242v1

**Topic No. 10**

*The facts and circumstances related to any assertion of secondary considerations of non-obviousness (as defined in Graham v. John Deere Co., 383 U.S. 1 (1966)) other than commercial success including any assertion of failure of others, unexpected results, or long felt need.*

**Response:** GSK objects to the extent that this Topic calls for a legal conclusion and/or expert testimony. Subject to and without waiving the foregoing General and Specific Objections, GSK will designate one or more persons with knowledge reasonably identified as responsive to this Topic to testify at a mutually agreeable time.

**Topic No. 11**

*All tests, analysis and studies of the compounds claimed in claim 1 of the '808 patent in which "$R^1$, $R^2$, or $R^3$," is a $C_{1-4}$ lower alkyl."*

**Response:** GSK objects this Topic to the extent that it calls for privileged attorney-client communications and/or work product. GSK further objects to this Topic as overly broad, unduly burdensome, and not reasonably calculated to lead to discoverable evidence to the extent it: (a) covers "all" tests, analysis and studies; and (b) relates solely to compounds other than ropinirole hydrochloride. GSK will not designate a witness to testify about this Topic.

**Topic No. 12**

*All tests, analysis and studies of the compounds claimed in claim 1 of the '808 patent where "R" is anything other than "di-n-propylamino."*

7

**Topic No. 17**

*All persons known to have knowledge of the foregoing topics other than knowledge derived from involvement in this lawsuit.*

**Response:** GSK objects to this Topic as duplicative of previous discovery, overly broad, and unduly burdensome, and not reasonably calculated to lead to discoverable evidence.   GSK further objects to this Topic to the extent calls for privileged attorney-client communications and/or work product. GSK incorporates by reference herein its responses to Topics 1 through 15 above.  GSK will not designate a witness to testify about this Topic.

SMITH KLINE & FRENCH LABORATORIES
LIMITED AND SMITHKLINE BEECHAM
CORPORATION, D/B/A GLAXOSMITHKLINE

By their attorneys,

William G. McElwain, Esq.
Henry N. Wixon, Esq.
Amy K. Wigmore, Esq.
Michael Gordon, Esq.
Mark L. Rienzi, Esq.
WILMER, CUTLER, PICKERING,
HALE AND DORR LLP
The Willard Office Building
1455 Pennsylvania Avenue, NW
Washington, DC 20004
Phone:  (202) 942-8400
Fax:     (202) 942-8484

William F. Lee, Esq.
WILMER, CUTLER, PICKERING,
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Phone:  (617) 526-6000
Fax:     (617) 526-5000

10

Patricia Smink Rogowski, Esq.
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building, 1107 North Orange Street
Wilmington, DE  19801
Phone:  (302) 658-9141
Fax :    (302) 658-5614

Dated: April ___, 2006
       MAy 2

11

# EXHIBIT E

# REDACTED IN ITS ENTIRETY

# EXHIBIT F

# REDACTED IN ITS ENTIRETY

# EXHIBIT G



Not Reported in F.Supp.2d                                          Page 1
Not Reported in F.Supp.2d, 2005 WL 2313515 (D.N.M.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Briefs and Other Related Documents
Chamberlin    v.    City    of
AlbuquerqueD.N.M.,2005.Only the Westlaw citation
is currently available.
United States District Court,D. New Mexico.
David R. CHAMBERLIN, Plaintiff,
v.
THE CITY OF ALBUQUERQUE, and Officer
Andrew Lehocky, individually and in his official
capacity as police officer, Defendants.
**No. CIV 02-0603 JB/ACT.**

July 31, 2005.

Kathryn A. Hammel, The Hammel Law Firm,
Albuquerque, New Mexico and Dennis W. Montoya,
Rio Rancho, New Mexico, for the Plaintiff.
Luis Robles, Christina E. Anaya, Robles, Rael &
Anaya, P.C., Albuquerque, New Mexico, for
Defendant Andrew Lehocky.
Kathryn Levy, Deputy City Attorney, Albuquerque,
New Mexico, for Defendant City of Albuquerque.

