# EXHIBIT C



Slip Copy
Slip Copy, 2006 WL 2241018 (D.Del.)
(Cite as: Slip Copy)

Page 1

**H**
Briefs and Other Related Documents
Proctor & Gamble Co. v. Teva Pharmaceuticals
USA, Inc.D.Del.,2006.Only the Westlaw citation is
currently available.
United States District Court,D. Delaware.
THE PROCTOR & GAMBLE COMPANY, Plaintiff,
v.
TEVA PHARMACEUTICALS USA, INC.,
Defendant.
No. Civ.A. 04-940-JJF.

Aug. 4, 2006.

Frederick L. Cottrell, III, Steven J. Fineman,
Richards, Layton & Finger, Wilmington, DE, for
Plaintiff.
Adam Wyatt Poff, Josy W. Ingersoll, Young,
Conaway, Stargatt & Taylor, Wilmington, DE, for
Defendant.

*MEMORANDUM ORDER*
FARNAN, J.
*1 Pending before the Court is Defendant Teva
Pharmaceuticals USA, Inc.'s Motion To Preclude The
Testimony Of Plaintiff's Patent Law Expert (D.I.69).
For the reasons discussed, the Motion will be granted
in part and denied in part.

## I. BACKGROUND

In this patent infringement case, Defendant argues
that Plaintiff's patent, U.S. Patent No. 5,583,122 ("the
'122 patent") is invalid because of obviousness-type
double patenting. Plaintiff submitted the Rebuttal
Expert Report of Jerry D. Voight in response to
Defendant's Expert Report of George R. Lenz, Ph.D.,
to address patent interference practices and whether
the one-way or two-way test should be used for
determining obviousness-type double patenting in
this case. (D.I. 70 Ex. A). On July 6, 2006, Defendant
filed the instant Motion to preclude Plaintiff from
proffering Mr. Voight's testimony on any of the
opinions set forth in his expert report. (D.I.69).
Defendant contends that Mr. Voight's testimony
would exceed the scope permitted by the Court
because it will include legal conclusions and goes
beyond the practices and procedures of the U.S.
Patent and Trademark Office (PTO). (D.I. 69 at 3). In

Response, Plaintiff contends that Mr. Voight's expert
testimony is within the parameters permitted by the
Court because it includes the workings of the PTO
and the prosecution history in this case. (D.I.74).
Plaintiff's answering brief included an Amended
Rebuttal Expert Report of Jerry D. Voight, removing
certain legal conclusions, and now contends that
Defendant's concerns are moot. [FN1] (D.I. 74 Ex. A).

> FN1. For the purposes of its review of this
> Motion, the Court considers only the
> Amended Rebuttal Expert Report of Jerry D.
> Voight (D.I. 74 Ex. A).

## II. DISCUSSION

A court has broad discretion to admit or exclude
evidence under the Federal Rules of Evidence.
*Gumbs v. Int'l Harvester, Inc.,* 718 F.2d 88, 97 (3d
Cir.1983). Federal Rule of Evidence 702 states that
If scientific, technical, or other specialized
knowledge will assist the trier of fact to understand
the evidence or to determine a fact in issue, a witness
qualified as an expert by knowledge, skill,
experience, training, or education, may testify thereto
in the form of an opinion or otherwise, if (1) the
testimony is based upon sufficient facts or data, (2)
the testimony is the product of reliable principles and
methods, and (3) the witness has applied the
principles and methods reliably to the facts of the
case.

*Fed.R.Evid.* 702. The Rules of Evidence do not
permit expert testimony as to legal conclusions. *Salas
by Salas v. Wang,* 846 F.2d 897, 905 n. 5 (3d
Cir.1988); *see Fed.R.Evid.* 704.

This Court excludes testimony by patent law experts
on substantive issues of patent law. (D.I. 70 Ex. C,
D); *Revlon Consumer Prods. Corp. v. L'Oreal S.A.,*
1997 U.S. Dist. LEXIS 4117, at *9-10 (D.Del. March
26, 1997). Testimony by Mr. Voight must therefore
be restricted to PTO practice and procedures and may
not include legal conclusions or substantive issues of
patent law.

In response to Defendant's Motion, Plaintiff's expert
removed his legal opinions on two-way testing in the
Amended Rebuttal Expert Report. (D.I. 74 Ex. A).
Plaintiff agrees to refrain from soliciting Mr. Voight's

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                          Page 2
Slip Copy, 2006 WL 2241018 (D.Del.)
**(Cite as: Slip Copy)**

opinion about which test for obviousness-type double-patenting should apply in this case. (D.I. 74 at 7). Despite Plaintiff's assurances, the Court concludes that section "V. Opinions and Basis Therefor," subsection "A. Legal Background for Opinions" of Mr. Voight's report must be stricken because it contains inadmissible legal conclusions. (D.I. 74, Ex. A at 10-11).

## ORDER

**\*2** NOW THEREFORE IT IS HEREBY ORDERED that Defendant Teva Pharmaceuticals USA, Inc.'s Motion To Preclude The Testimony Of Plaintiff's Patent Law Expert (D.I.69) is *GRANTED* and section V ., sub-section A., of Mr. Voight's "Amended Rebuttal Expert Report" (D.I. 74 Ex. A at 10-11), is stricken.

D.Del.,2006.
Proctor & Gamble Co. v. Teva Pharmaceuticals USA, Inc.
Slip Copy, 2006 WL 2241018 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:04cv00940 (Docket) (Aug. 13, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT D

**Westlaw.**

Not Reported in F.Supp.2d                                                    Page 1
Not Reported in F.Supp.2d, 2003 WL 1524658 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**

Briefs and Other Related Documents
Ondeo Nalco Co. v. EKA Chemicals, Inc.D.Del.,2003.Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
ONDEO NALCO COMPANY, a Delaware Corporation, Plaintiff,
v.
EKA CHEMICALS, INC., a Delaware Corporation, Defendant.
**No. Civ.A. 01-537-SLR.**

March 21, 2003.

Robert W. Whetzel, and Steven J. Fineman, of Richards, Layton & Finger, P.A., Wilmington, Delaware, Michael Dockterman, John S. Letchinger, Heather A. Boice, and Jonathan A. Harris, of Wildman, Harrold, Allen & Dixon, Chicago, Illinois, for Plaintiff, of counsel.
Josy W. Ingersoll, of Young, Conaway, Stargatt & Taylor, L.P., Wilmington, Delaware, Richard L. DeLucia, and Michael D. Loughnane, of Kenyon & Kenyon, New York, New York, for Eka, of counsel.

MEMORANDUM OPINION
ROBINSON, Chief J.

I. INTRODUCTION

**\*1** On August 10, 2001, plaintiff ONDEO Nalco Company ("Nalco") filed this action against defendant Eka Chemicals, Inc. ("Eka") seeking a declaratory judgment that its 8692 product does not infringe U.S. Patent Nos. 4,385,961 ("the '961 patent"), 4,388,150 ("the '150 patent"), or 5,603,805 ("the '805 patent"), owned by Eka. (D.I.1) On October 5, 2001, Eka answered and counterclaimed with allegations of infringement and willful infringement of the '150 and '805 patents. (D.I.15) Nalco subsequently answered Eka's counterclaims and asserted a number of affirmative defenses. (D.I.81) This court has jurisdiction pursuant to 28 U.S.C. § § 1331, 1338(a).

Presently before the court are various motions. For the reasons that follow: Nalco's motion for ruling on claim construction (D.I.161) is denied as moot; Eka's motion for partial summary judgment of infringement (D.I.166) is granted; Eka's motion for summary judgment that sales of its BMA-0 product do not invalidate the '805 patent (D.I.154) is denied; Eka's motion to strike Nalco's patent law expert's report (D.I.141) is granted; Eka's motion for summary judgment of no inequitable conduct (D.I.157) is denied; and Nalco's motion for summary judgment (D.I.162) is granted in part and denied in part.

II. BACKGROUND

A. The Parties

Eka is a Delaware corporation and the assignee of the '961 patent entitled "Papermaking." Eka is also the assignee of the '150 and '805 patents entitled "Papermaking and Products Made Thereby" and "Silica Sols and Use of the Sols," respectively. Utilizing the technologies of the '961, '150, and '805 patents, Eka has developed papermaking systems and manufactures and sells chemicals used in the papermaking process.

Nalco is a Delaware corporation that also manufactures chemicals for use in the papermaking industry. One of the products Nalco manufactures is its 8692 product, the accused product. This product has been offered for sale in the United States since 1998.