*MEMORANDUM OPINION AND ORDER*
BROWNING, J.
**\*1** THIS MATTER comes before the Court on the
Defendant's Motion in Limine No. IV: The
Admission Into Evidence of Plaintiff's Specific Acts
of Misconduct to Refute his Claim for Damages and
to Challenge his Ability to Accurately Perceive and
Recall the Events Underlying the Suit, filed June 17,
2005 (Doc. 108). The Court held a hearing on this
motion on July 14, 2005. Consistent with the Court's
ruling at the hearing on this motion, and for the
reasons given at the time of the hearing, the Court
will grant Lehocky's motion in part and deny his
motion in part.

*PROCEDURAL BACKGROUND*

At trial, Chamberlin will allege that Lehocky's use of
force against him was unreasonable, violating his
Fourth Amendment rights. In his answers to
Lehocky's first set of interrogatories, Chamberlin
stated that he did not have a clear recollection of all
of the crimes with which he has been charged.
Chamberlin did, however, recall the crimes for which
he had been convicted. Based on Chamberlin's

discovery responses and a review of court files,
Lehocky represents to the Court that Chamberlin has
been convicted of the following crimes: (i) negligent
use of a weapon and shooting in an inhabited
dwelling; and (ii) shoplifting. Chamberlin also seeks
to introduce criminal charges not resulting in
convictions, which include: (i) manufacturing
methamphetamine and possession of marijuana; (ii)
forgery; (iii) possession of cocaine; (iv) domestic
violence; and (v) shoplifting at Wal-Mart. Moreover,
Lehocky wishes to introduce the following evidence
on Chamberlin's acts of uncharged misconduct,
which pertain to use of narcotics and alcohol, and to
mental health problems: (i) threat to former tenant;
(ii) use of drugs in highschool; (iii) alcohol abuse;
(iv) use of narcotics on the day of the incident
underlying this suit; (v) use of alcohol on various
days; (vi) mental health problems, including a
treating psychiatrists' and doctors' opinion about
Chamberlin's mental health, and Chamberlin's
admission to a mental health center; (vii)
Chamberlin's statements about his prior run-ins with
the police; (viii) Chamberlin's denial of drug and
alcohol use on various occasions; (ix) Chamberlin's
brother's contention that Chamberlin had declined
slowly since 1994 when he began to have paranoid
thinking and that Chamberlin had recently been
caught shoplifting; and (x) Chamberlin's statements
to Barry Diskant, M.D., Lehocky's medical expert,
that he had a problem with alcohol, that he had not
used illegal drugs for three years, that God
communicates with him daily, although he
acknowledged this is not normal, and that, even
though he has not attempted suicide, Chamberlin
often thinks of being dead and sometimes feels as
though he is communicating with the dead.

In this motion, Lehocky seeks a ruling allowing him
to question Chamberlin and his witnesses regarding
specific instances of Chamberlin's prior convictions,
substance and alcohol abuse, and mental illness to
rebut his claim for damages. Lehocky also wishes to
introduce elicit testimony about Chamberlin's pre-
and post-incident drug and alcohol abuse and
consumption of alcohol before the incident at issue in
this suit to challenge his ability to perceive and to
recall the events.

*ANALYSIS*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 2
Not Reported in F.Supp.2d, 2005 WL 2313515 (D.N.M.)
(Cite as: Not Reported in F.Supp.2d)

**\*2** Lehocky requests that this Court allow him to inquire about Chamberlin's uncharged misconduct, drug and alcohol abuse, and history of mental illness. Lehocky contends that rule 405(b) permits such an inquiry because these incidents are relevant to the issue of Chamberlin's claim for damages. Lehocky also avers that Chamberlin's alcohol and drug use, as well as his history of mental illness, is relevant and admissible to challenge Chamberlin's ability to accurately perceive and recall the incidents on the day in question.

Rule 405(b) of the Federal Rules of Evidence provides: "In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of that person's conduct." "Character is directly in issue in the strict sense when it is 'a material fact that under the substantive law determines rights and liabilities of the parties.' " *Perrin v. Anderson,* 784 F.2d 1040, 1045 (10th Cir.1986)(quoting E. Cleary, *McCormick on Evidence* § 187, at 551 (3d ed.1984)).