B. The Technologies

The technologies at issue in this case relate to processes of papermaking and the chemicals used in this process. The '805 patent is directed to silica sols and processes using silica sols in the production of paper for improved retention of additives and fines in the paper, as well as improved dewatering in the production process. The '961 and '150 patents are directed to processes of making paper using a binder comprised of cationic starch and colloidal silicic acid, resulting in increased strength and improved levels of retention of additives and fines in the paper.

III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 1524658 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 2

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 n. 10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.,* 57 F.3d 300, 302 n. 1 (3d Cir.1995) (internal citations omitted).

**\*2** If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial." ' *Matsushita,* 475 U.S. at 587 (quoting Fed.R.Civ.P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt,* 63 F.3d 231, 236 (3d Cir.1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

## IV. DISCUSSION

### A. Nalco's Motion for Ruling on Claim Construction

Given the court's claim construction order dated March 21, 2003, Nalco's motion for ruling on claim construction is denied as moot.

### B. Eka's Motion for Partial Summary Judgment of Infringement

Eka moves for partial summary judgment that 20 specific sales of Nalco's 8692 product literally infringed claim 3 of the '805 patent. (D.I.167) Claim 3 is dependent on claim 1 and claims:
1. Silica sols having an S-value within the range from 15 to 40 percent comprising anionic silica particles, said silica particles being non-aluminum modified, and having a specific surface area within the range of from 300 to 700 $m^2/g$.
3. The silica sols of claim 1 wherein the sol has an S-value within the range of from 15 to 35 percent.

According to the parties, "the only issues in dispute are whether the particles in Nalco's 8692 product are silica particles and, if so, whether the surface area for the silica particles corrected for boron falls within the claimed range when the Nalco 8692 product is sold and/or used." (D.I. 167 at 22)

In its claim construction order, the court construed the term "silica particles" in the '805 patent as "particles of SiO2, which may include other elements, compounds or substances as well." The term "non-aluminum modified" was construed to mean silica particles that "have not been surface modified with aluminum." Under this construction, Nalco's 8692 product literally infringes the "silica particles" limitation of claim 3 of the '805 patent.

Eka goes on to argue that under the proper surface area measurement techniques, i.e., the Sears method, the surface area of the 8692 product likewise falls within the required range of claim 3. Both parties agree that the surface area measurements must be corrected to account for the presence of boron in the liquid phase of the silica sols in accordance with the Sears method. The parties, however, differ in the amount of correction that must be made. Eka's expert states that a downward correction of 191 $m^2/g$ should be made. (D.I. 168 at A60) Nalco's expert states that the correction should only be 55 $m^2/g$. (D.I. 169 at A315) Eka argues that even accepting the lower correction figure offered by Nalco, it is undisputed from Nalco's own surface area and sales data that it sold infringing products on at least 20 occasions. (D.I. 169 at A629)

**\*3** Nalco does not dispute the surface area data or the sales data for these specific products. The court, after viewing the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion, concludes that the 20 sales identified by Eka were infringing sales; therefore, Eka's motion for summary judgment shall be granted on this issue.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 1524658 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

### C. Eka's Motion for Summary Judgment That Sales of its BMA-0 Product Do Not Invalidate the '805 Patent

Eka moves for summary judgment that sales of its BMA-0 product do not invalidate the '805 patent, presumably under 35 U.S.C. § 102(b). [FN1] (D.I.155) The thrust of Eka's argument is that claim 3 of the '805 patent requires a silica sol with an S-value of 40% or less and Nalco has not shown any evidence that the BMA-0 product sold before 1992 had an S-value in this range.

> FN1. In its brief, Eka does not argue validity with respect to any specific statutory provision. Since its brief only discusses the sale of its BMA-0 product as non-invalidating, the court assumes Eka is referring to the on-sale bar of § 102(b).

Reviewing the record submitted, it is undisputed that the BMA-0 product meets all the limitations of claim 3 of the '805 patent other than the S-value range. Eka directs the court to pre-1992 documents which report S-values for the BMA-0 product from 50% to 90%, depending on how the product was made. Nalco relies on a May 1992 document reporting S-values for BMA-0 of 31% and 47%, the former being within the claimed range of 15% to 35%, and asserts that Eka has not produced all relevant documents in this regard.

The court concludes that Eka has failed to carry its burden of proof on this issue. The document relied on by Nalco to show that the BMA-0 product had an S-value of 31% creates a genuine issue of material fact appropriately left for a jury to resolve. The court further concludes that Nalco has failed to demonstrate that Eka's production was so deficient as to warrant a negative inference. As such, Nalco's request that a negative inference be drawn is denied.

### D. Eka's Motion to Strike Nalco's Patent Law Expert's Report

Eka moves to strike the expert report of Gerald H. Bjorge, Esquire, on the grounds that it offers legal analysis and opinion which is contrary to this court's standing guidelines on the appropriate scope of patent law expert testimony. (D.I.142) Eka contends that

Mr. Bjorge, a patent attorney, is not a technical expert in the relevant field and cannot provide expert testimony on any aspect of papermaking or papermaking chemistry. In his expert report, Mr. Bjorge "walks through" the file history of the '805 patent and opines as to how the United States Patent and Trademark Office would have responded had certain prior art been disclosed to it during the prosecution of the '805 patent.

Having reviewed the report, the court concludes that the content exceeds the permissible scope of a patent law expert's testimony. Therefore, the report and testimony based on said report is stricken.

### E. Eka's Motion for Summary Judgment of No Inequitable Conduct

Eka moves the court for summary judgment of no inequitable conduct in the procurement of the '805 patent. (D.I.158) In support of its motion, Eka contends that Nalco never pled the four inequitable conduct claims it raised for the first time in Mr. Bjorge's expert report. Rather, the only inequitable conduct charges in the pleadings are those found in the first amended complaint. Since Nalco chose not to include in its pleadings any of the allegations of inequitable conduct now raised in its expert report, it should be barred from raising these claims at trial.

*4 Nalco argues that it pled the affirmative defense of inequitable conduct in its answer and since Eka failed to seek a more definite statement of the charges until now, it has waived its objection. The proper remedy for insufficient pleading is a Rule 12(f) motion to strike or a Rule 12(e) motion for a more definite statement. Nalco contends that had either of these motions been made by Eka, the pleading could have been cured.

The court agrees that the proper vehicle for curing pleading deficiencies is by a motion for a more definite statement pursuant to Fed.R.Civ.P. 12(e) or by a motion to strike pursuant to Fed.R.Civ.P. 12(f). *See EMC Corp. v. Storage Tech. Corp.,* 921 F.Supp. 1261 (D.Del.1996). In the absence of such a motion, the question becomes whether there has been sufficient notice to the opposing party of the specific inequitable conduct allegations to allow for full and fair discovery of such. In this case, certain of the specific allegations of inequitable conduct are contained only in an expert report now stricken from the record, as would the testimony based on said report. Under the circumstances, Eka's motion for

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 1524658 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

summary judgment is granted as to the four theories addressed in the expert report. The motion is denied, however, as to the inequitable conduct allegations properly pled in the amended complaint.

### F. Nalco's Motion for Summary Judgment of Non-infringement and Invalidity

#### 1. Non-infringement

Nalco moves for summary judgment that its 8692 product does not infringe any of the patents in suit either literally or under the doctrine of equivalents. (D.I.163) With respect to the '805 patent, as noted above, the court adopted a broader construction of the "silica particles" and "silica sols" limitations than that proposed by Nalco. Under the court's construction, Nalco's 8692 product literally infringes these limitations.

Nalco further contends, however, that its 8692 product does not meet the surface area limitations of claim 3 of the '805 patent. In support of its argument, Nalco asserts that at the time of manufacture, the 8692 product particles have a surface area outside the range of the claim limitation. Furthermore, Nalco argues that there is no evidence of record demonstrating that its customers store the 8692 product long enough to cause a drop in surface area to a range falling within the claim limitations. Not surprisingly, Eka disputes this allegation and points to the report of one of its experts concluding that the majority of sales of the 8692 product fall within the range of the surface area limitation of claim 3 of the '805 patent.

Viewing the underlying facts and all reasonable inferences therefrom in the light most favorable to Eka, as it must on summary judgment, the court concludes that there is a genuine issue of material fact as to whether or not the 8692 product, as manufactured or stored, meets the surface area limitations of claim 3 of the '805 patent. Therefore, Nalco's motion is denied as to this issue.

*5 Nalco also argues that its 8692 product does not meet the "papermaking" limitation of the '150 patent because it does not itself manufacture paper. Additionally, Nalco argues that it does not indirectly infringe the '150 patent by selling the 8692 product to papermakers since there can be no indirect infringement without proof of direct infringement.