At the hearing on this motion, Chamberlin represented that he seeks garden variety, emotional distress damages arising out of Lehocky's actions with the police service dog. Because Chamberlin's uncharged misconduct, drug and alcohol abuse, and mental illness is relevant to rebut Chamberlin's claim of damages, the Court will allow Lehocky to introduce certain specific instances of Chamberlin's prior conduct as described in this opinion and order.[FN1]

> FN1. In its Memorandum Opinion and Order on Lehocky's MIL III, the Court decided that, if Chamberlin testifies, Lehocky may impeach him under rule 609(a)(1) with his prior felony conviction for negligent use of a firearm. *See* Memorandum Opinion and Order at 7-8, filed July 29, 2005 (Doc. 139).

### I. *ADMISSIBILITY OF CHAMBERLIN'S CRIMINAL CHARGES NOT RESULTING IN CONVICTIONS.*

The Court will allow Lehocky, when cross examining Chamberlin, to inquire about his use of methamphetamine and cocaine in 1985 and 1986, respectively. If Chamberlin admits to this use, then the Court precludes Lehocky from making any further inquiry into these drug-related arrests; Lehocky may not inquire about the manufacturing of methamphetamine, the search warrants, or the arrests. If, however, Chamberlin denies using methamphetamine and cocaine, the Court may allow more evidence surrounding these incidents to be admitted, the scope of which the Court will decide on a question-by-question basis at trial.

The Court will not permit Lehocky to introduce evidence of Chamberlin's arrests for forgery, domestic violence, and shoplifting.

### II. *ADMISSION OF CHAMBERLIN'S ACTS OF UNCHARGED MISCONDUCT, USE OF NARCOTICS AND ALCOHOL, AND MENTAL HEALTH PROBLEMS.*

In his motion, Lehocky enumerates twenty-seven separate incidents which he seeks to admit to rebut Chamberlin's claim of damages. The Court will address each proffered incident separately.

As general guidance, the Court will allow Lehocky to introduce Chamberlin's admissions and denials of drug and alcohol use. Lehocky may also question Chamberlin and his witnesses about his history of mental health issues.

The Court, however, cautions Lehocky that, although relevant, the form in which he offers this evidence must comport with the other Rules of Evidence. For example, in terms of Lehocky's mental health expert, he can testify about his opinion on Chamberlin's mental health problems and drug and alcohol abuse, and base those opinions on the reports by Dr. Steven Jenkusky, the treating physician. *See* Fed.R.Evid. 703. Lehocky may not, however, have his expert, who was not the treating physician or psychiatrist, introduce the underlying reports or information and facts contained in those reports. *See* Advisory Committee Notes to Fed.R.Evid. 703 ("Rule 703 has been amended to emphasize that when an expert reasonably relies on inadmissible information to form an opinion or inference, the underlying information is not admissible simply because the opinion or inference is admitted."); 30 Charles Alan Wright, Arthur R. Miller & Kenneth W. Graham, Jr., *Fed. Prac. & Proc. Evid.* § 6337 ("[A]n expert cannot be called solely as a conduit for smuggling hearsay to the jury.").[FN2] Thus, Lehocky's expert cannot testify about the direct statements contained in the medical reports, but can review the reports and testify about his opinions based in part on those materials.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                   Page 3
Not Reported in F.Supp.2d, 2005 WL 2313515 (D.N.M.)
(Cite as: Not Reported in F.Supp.2d)

FN2. This concern arises out of the form in which Lehocky presented his list of Chamberlin's uncharged misconduct, drug and alcohol abuse, and mental illness. Many of these incidents rely upon an excerpt of Dr. Barry Diskant's report. Although the report does not specify on which materials Dr. Diskant relies, it appears to have compiled various medical records and reports. While Dr. Diskant can rely on these materials in forming his opinion about Chamberlin's mental health and drug and alcohol use, Lehocky, as the proponent of the expert's testimony, cannot solicit the underlying facts and conclusions contained in these documents or summarized in his report. *See* Fed.R.Evid. 703.