Eka refers to Nalco's own 30(b)(6) discovery information as illustrating that Nalco's customers use the 8692 product in an infringing manner and that, viewing the evidence in a light most favorable to Eka, there is sufficient evidence of record to demonstrate a genuine issue of material fact. The court agrees and declines to grant Nalco's motion on this issue.

Nalco finally argues that the court should grant summary judgment of non-infringement of the patents in suit under the doctrine of equivalents because Eka has not supplied any evidence or theory on equivalents and, furthermore, it is barred by the doctrine of prosecution history estoppel from asserting equivalents with respect to the "non-aluminum modified" limitation in the '805 patent.

Upon review of the evidence of record, the court agrees with Nalco that Eka has failed to provide sufficient evidence to support a theory of infringement under the doctrine of equivalents.[FN2] Therefore, Nalco's motion of summary judgment of non-infringement under the doctrine of equivalents is granted.

> FN2. The court finds an expert's conclusory reference to the phrase "insubstantial difference," without more, is an insufficient doctrine of equivalents analysis.

#### 2. Invalidity

##### a. Obviousness

Nalco argues that claim 3 of the '805 patent is obvious in light of U.S. Patent No. 2,750,345 ("the '345 patent").[FN3] (D.I.163) The '345 patent discloses an S-value of 40% and claim 3 requires an S-value of between 15% and 35%. Nalco asserts that the claimed range and the range disclosed in the prior art are close enough that a person of ordinary skill in the art would expect the silica sols disclosed in the '805 patent to have the same properties as the silica sols disclosed in the '345 patent. As further support of this position, there is record evidence indicating that fluctuations in S-value of 5% or more do not affect the performance of silica sols in the presence of cationic starch.

> FN3. Nalco argues that claims 1, 2 and 4 are

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 5
Not Reported in F.Supp.2d, 2003 WL 1524658 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

anticipated under 35 U.S.C. § 102(b), however, Eka subsequently stipulated that it would not be asserting claims 1, 2, 4, 6 or 8 against the 8692 product either now or in the future. As such, the court will not address this argument.

Eka counters with the assertion that the '345 patent teaches away from having a low S-value and specifically prefers silica particles in which the degree of aggregations is minimal, i.e., a high S-value. In contrast, the '805 patent expressly teaches that a lower S-value is preferred.

The court concludes that upon viewing the facts and evidence in a light most favorable to Eka, entry of a summary judgment on the issue of obviousness is not warranted. It is evident that the '345 patent teaches a silica sol with S-values of 40% to 90%, preferably 70% to 90%. ('345 patent, col. 7, ll. 45-50) Furthermore, the '345 patent specifically states that "[i]t is particularly preferred to employ silica sols in which the degree of aggregation is at a minimum" and "[t]he gel content of preferred products is not in excess of an amount equivalent to a percent solids, in the dispersed phase, of 40 per cent ..." ('345 patent, col. 3, ll. 45-47; col. 7, ll. 52-55) Both of these statements teach that a higher S-value is preferred. It is equally evident that the '805 patent teaches that silica sols with a high microgel content, i.e., a low S-value of preferably between 15-35%, provide "a substantially improved effect" with respect to retention and dewatering in paper. ('805 patent, col. 1, ll. 51-60)

*6 Given the record, the court finds that there is a genuine issue of material fact as to whether a person of ordinary skill in the art would consider the '805 patent obvious in light of the '345 patent.

b. Enablement

Nalco argues that the '805 patent is invalid for lack of enablement under 35 U.S.C. § 112, § 1. In support of this argument, it provides the expert report of Dr. Robert Pelton. In his report, Dr. Pelton summarily states that in several experiments done at his request, a colleague was unable to make the silica sols of the '805 invention following the specification.

Eka attacks this argument as inadmissible hearsay since Dr. Pelton apparently did not oversee the experiments and had no idea of how the experiments were done or even if they were done. Furthermore, no

experimental data or information regarding the alleged "experiments" was provided so that Eka could test Dr. Pelton's data and opinions.

The court concludes that Dr. Pelton's report regarding enablement is inadequate to support Nalco's enablement defense. Therefore, Nalco's motion is denied in this regard and that part of Dr. Pelton's report and testimony is stricken.

c. Inequitable conduct

Nalco argues that the '805 patent is unenforceable due to Eka's inequitable conduct in procuring the patent. In support of its argument, Nalco relies on a 1996 article authored by two inventors of the '805 patent. As discussed above, however, the allegations of inequitable conduct based on this article were never pled by Nalco and the expert report expounding these theories has been stricken. Therefore, summary judgment of inequitable conduct based on this reference is denied.

V. CONCLUSION

For the reasons stated: Nalco's motion for ruling on claim construction (D.I.161) is denied as moot; Eka's motion for partial summary judgment of infringement (D.I.166) is granted; Eka's motion for summary judgment that sales of its BMA-0 product do not invalidate the '805 patent (D.I.154) is denied; Eka's motion to strike Nalco's patent law expert's report (D.I.141) is granted; Eka's motion for summary judgment of no inequitable conduct (D.I.157) is denied; and Nalco's motion for summary judgment (D.I.162) is granted in part and denied in part. An appropriate order shall issue.

ORDER

At Wilmington, this 21st day of March, 2003, consistent with the memorandum opinion issued this same day;

IT IS ORDERED that:

1. Nalco's motion for ruling on claim construction (D.I.161) is denied as moot.

2. Eka's motion for partial summary judgment of infringement (D.I.166) is granted.

Not Reported in F.Supp.2d                                                                              Page 6
Not Reported in F.Supp.2d, 2003 WL 1524658 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

3. Eka's motion for summary judgment that sales of its BMA-0 product do not invalidate the '805 patent (D.I.154) is denied.

4. Eka's motion to strike Nalco's patent law expert's report (D.I.141) is granted.

5. Eka's motion for summary judgment of no inequitable conduct (D .I. 157) is denied.

6. Nalco's motion for summary judgment (D.I.162) is granted in part and denied in part.

D.Del.,2003.
Ondeo Nalco Co. v. EKA Chemicals, Inc.
Not Reported in F.Supp.2d, 2003 WL 1524658 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 2003 WL 24334377 () Expert Report of Donald R. Uhlmann (Jan. 22, 2003) Original Image of this Document (PDF)
• 2002 WL 33030936 () Expert Report of GERALD H. BJORGE for Plaintiff Ondeo Nalco Regarding Unenforceability of U.S. Pat. No. 5,603,805 (Dec. 23, 2002) Original Image of this Document (PDF)
• 1:01CV00537 (Docket) (Aug. 10, 2001)
• 2001 WL 34922258 () (Partial Testimony) (2001) Original Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT E

Westlaw.

Not Reported in F.Supp.                                                                                    Page 1

Not Reported in F.Supp., 1995 WL 261407 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.)**

**H**
Briefs and Other Related Documents
Applied Materials, Inc. v. Advanced Semiconductor
Materials America, Inc.N.D.Cal. 1995Only the
Westlaw citation is currently available.
United States District Court,N.D. California.
APPLIED MATERIALS, INC., Plaintiff,
v.
ADVANCED SEMICONDUCTOR MATERIALS
AMERICA, INC., Epsilon Technology Inc., Doing
Business as ASM Epitaxy, and Advanced
Semiconductor Materials International N.V.,
Defendants.
**No. C 92-20643 RMW.**

April 25, 1995.

Matthew D. Powers, Weil Gotshal & Manges,
Menlo Park, CA, for plaintiff.
Don W. Martens, Knobbe Martens Olson & Bear,
Newport Beach, CA, for defendants and
counterclaimants.

RULINGS ON PRETRIAL MOTIONS
WHYTE, District Judge.
**\*1** The hearing on the parties' pretrial motions was
held on April 21, 1995. After reviewing the papers
and hearing the oral arguments of counsel, the court
makes the rulings set forth below.

I. APPLIED MATERIALS MOTIONS

A. *In Limine* Re: 1985 Conception Proof

Applied seeks to exclude evidence of Goodwin's
alleged 1985 conception of the use of reinforcing
ribs on the outside of a quartz reaction chamber.
ASM claims such evidence is relevant to its
obviousness defense in that prior invention is
probative of the level of ordinary skill in the art and
suggests that those in the field were familiar with all

of the basic concepts disclosed in the patent.
Applied submits the evidence is inadmissible
because: (1) Goodwin's alleged conception is not
independently corroborated and (2) the only
document showing the alleged conception is an
inadmissible copy of a page from an unwitnessed,
missing lab note book.