**\*3** In accordance with this general guidance, the evidence on Chamberlin's other uncharged acts of misconduct, drug and alcohol use, and mental illness are admissible as follows:

1. Threat to Former Tenant. Inadmissible.

2. Use of Drugs in Highschool. Admissible.

3. Alcohol abuse. Admissible.

4. Use of Narcotics on the Day of the Incident Underlying this Suit. Lehocky may testify about his observations of Chamberlin's physical appearance and what he believed the dark circles around his eyes represented. Lehocky, however, should proceed with caution and not open the door and allow in prior incidents of force.

5. Use of Alcohol. Inadmissible unless Chamberlin, in his testimony, denies use of alcohol.

6. Mental Health Problems. Admissible.

7. Mental Health Problems and Use of Drugs and Alcohol. Facts about being transported to the emergency room, any admissions made by Chamberlin, and opinions that a professional can make as a treating physician are admissible if otherwise offered in a form consistent with the rules of evidence. Lehocky has not, however, identified Dr. Jenkusky as an expert; therefore, Lehocky's expert cannot merely report what Dr. Jenkusky has said. Lehocky will have to avoid making Dr. Jenkusky merely a conduit for hearsay.

8. Use of Drugs and Alcohol, Contact with Police. Chamberlin's admission of a "20-year history of amphetamine use" is admissible if it is offered in an admissible form. Lehocky may not inquire, however, about Chamberlin's statement that he has had continuous problems with the law and approximately 100 run-ins with the Albuquerque Police Department. Chamberlin's representation that he was cutting his owns legs with a knife on the same day as the incident with Lehocky is admissible if it is offered in an admissible form. Lehocky may introduce evidence that some of Chamberlin's leg wounds were straight and narrow if it is offered in an admissible form, but the Court precludes Lehocky from offering testimony that the wounds were consistent with a knife. On the reference to Dr. Jenkusky's report, see ruling on number 7.

9. Use of Drugs and Mental Health Problems. Admissible.

10. Alcohol Abuse and Mental Health Problems. Admissible if consistent with the ruling on number 7.

11. Mental Health Problems. Admissible.

12. Effects of Drugs and Alcohol on Chamberlin. Dr. Jenkusky's notation that Chamberlin "showed limited insight in to [sic] the role that drugs and alcohol played in the situation" is not directly admissible through Lehocky's expert, but the expert can so opine if he is qualified to do so and has indicated in his report he will do so. The Court will not allow Dr. Jenkusky's discussion about the role of Chamberlin's drug abuse might play in causing brain damage, but again, Lehocky's expert may be able to do so.

13. Denial of Drug Abuse. Admissible.

14. Mental Health Problems. Admissible if consistent with the ruling on number 7.

**\*4** 15. Effects of Drug Use on Mental Health. Admissible if consistent with the ruling on number 7.

16. Discharge from UNM Mental Health Center. Admissible.

17. Mental Health Problems. Admissible.

18. Mental Health Problems. Admissible.

19. Mental Health Problems and Alcohol Abuse. Admissible.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 2313515 (D.N.M.)
**(Cite as: Not Reported in F.Supp.2d)**

20. Mental Health Problems. Admissible.

21. Alcohol Abuse. Admissible.

22. Alcohol Abuse. Admissible.

23. Mental Health Problems and Criminal Conduct. Admissible.

24. Alcohol Abuse. Admissible.

25. Alcohol and Drug Abuse and Mental Health Problems. Admissible.

26. Alcohol Abuse. Admissible.

27. Alcohol Abuse and Mental Health Problems. Admissible.

IT IS ORDERED that Defendant's Motion in Limine No. IV: The Admission Into Evidence of Plaintiff's Specific Acts of Misconduct to Refute his Claim for Damages and to Challenge his Ability to Accurately Perceive and Recall the Events Underlying the Suit is granted in part and denied in part.

D.N.M.,2005.
Chamberlin v. City of Albuquerque
Not Reported in F.Supp.2d, 2005 WL 2313515 (D.N.M.)

Briefs and Other Related Documents (Back to top)

• 1:02cv00603 (Docket) (May. 24, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.