Neither the parties nor the court has found a case
which expressly holds that testimony of a witness
plus his own, unwitnessed drawing is admissible on
the issue of obviousness. In *Hahn v. Wong,* 892
F.2d 1028, 1032 (Fed. Cir. 1989), the court held
that an inventor, to establish reduction to practice
for establishing priority, "must provide independent
corroborating evidence in addition to his own
statements and documents." ASM argues that *Price
v. Symsek,* 988 F.2d 1187 (Fed. Cir. 1993) backs off
this requirement and provides for a "rule of reason"
test, to determine whether the inventor's prior
conception testimony has been corroborated.
Although *Price* does articulate a "rule of reason"
test, it does not hold that uncorroborated testimony
of an inventor plus his or her own unwitnessed
drawing is sufficient. The closest it comes is by
quoting from *Mergenthaler v. Scudder,* 11 App.
D.C. 264, 278 (D.C. Cir. 1897):
[C]onception by an inventor, for the purpose of
establishing priority, can not be proved by his mere
allegation nor by his unsupported testimony where
there has been no disclosure to others or
embodiment of the invention in some clearly
perceptible form, such as drawings or model, with
sufficient proof of identity in point of time.

*Price,* 988 F.2d at 1194. It seems doubtful that an
unwitnessed drawing, although bearing a purported
date, would be "sufficient proof of identity in point
of time."[FN1] In *Price* the inventor presented
several exhibits, including an affidavit from
someone else, corroborating the date of a drawing.

Although, as noted, no case has been found
expressly discussing corroboration of conception in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                              Page 2

Not Reported in F.Supp., 1995 WL 261407 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.)**

the context of an obviousness defense, the policy behind corroboration for establishing priority applies to a claim that those in the field were familiar with the idea of the invention thus making it obvious. In other words, if corroboration were not required there would be "a great temptation to perjury" a nd the absence of such a requirement " would have the effect of virtually precluding the adverse party from the possibility of rebutting such evidence." *Price,* 988 F.2d at 1994-95. Therefore, the court finds that the 1985 conception proof is not independently corroborated and should not be admitted.

**\*2** The court's conclusion that the evidence should be excluded is reinforced by the fact that the original drawing and the notebook in which it is allegedly contained are not available. F.R.E. 1004(1) does provide that the loss of the original, unless due to bad faith of the proponent, is a satisfactory explanation of nonproduction of the original. Although ASM's explanation of the loss is not as detailed as it should be, the court finds that it is sufficient to show that the loss was not due to the bad faith of ASM. However, the inability of Applied to review the purported lab book and surrounding pages does result in some unfairness to Applied. There are legitimate questions of authenticity given that the drawing was unwitnessed, that no witness has been identified who can corroborate its existence in 1985, and that ASM apparently took no action for several years on the alleged 1985 conception.

Even if the 1985 conception proof were deemed to meet the corroboration requirement for admissibility, the court finds that the evidence should be excluded because its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. F.R.E. 403. The probative value of one inventor's undisclosed conception of an invention is not persuasive evidence of the level of skill in the art. Further, the potential for the jury being confused or mislead is real in that the jury may not understand that the issue is not whether Goodwin came up with the idea first, but rather what was the level of skill in the art at the time of Applied's claimed invention. Finally, and most importantly,

the risk of prejudice to Applied is significant in light of its limited ability to question the legitimacy and timing of the drawing.

For the above reasons, the court orders that Applied's motion to exclude the Goodwin 1985 conception proof is granted.

### B. *In Limine* Re: ASM's Legal Expert

Applied submits that ASM's legal expert Nusbaum, a former supervising patent examiner and former member of the Patent Office Board of Patent Appeals and Interferences, should not be allowed to testify on the topics listed below. Nusbaum is not a technical expert and testified that he is not skilled in the relevant art and never worked in the relevant art units within the Patent Office. ASM argues that Nusbaum's testimony is designed to assist the jury in understanding the complex evidence that will be presented, particularly with respect to interpreting the materiality of prior art, the effect of prior art and test results not before or examined by the examiner, and the examiner's limited facilities.

### 1. *Testimony About What the Prior Art Teaches.*

Both parties agree Nusbaum cannot testify as to what the prior art teaches, because he is not a technical expert. The motion, therefore, as to this area is granted.

### 2. *Testimony About the Materiality of the Prior Art.*

The court grants Applied's motion to preclude testimony by Nusbaum about the "materiality" of prior art. He is not skilled in the art. Seilheimer, not Nusbaum, is the appropriate expert to address whether the prior art before the Patent Office is the most relevant prior art.

### 3. *Testimony About What the Examiner Would Have Done if Nusbaum Had Been the Examiner or if the Examiner Had Different Information.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                    Page 3

Not Reported in F.Supp., 1995 WL 261407 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.)

**\*3** The court grants Applied's motion precluding Nusbaum from testifying about what the examiner would have done if Nusbaum had been the examiner, or if the examiner had different information. The evidence would be irrelevant speculation and Nusbaum is not skilled in the art. Further, expert testimony is only appropriate if helpful to understand or to determine a fact in issue. F.R.E. 702. Generally, an expert may not advise a jury as to applicable principles of law. Cotchett, Elkind *Federal Courtroom Evidence,* 3rd Ed., p. 287.

### 4. Testimony Regarding How the Examiner Would Have Reacted to the Results of Applied's Internal Development Program.

The court grants Applied's motion requesting that Nusbaum be precluded from testifying about how the examiner would have reacted to the results of Applied's internal development program. Nusbaum is not skilled in the art. Further, how he personally would have reacted is irrelevant.

### 5. Testimony Concerning Overwork, Quotas, Awards or Promotions at the Patent Office, or the Number of Patents that Issue Annually or Otherwise Insinuating that the Patent Office Does Not Do Its Job Properly.

Applied submits that Nusbaum should not be allowed to make generalized attacks on the Patent Office. It argues that such an attack would show inappropriate disrespect for a quasi-judicial administrative body. *See, United States v. Morgan,* 313 U.S. 409, 422 (1941); *Western Electric v. Pinezo Tech.,* 860 F.2d 428 (Fed. Cir. 1988). Applied also contends that a generalized attack would be irrelevant, because ASM has no evidence that the examiner who reviewed the application for the patents-in-suit were short of their "quotas," under bureaucratic pressure, or other factors that impacted the quality of their work. ASM counters that such evidence is necessary to rebut the presumption of validity and to provide the jury evidence to balance against Applied's reliance on the deference to be given to the decision of a government agency.

The presumption of validity is not substantive evidence - it is merely a procedural device assigning the burden of proof. *Chore-Time Equip. Inc. v. Cumberland Corp.,* 713 F.2d 774, 780 (Fed. Cir. 1983). In other words, the presumption of validity merely explains why the attacker's burden is clear and convincing evidence. However, when the patentee relies upon the deference that is due to the Patent Office which is presumed to have properly done its job, the attacker can show that the Patent Office did not consider certain invalidating evidence, thus showing no need to defer. *American Hoist & Derrick Co v. Sowa & Sons, Inc.,* 725 F.2d 1350, 1359 (Fed. Cir.), cert. denied 469 U.S. 832, 105 S.Ct. 95 (1984).

The court finds that the type of evidence Applied seeks to exclude is properly excluded and will not prevent ASM from presenting appropriate evidence to try and meet its burden and to point out when deference to the Patent Office's determination is not appropriate (e.g. by showing through a technical expert and the prosecution history that the examiner did not consider pertinent prior art.) Testimony about overwork, quotas, awards or promotions at the Patent Office, or the number of patents that issue annually or insinuating that the Patent Office does not do its job properly is excluded. Such evidence would be irrelevant speculation and would constitute an inappropriate attack on the Patent Office. The court will reconsider this ruling, however, if Applied opens the door by presenting evidence suggesting that some extraordinary deference is due in this case.

### 6. Testimony About Patent Office Procedures that Do Not Relate to ASM's Only Defense of Obviousness.

**\*4** The parties do not dispute that Patent Office procedures unrelated to obviousness are not relevant. Therefore, Applied's motion to exclude such evidence is granted recognizing, however, that some general evidence about the Patent Office and its procedures is necessary to understand the Patent Office's function with respect to examining

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                    Page 4

Not Reported in F.Supp., 1995 WL 261407 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.)

non-obviousness.

### 7. *Evidence About Patent Office Burden Shifting Rules.*

The parties do not appear to dispute that the Patent Office's burden shifting rules are irrelevant. In any event, evidence pertaining to such rules is irrelevant and likely to be confusing to the jury who will be instructed on the burden of proof rules it must apply. Therefore, Applied's motion is granted and no evidence of the Patent's Office's burden shifting rules will be allowed absent a showing that some specific, relevant statement in the prosecution history cannot be understood without such an explanation.

### C. *In Limine* Re: Exclude Experts from Courtroom (ASM's Cross-Motion on Same Subject.)

Applied submits that pursuant to F. R. E. 615 the parties' experts must be excluded from the courtroom. ASM counters that Rule 615(3) contains an exception for "a person whose presence is shown by a party to be essential to the presentation of the party's cause." T he parties dispute whether ASM's counsel needs the assistance of its experts for the presentation of its cause. The court finds that an exception to the mandatory exclusion rule is supported here for ASM's technical expert, Seilheimer. The minimal danger that Seilheimer will substantially alter his testimony based upon prior testimony at trial, coupled with the compelling need for his expert assistance to counsel, supports the court's conclusion. Therefore, each party's one technical expert will be permitted to be present during trial. This ruling, of course, does not give license to either expert to unfairly bolster his opinions by adding bases upon which he did not rely at his deposition.

### D. *In Limine* Re: Nomura Evidence

Applied moves to preclude ASM from presenting Nomura as a trial witness, because ASM engaged in discovery obstruction. ASM denies that it engaged in unfair tactics and claims Nomura's testimony is important to its assertion of obviousness. Nomura will apparently testify that while at ASM Japan he independently conceived reinforcing a quartz chamber with external ribs.

This motion, unfortunately, requires the court to decide whether a party's conduct during discovery requires the exclusion of certain evidence. The court has reviewed in detail the various declarations, the transcript of the pretrial proceedings on February 2, 1995, and the parties' disclosures, letters and discovery responses. Although the court has some reservations about its conclusion, it finds that the Nomura evidence should not be excluded based upon the allegedly unfair actions of ASM.

Nomura and the documents on which ASM intends to rely were disclosed over two years ago. Applied did not ask for Nomura's deposition until November 15, 1994. ASM advised on November 16, 1994 that:
**5** Because ASM does not presently intend upon presenting Mr. Nomura as a fact witness at trial, ASM will not bring him to the United States for a deposition. In the event ASM decides to use him as a fact witness, ASM will make him available.

Apparently, ASM believed at that time that Nomu ra's conception was not independent of Goodwin's alleged conception. The fact that ASM's counsel had that belief causes the court to be a little suspicious of ASM's current claim that Nomura's conception was independent.[FN2] However, the court is not persuaded that there is sufficient evidence to support a conclusion that ASM is hiding evidence. The court has no reason to believe that counsel would engage in dishonest conduct and further finds that counsel's supervision of searches of files, although not technically in compliance with the court's February 2, 1995 order, was in good faith and reasonably thorough.

ASM advised Applied on January 17, 1995, that it intended to use Nomura. At the pretrial conference on February 2, 1995, the court ordered ASM to make Nomura available for deposition and also initially ordered that an ASM American attorney in Japan declare that ASM Japan's files had been

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                      Page 5

Not Reported in F.Supp., 1995 WL 261407 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.)

reviewed and all documents relevant to Nomura's alleged conception were being provided. After ASM advised that it did not have an attorney from the United States in Japan, the court ordered that a representative of ASM Japan declare that the files had been reviewed and that an Applied attorney had been provided access to the files. After the hearing, ASM decided to send Attorney Treska, one of its counsel, to Japan and he has provided a detailed declaration of what was searched by him and others. Although this declaration does not technically comply with the modified version of the court's order, it does meet the substance of it. It was what the court had ordered before it learned that ASM did not have an American attorney in Japan - a situation that was remedied by sending Attorney Treska.

The court is aware that Nomura stated at his deposition that he had not searched all of his files to see if there was anything related to development projects for reduced pressure Epsilon reactors. This evidence concerns the court but Nomura was not probed on what files existed that he did not search. The remainder of Nomura's deposition and Attorney Treska's declaration satisfies the court that a reasonable search was conducted and that Nomura should not be excluded as a fact witness. The court, although not pleased with ASM's handling of Nomura, is not convinced that Applied will be unfairly prejudiced by allowing him to testify. Therefore, Applied's motion to exclude Nomura evidence is denied.

## II. ASM'S MOTIONS

### A. *In Limine* Re: Letter from ASM's Counsel Describing ASM's Invalidity Contentions.

ASM seeks to exclude from evidence Applied Exhibit 54, which is a January 5, 1995 letter from ASM's litigation counsel to Applied's litigation counsel which outlines certain of ASM's contentions. Since ASM is not now contesting infringement, Applied has withdrawn the exhibit. This issue is, therefore, moot.

### B. *In Limine* Re: Subpoenas of Quartz Manufacturers

**\*6** ASM seeks to exclude evidence of Applied's subpoenas to various third party quartz manufacturer on the basis that the subpoenas are not probative of any issue presently in the case. ASM also argues that any relevance of the subpoenas is outweighed by the likelihood that they will constitute a time consuming digression. F.R.E. 403. Applied argues that the fact that the subpoenas yielded no evidence of any quartz design close to Applied's patented design makes them relevant to the cross-examination of ASM's technical expert Seilheimer. The court believes that the subpoenas, and the responses thereto, may well be an appropriate subject for cross-examination and, therefore, will not exclude reference to them at this time. ASM's motion is, therefor, denied.

### C. *In Limine* Re: Skepticism Evidence

ASM moves to exclude evidence of skepticism that Applied seeks to introduce as objective indicia of non-obviousness. ASM claims that despite discovery requests, Applied has never identified any such evidence. Applied denies that it has evaded discovery on this issue and further orally represented that the evidence is contained in depositions that have been taken. Local Rule 235-7(i) provides that the pretrial statement contain a list of witnesses "together with a brief statement following each name describing the substance of the testimony to be given." Local Rule 235-7(j) requires a list of exhibits "with a brief statement following each describing its substance or purpose.... " Since Applied represents that the evidence is contained in the discovery, ASM's motion is denied on the condition that Applied supplements the pretrial statement within five (5) days with appropriate lists of witnesses and documents supporting its skepticism proof.

### D. *In Limine* Re: Evidence of Infringement

ASM moves to exclude evidence at trial of infringement by ASM's accused CVD reactor, since

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                          Page 6

Not Reported in F.Supp., 1995 WL 261407 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.)

ASM does not dispute infringement if invalidity is not proved. ASM says the evidence would be both a distraction and prejudicial. Applied responds that it does not plan to offer any evidence only relevant to infringement but believes that the fact that ASM infringes, if its invalidity claim fails, is of substantial probative value. Specifically, it shows that ASM's witnesses have a motive to embellish their testimony to help ASM and save their jobs. The court agrees that the point is a proper one for cross-examination. Applied must make clear, however, that ASM is not contesting infringement except on the theory that one cannot infringe an invalid claim. Applied also may tell the jury that ASM gets to go first in presenting its opening, its evidence, and its argument because it has the burden of proof. However, there is no need to discuss what would have been the order of presentation had ASM contested infringement. With these understandings, ASM's motion to exclude evidence of infringement is denied. ASM, of course, is free to object to any evidence Applied seeks to offer on the basis that it is solely related to the non-disputed issue of infringement.

### E. *In Limine* Re: Other Patent Infringement Actions

*7 ASM moves to preclude the admission of evidence of the other prior or pending patent infringement actions between the parties. ASM argues that such evidence is irrelevant and, even if relevant, the relevance is outweighed by the danger of undue prejudice, confusion and delay. Applied agrees that prior liability findings are irrelevant but submits that the facts and circumstances of the prior litigation may prove relevant.

Oral argument revealed little actual disagreement between the parties. Both appear to agree that prior testimony of experts may be relevant. The only issue on which the parties definitely disagree is on whether Applied's technical expert can support his opinion regarding the ordinary skill in the art by reference to Judge Ingram's finding of the level of ordinary skill in the art in case number C-91-20061. The court agrees with ASM that such reliance would be improper. The case is on appeal. The court seriously questions whether such a finding is

the type of evidence on which expert's normally rely. Further, the prejudicial effect of the evidence would seem to outweigh its probative value, as it would be hard to get into Judge Ingram's finding without a discussion of the outcome of the case. Also, the court's finding, which is not yet final, might carry undue weight in the minds of the jurors.

ASM's motion to exclude evidence is granted insofar as the court orders excluded evidence of liability findings in other litigation and reference to Judge Ingram's finding on the level of ordinary skill in the art in case number C-91-20061. It is otherwise denied as premature. Reference to other litigation may be necessary if expert testimony from any of those proceedings is relevant for some purpose. The existence of other litigation in and of itself, of course, has no relevance.

### F. *In Limine* Re: Testimony of Tom Thompson Re: Prior Work at AG Associates

ASM also seeks to exclude the testimony of Thompson regarding a purported failed attempt to design a thick-walled quartz reactor chamber to withstand reduced-pressure operation. ASM asserts that Thompson is not competent to testify because the purported attempt was made by a company known as AG Associates before he started to work there. Therefore, since he has no personal knowledge, he is barred by F.R.E. 602 which says a witness cannot testify to a matter absent personal knowledge of it. Further, argues ASM, anything Thompson was told would be inadmissible hearsay under F.R.E. 801 and 802.

Applied counters that Thompson's testimony is relevant because the recognition of need and difficulties encountered by those skilled in the field are indicia of unobviousness. Applied says Thompson's testimony is admissible because he has personal knowledge of the thick walled chamber and the tests that were run on it showing that the walls got too hot. He also knows that his company abandoned work on a thick-walled reactor. Assuming Applied can lay a foundation that Thompson has first hand knowledge of these events, he is competent to testify. However, his deposition

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                    Page 7

Not Reported in F.Supp., 1995 WL 261407 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.)

testimony is not clear as to whether the testing was done before he arrived and how he has knowledge of the test results. It appears he may have observed the test results himself or it may be that he was merely informed by others who did testing before he arrived. If he has no personal knowledge of the testing, he would not be competent to testify as to what those results showed. In other words, he could testify that AG had a thick-walled chamber and that AG abandoned the project on it, but he could not testify as to the reason. The state of mind hearsay exception (F.R.E. 803(3)) does not apply. Nor can the statement of the reason the project was abandoned be considered a non-hearsay statement if offered for the truth of the reason. It is not an assessment of a product's quality and marketability of the type executives make inferentially from what they are told by customers and engineers as was the assessment in the case of *Agfa-Gevart, A.G. v. A.B. Dick Co.,* 879 F.2d 1518, 1523 (7th Cir. 1989) cited by Applied.

**\*8** ASM's motion to exclude is denied. However, before the evidence can be received, Applied will have to lay a proper foundation showing personal knowledge for its admissibility.

### G. *In Limine* Re: Failed Attempts by Others and Long Felt Need

ASM moves to exclude evidence of failed attempts by others and long felt need as objective indicia of non-obviousness. The same analysis and ruling is appropriate here as in the case of the skepticism evidence discussed in II C above. Therefore, ASM's motion is denied on the condition that Applied supplements the pretrial statement within five (5) days with the appropriate lists of witnesses and documents supporting its failed attempts and long felt need proof.

### H. Motion to Add Russian Reference

ASM moves to add a recently obtained prior art publication (the "Russian Reference") to its trial exhibit list. It claims it only recently discovered the reference. Applied argues that ASM has failed to

adequately explain why the reference was not found earlier and claims it will be prejudiced by the late addition. The court believes that ASM has shown sufficient justification for its late disclosure and that any prejudice to Applied can be minimized, if not eliminated, by: (1) requiring ASM to produce Seilheimer at a reasonable time and location designated by Applied for further deposition; (2) precluding reference to the Russian reference by any ASM witness other than Seilheimer; and (3) requiring ASM to supplement its expert disclosure at least twenty-four hours before Seilheimer's supplemental deposition with an explanation of how the art fits into ASM's obviousness claim.

ASM's motion to add the Russian Reference is granted on the above conditions.

> FN1. ASM argued at the hearing that it had other corroborating evidence. However, despite extensive briefing including extensive citations to evidence, ASM offered no such evidence in response to Applied's motion. The court has only considered the evidence properly before it.

> FN2. ASM's current claim, however, precludes Nomura as a witness to corroborate Goodwin's alleged conception.

N.D.Cal. 1995
Applied Materials, Inc. v. Advanced Semiconductor Materials America, Inc.
Not Reported in F.Supp., 1995 WL 261407 (N.D.Cal.)

Briefs and Other Related Documents (Back to top)

• 5:92CV20643 (Docket) (Oct. 01, 1992)

END OF DOCUMENT

# EXHIBIT F

Westlaw.

Not Reported in F.Supp.

Page 1

Not Reported in F.Supp., 1991 WL 211647 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

**H**
Briefs and Other Related Documents
W.R. Grace & Co. v. Viskase
Corp.N.D.Ill.,1991.Only the Westlaw citation is
currently available.
United States District Court, N.D. Illinois, Eastern
Division.
W.R. GRACE & CO., Plaintiff,
v.
VISKASE CORPORATION, Defendant.
**No. 90 C 5383.**

Oct. 15, 1991.

*MEMORANDUM OPINION AND ORDER*
CONLON, District Judge.
**\*1** Plaintiff W.R. Grace & Co.-Conn. ("Grace")
sues defendant Viskase Corporation ("Viskase") for
infringing Grace's patent ("the Ferguson patent").
By court order, the bench trial of this matter is
trifurcated. The issue of infringement, including
the issue of willfulness, shall be tried first. If
necessary, the issue of validity shall then be tried,
and the issue of damages shall be tried last. The
infringement trial shall begin on October 24, 1991.
Discovery closed on August 30, 1991. Nine
motions *in limine* are before the court. Seven
motions are brought by Viskase and two motions
are brought by Grace.

*DISCUSSION*

A motion *in limine* serves to exclude irrelevant or
otherwise inadmissible evidence prior to trial, rather
than relying upon sustained objections at trial. To
exclude evidence before trial, the evidence must
clearly be inadmissible on all possible grounds. A
ruling on a motion *in limine* is subject to change as
events at trial unfold. *Moore v. General Motors
Corp., Delco Remy Div.,* 684 F.Supp. 220
(S.D.Ind.1988). Furthermore, a trial judge has
broad discretion to determine the relevance of

proffered evidence. *Hamling v. United States,* 418
U.S. 87, 124-25 (1974); *United States v. Laughlin,*
772 F.2d 1382, 1392 (7th Cir.1985). Accordingly,
it is inappropriate to exclude evidence as irrelevant
without the context of trial.

*Viskase's Motions in Limine*

(1) Motion to exclude the testimony of Donald W.
Banner

After the close of discovery on August 30, 1991,
Grace designated Donald W. Banner ("Banner") as
an expert witness. Grace has proffered Banner, a
patent attorney, to testify on certain legal issues at
both the infringement and validity trials. Viskase
moves to exclude Banner's testimony on the ground
that there is no need for a patent lawyer to explain
patent law to the court. Viskase is correct.
Federal judges are expected to be experts on federal
law. *Vucinich v. Paine, Webber, Jackson & Curtis,
Inc.,* 803 F.2d 454, 461 (9th Cir.1986).
Accordingly, the testimony of a legal expert in
federal cases is generally unnecessary. *Marx & Co.
v. Diner's Club, Inc.,* 550 F.2d 505, 510 (2nd
Cir.1977), *cert. denied,* 434 U.S. 861 (1977); *See
also Loeb v. Hammond,* 407 F.2d 779, 781 (7th
Cir.1969) (question of legal effect of contract is for
judge, thus expert testimony not permitted).

Both parties are represented by numerous patent
lawyers. Banner's proffered testimony offers no
meaningful assistance to the court as the trier of
fact. Fed.R.Evid. 702. Thus, Viskase's motion to
exclude Banner's testimony is granted.

(2) and (3) Motions to exclude testimony of
William MacKnight and Steven Garland

Also after the close of discovery, Grace designated
Dr. William MacKnight ("MacKnight") and Steven

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                              Page 2

Not Reported in F.Supp., 1991 WL 211647 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

Garland ("Garland") as technical expert witnesses. Viskase moves to exclude the testimony of both witnesses on asserted prejudice to Viskase's trial preparation. However, Grace has informed the court that neither MacKnight nor Garland will be called at the infringement trial. Grace's response at p. 3, n. 3. Thus, Viskase's motions to exclude the testimony of MacKnight and Garland are denied as moot for purposes of the infringement trial. If necessary, Viskase may renew its motions *in limine* to exclude MacKnight and Garland at the validity trial. In any event, Grace shall not be permitted to call either MacKnight or Garland at the infringement trial.

### (4) Motion to exclude the use of deposition testimony of any of Viskase's witnesses who are available for trial

**\*2** Viskase moves to prohibit Grace from introducing into evidence any deposition testimony of any of Viskase's witnesses who are available for trial, with the exception of Fed.R.Civ.P. 30(b)(6) (" Rule 30(b)(6)") testimony. Viskase contends that the only other situation in which deposition testimony may be introduced at trial is where a witness is unavailable as defined by Rule 32(a)(3).

Viskase's selective reading of the Federal Rules is inappropriate. Rule 32(a)(1) allows the use of deposition testimony to contradict or impeach a trial witness in accordance with the Federal Rules of Evidence. Furthermore, Rule 32(a)(2) provides that the depositions of an officer, director or managing agent of a corporate party may be used by an adverse party at trial for *any purpose* (emphasis added). *See Fey v. Waltson & Co.,* 493 F.2d 1036, 1045-46 (7th Cir.1974) (deposition of party witness may be introduced as substantive evidence even if party witness is available at trial.) This is in addition to Rule 30(b)(6) deposition testimony, which the adverse party may also use for any purpose.

The proper time to consider the admissibility of deposition testimony is at trial. If Viskase has a problem with Grace's use of deposition testimony, Viskase may object. The court may then properly

decide the issue in the context of the trial. Viskase's motion is denied.

### (5) Motion to exclude evidence contrary to Grace's admissions made during its Rule 30(b)(6) depositions.

Viskase argues that Grace is bound by its Rule 30(b)(6) deposition testimony as a matter of law. On this basis, Viskase moves to preclude Grace from introducing any evidence that is contrary to statements made in its Rule 30(b)(6) depositions.

Once again, Viskase misconstrues the law. It is true that a corporation is "bound" by its Rule 30(b)(6) testimony, in the same sense that any individual deposed under Rule 30(b)(1) would be " bound" by his or her testimony. All this means is that the witness has committed to a position at a particular point in time. It does not mean that the witness has made a judicial admission that formally and finally decides an issue. Deposition testimony is simply evidence, nothing more. Evidence may be explained or contradicted. Judicial admissions, on the other hand, may not be contradicted. *Brown & Root, Inc. v. American Home Assur. Co.,* 353 F.2d 113 (5th Cir.1965), *cert. denied,* 384 U.S. 943 (1966). Viskase ignores the differences between evidentiary testimony and judicial admissions.[FN1]

If a Grace trial witness makes a statement that contradicts a position previously taken in a Rule 30(b)(6) deposition, then Viskase may impeach that witness with the prior inconsistent statement. Viskase's motion is denied.

### (6) Motion to exclude evidence of validity or infringement of any patent claim other than those agreed as representative

In the final pretrial order of September 24, 1991, the parties agreed that claims 1, 2, and 7 of the Ferguson patent are representative of the claims at issue in this suit. On this basis, Viskase argues that Grace is formally committed to presenting evidence only on claims 1, 2, and 7 only. Thus, Viskase seeks to exclude all evidence regarding any patent

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                    Page 3

Not Reported in F.Supp., 1991 WL 211647 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

claim other than these three "representative" claims.

**\*3** Again, Viskase attempts to confuse the issue. Grace agreed that three of its patent claims are " representative" o f the numerous patent claims that Grace has consistently maintained throughout the litigation. This does not mean that Grace agreed that these three claims are *exclusive.* The stipulation is clearly not preclusive in nature. Viskase will not now be permitted to bar most of Grace's claims by its strained reading of the pretrial order and of the law.[FN2] Accordingly, Viskase's motion is denied.

### (7) Motion to exclude as evidence of willfulness Viskase's activities before the issuance of the Ferguson patent

The issue of Viskase's willfulness in copying the Ferguson patent is an important issue in the infringement trial. However, a party generally cannot be held liable for willfully infringing an unissued patent. *Gustafson, Inc. v. Intersystems Industrial Products, Inc.,* 897 F.2d 508, 510 (Fed.Cir.1990). Viskase concludes from this legal principle that all evidence regarding Viskase's alleged activities prior to the issue of the Ferguson patent is irrelevant, and thus should be excluded.

Viskase's conclusion is baseless. *Gustafson* does not establish a *per se* rule that willful infringement may never be found when manufacture of the accused device began prior to the issuance of a patent. *Id.* Instead, courts must look to the totality of the circumstances in determining willful infringement. *Id.; See also Central Soya Co. v. George A. Hormel & Co.,* 723 F.2d 1573, 1577 (Fed.Cir.1983). Application of the totality of circumstances test has led several courts to findings of willful infringement where the infringer began manufacturing before the issuance of the patent-in-suit. *See e.g. Kaufman Co. v. Lantech, Inc.,* 807 F.2d 970, 979 (Fed.Cir.1986); *Pacific Furniture Mfg. Co. v. Preview Furniture Corp.,* 800 F.2d 1111, 1114-15 n. 9 (Fed.Cir.1986).

The proper time to consider the relevance of evidence is at trial. Accordingly, Viskase's motion

is denied.

### Grace's Motions in Limine

#### (1) Motion to exclude the testimony of Harri Brax, Roger Conant, and Evo Magrini

On August 29 and 30, 1991, Viskase identified Harri Brax ("Brax"), Roger Conant ("Conant"), and Evo Magrini ("Magrini") as trial witnesses. Discovery closed on August 30, 1991. Grace moves to exclude the testimony of these three witnesses. Grace argues that Viskase's last-minute disclosure of these witnesses has prejudiced Grace's trial preparation.

However, Viskase has represented to the court that these three witnesses will testify only at the validity trial.[FN3] Therefore, Grace's motion to exclude Brax, Conant, and Magrini is denied as moot for purposes of the infringement trial. If necessary, Grace may renew its motion *in limine* to exclude these witnesses from the validity trial. In any event, Viskase shall not be permitted to call Brax, Conant or Magrini at the infringement trial.

#### (2) Motion to preclude evidence of Viskase's reliance on opinions of counsel

**\*4** In the infringement trial, Viskase plans to assert a defense of reliance on the opinions of counsel (" the advice of counsel defense") against Grace's claim of willful infringement. Grace moves to preclude Viskase from offering evidence in support of Viskase's advice of counsel defense.

Grace argues that despite several discovery requests, Viskase has produced only one opinion of counsel, while asserting attorney-client privilege for other documents relevant to the advice of counsel defense. According to Grace, the assertion of the advice of counsel defense and the production of one opinion of counsel effectively waives any attorney-client privilege regarding documents relevant to this defense. On this point, Grace is correct. *Abbott Laboratories v. Baxter Travenol*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                      Page 4

Not Reported in F.Supp., 1991 WL 211647 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

*Laboratories, Inc.,* 676 F.Supp. 831, 832-833 (N.D.Ill.1987) (alleged infringer relying on advice of counsel defense must waive attorney-client privilege as to all relevant subject matter). Grace argues that since Viskase has resisted production of documents regarding its advice of counsel defense, Viskase should be precluded from asserting this defense at trial. In the alternative, Grace moves that the court compel Viskase to produce all documents relevant to the advice of counsel defense.

Grace's motion *in limine* is procedurally improper. If Grace contends that Viskase has wrongfully resisted discovery, then Grace should have filed a motion to compel.[FN4] Instead of utilizing the proper procedures to compel discovery, Grace waited until after discovery closed to file this motion *in limine* to preclude Viskase's advice of counsel defense. Alternatively, Grace attempts to turn this motion *in limine* into a belated motion to compel. This is not acceptable. By failing to file a motion to compel, Grace chose to take an all-or-nothing approach with this motion *in limine*. Since Grace cannot have it all, Grace gets nothing. *See Droughn v. FMC Corp.,* 74 F.R.D. 639, 642 (E.D.Pa.1977). Accordingly, Grace's motion is denied.[FN5]

### CONCLUSION

Viskase's motion *in limine* to exclude the testimony of Donald W. Banner is granted. Viskase's six other motions *in limine* are denied. Both of Grace's motions *in limine* are denied.

FN1. None of the cases cited by Viskase support its position. All of these cases use the term "binding" in the same sense described above. *Clayton Sanders v. Circle K. Corp.,* 137 F.R.D. 292 (D.Ariz.1991) (a corporation cannot be compelled to designate a witness under Rule 30(b)(6) if that witness lacks authority to bind the corporation); *Poitain Tower Cranes, Inc. v. Capitol Tower Cranes, Inc.,* 892 F.2d 74 (4th Cir.1989) (affirmed summary judgment against

corporation based upon uncontroverted Rule 30(b)(6) deposition statements); *Ierardi v. Lorillard, Inc.,* No. 90-7049, slip op., 1991 WL 158911, 1991 U.S.Dist. LEXIS 1187 (E.D.Pa. Aug. 20, 1991) (corporation has duty to prepare Rule 30(b)(6) designee to give binding answers, rather than allow designee to profess ignorance until trial); *McDevitt & Street Co. v. Marriott Corp.,* 713 F.Supp. 906 (E.D.Va.1989) (similar to *Ierardi* ).

FN2. Viskase's only cited authority, *Technitrol, Inc. v. Digital Equipment Corp.,* 62 F.R.D. 91 (N.D.Ill.1973), is not on point. *Technitrol* involves a plaintiff that *expressly* agreed to be bound by the determination of five selected claims out of the twenty-four patent claims originally brought.

FN3. Final Pretrial Order, vol. II, tab D2, p. 2. *See also* Viskase's second and third supplemental responses to interrogatory no. 19. These are marked as Attachments B and C in Viskase's response to Grace's motion *in limine*.

FN4. Not surprisingly, all of the relevant cases relied upon by Grace involve motions to compel, not a motion *in limine*. *Abbott Laboratories,* 676 F.Supp. at 831; *Baxter Travenol Laboratories, Inc. v. Abbott Laboratories,* 1987 WL 10988, 1987 U.S. Dist LEXIS 10324 (N.D.Ill. May 15, 1987); *Antonious v. Wilson Sporting Goods Co.,* 1990 WL 106530, U.S. Dist. LEXIS 8359 (N.D.Ill. July 6, 1990).

FN5. In Viskase's response to Grace's motion, Viskase requests that the court *sua sponte* dismiss Grace's willful infringement claim. Apparently, Viskase is attempting to turn its response to Grace's motion *in limine* into a motion for summary judgment. This is also procedurally improper. The court shall decide the willful infringement issue based upon the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                      Page 5

Not Reported in F.Supp., 1991 WL 211647 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**


   evidence presented at trial. Viskase's
   request is denied.

N.D.Ill.,1991.

W.R. Grace & Co. v. Viskase Corp.

Not Reported in F.Supp., 1991 WL 211647
(N.D.Ill.)


Briefs and Other Related Documents (Back to top)

• 1:90cv05383 (Docket) (Sep. 14, 1990)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT G



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2106583 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

**H**
Briefs and Other Related Documents
Syngenta Seeds, Inc. v. Monsanto
Co.D.Del.,2004.Only the Westlaw citation is
currently available.
United States District Court,D. Delaware.
SYNGENTA SEEDS, INC., Plaintiff,
v.
MONSANTO CO., Dekalb Genetics Corp., Pioneer
Hibred International, Inc., Dow Agrosciences, LLC,
and Mycogen Plant Science, Inc. and Agrigenetics,
Inc., collectively d.b.a. Mycogen Seeds, Defendants.
**No. Civ.02-1331-SLR.**

Sept. 8, 2004.

Paul M. Lukoff, Prickett, Jones & Elliott,
Wilmington, DE, for Plaintiff.
Richard L. Horwitz, Potter Anderson & Corroon,
LLP, Wilmington, DE, for Defendants.

MEMORANDUM ORDER
ROBINSON, J.

I. INTRODUCTION

*1 On July 25, 2002, plaintiff Syngenta Seeds, Inc.,
filed a complaint alleging defendants infringed three
of its patents. (D.I.1) Discovery in the action
concluded on July 14, 2004, and the case is scheduled
for a jury trial commencing on November 29, 2004.
(D.I.228) Before me is plaintiff's motion to exclude
some of defendants' expert reports. (D.I.220)

II. BACKGROUND

In response to plaintiff's claims, defendants argue,
among other things, that plaintiff's patents are invalid
due to double patenting, failure to disclose pending
applications during interference proceedings and
inequitable conduct.

With respect to the motion at issue, plaintiff claims
that defendants' experts, John T. Goolkasian, Esq.,
Martin J. Adelman, Esq., Gerald Bjorge, Esq. and Dr.
Joachim Messing, made conclusions of law and
discussed general patent practices and procedures.
Defendants assert that in this complicated case the
experts are required to understand their defenses. In

the alternative, the defendants claim their experts will
not testify to all the issues referred to by the expert
reports, especially those issues of patent procedure
that the court finds would not be helpful to the finder
of fact.

Mr. Adelman is the expert for Dow AgroSciences,
Mycogen Plant Science and Agrigentics. (D.I. 222 at
A048) Mr. Borjge issued an expert report for Pioneer
Hi-Bred International, Inc. (*Id.* at A011) Mr.
Goolkasian is testifying for Monsanto and Dekalb.
(*Id.* at A062) All three are lawyers with significant
experience in patent law and the United States Patent
and Trademark Office ("PTO"). (Id. at A011-A013,
A048, A063-A066) All have a technical background
as well. (*Id.* at A011, A063)

The reports at issue provide a general overview of
patent law and the PTO. Each discusses specific PTO
procedures with respect to continuing patent
applications, double patenting and interference. (*Id.*
at A013-A018, A045, A049-A052, A066-A071,
A073-A077, A133-A135) Each expert discusses the
prosecution history of the three patents at issue and
the role prior history played in the 10 years of
prosecution. (*Id.* at A018-A029, A052-A060, A077-
A118) In some instances, the experts draw
conclusions from the prosecution record, such as, "it
appears that both Drs. Koziel and Evola had a duty to
tell the patent office about either Dr. Fowler's Patent
Applications [sic], and did not comply with that
duty." (*Id.* at A118)

Dr. Messing received an M.S. degree in Pharmacy
from the Free University of Berlin, and a doctorate
degree from the Ludwig Maximilian University of
Munich. (*Id.* at A140) He is a member of the Rutgers
faculty, and has founded both Rutger's Department of
Molecular Biology and Biochemistry, and its
Department of Genetics. (Id.) Section VII of Dr.
Messing's expert report, entitled "All of the Patent
Claims are Unenforceable Due to the Inequitable
Conduct of Syngenta and Its Counsel," discusses the
PTO's policy of candor and its application to the
plaintiff's duty to disclose certain prior art. [FN1] (*Id.* at
A142) In part A of this section, Dr. Messing
concludes that the plaintiff is not entitled to the
conception date cited in the three patents. (Id. at
A156) In the other parts of Section VII, he concludes
that plaintiff did know, or at least should have
known, that it was failing to disclose necessary

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 2
Not Reported in F.Supp.2d, 2004 WL 2106583 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

information to the PTO. (Id. at A157-A164)

> FN1. Of course, any claims of inequitable
> conduct will be presented in a bench trial,
> further obviating the need for legal experts.

### III. DISCUSSION

**\*2** I have issued guidelines for patent litigation that
explicitly state, "expert testimony from attorneys
regarding patent practice and procedure is not
required and will not be permitted except in the case
of extraordinary circumstances." [FN2] (D.I. 222 at
A001) In all patent cases tried before me, the jury is
shown a Federal Judicial Center video about patent
law, PTO policies and procedures. I have determined
that this video is a sufficient basis for instructing
jurors. I am not convinced that additional information
about patent law is required in this case. Therefore,
pursuant to this court's guidelines on legal testimony
in patent cases, the expert opinions challenged by the
plaintiff are excluded.

> FN2. These guidelines are also available at
> http:// www.ded.uscourts.gov/SLRmain.htm.

### IV. CONCLUSION

Therefore, at Wilmington this 8th day of September,
2004;

IT IS ORDERED that plaintiff's motion to exclude
(D.I.220) is granted.

D.Del.,2004.
Syngenta Seeds, Inc. v. Monsanto Co.
Not Reported in F.Supp.2d, 2004 WL 2106583
(D.Del.)

Briefs and Other Related Documents (Back to top)

• 2005 WL 2385483 (Trial Motion, Memorandum
and Affidavit) Reply Memorandum in Support of
Defendants' Consolidated Renewed Motion for
Judgment as a Matter of Law (Jul. 12, 2005) Original
Image of this Document (PDF)
• 2005 WL 2385625 (Trial Motion, Memorandum
and Affidavit) Syngenta Seeds, Inc's Reply
Memorandum in Support of its Renewed Motions for
Judgment as A Matter of Law, or in the Alternative,
for A New Trial (Jul. 12, 2005) Original Image of
this Document (PDF)

• 2005 WL 2385626 (Trial Motion, Memorandum
and Affidavit) Defendants' Monsanto Company and
Dekalb Genetics Corp.'s Post-Trial Reply Brief
Regarding Inequitable Conduct (Jul. 12, 2005)
Original Image of this Document (PDF)
• 2005 WL 2385627 (Trial Motion, Memorandum
and Affidavit) Defendants Monsanto Co. and Dekalb
Genetics Corp.'s Proposed Rebuttal Findings of Fact
and Conclusions of Law Regarding Inequitable
Conduct Defenses (Jul. 12, 2005) Original Image of
this Document (PDF)
• 1:02cv01331 (Docket) (Jul. 25, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.