IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SMITH KLINE & FRENCH LABORATORIES LIMITED and SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE,<br><br>Plaintiffs,<br><br>v.<br><br>TEVA PHARMACEUTICALS USA, INC.,<br><br>Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **PUBLIC VERSION**<br><br><br>Civil Action No. 05-197-GMS |

**PLAINTIFF GLAXOSMITHKLINE'S OPPOSITION TO DEFENDANT'S MOTIONS *IN LIMINE* NO. 3 TO LIMIT EVIDENCE AND ARGUMENT REGARDING THE ALLEGED INVENTION OF THE PATENTS-IN-SUIT AND NO. 4 TO EXCLUDE EVIDENCE AND TESTIMONY ON PATENT PROSECUTION**

Patricia Smink Rogowski (#2632)
CONNOLLY BOVE LODGE & HUTZ LLP
1007 North Orange Street
Wilmington, DE 19801
Phone: (302) 658-9141
*Attorneys for Plaintiffs*

October 30, 2006

OF COUNSEL
William G. McElwain
Henry N. Wixon
Amy K. Wigmore
Michael E. Gordon
Mark L. Rienzi
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
Phone: (202) 663-6000

William F. Lee
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA  02109
Phone:  (617) 526-6000

## TABLE OF CONTENTS

Page

I.   SUMMARY OF ARGUMENT..............................................................2

    A.   The Court Should Deny Teva's Motion in Limine No. 3........................2

    B.   The Court Should Deny Teva's Motion in Limine No. 4........................3

II.  BACKGROUND.......................................................................4

    A.   Teva's Challenge to the Validity of the Patents-in-Suit........................4

    B.   The Course of Fact Discovery....................................................5

III. ARGUMENT..........................................................................6

    A.   Teva's Motion Mischaracterizes the Inventors' Deposition Testimony.......6

        1.   The '808 Patent and Mr. Gallagher's Testimony........................8

        2.   The '860 Patent and Dr. Owen's Testimony.............................10

    B.   GSK's Invocation Of Attorney-Client Privilege Was Proper...................12

    C.   GSK Responded Appropriately to Teva's Discovery Requests.................13

    D.   This District's Precedent Supports GSK's Invocation of
        Attorney-Client Privilege........................................................15

IV.  CONCLUSION.......................................................................17

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Atlas Powder Co. v. E.I. du Pont de Nemours and Co.,*
    750 F.2d 1569 (Fed. Cir. 1984)................................................................7

*In re Borkowski,*
    422 F.2d 904 (C.C.P.A. 1970)................................................................7

*Burlington Indus. v. Dayco Corp.,*
    849 F.2d 1418 (Fed. Cir. 1988)................................................................2

*Enzo Biochem, Inc. v. Gen-Probe Inc.,*
    323 F.3d 956 (Fed. Cir. 2002)................................................................7

*In re Fisher,*
    427 F.2d 833 (C.C.P.A. 1970)................................................................7

*Ex parte Forman,*
    230 USPQ 546 (B.P.A.I. 1986)................................................................7

*Manville Sales Corp. v. Paramount Sys., Inc.,*
    917 F.2d 544 (Fed. Cir. 1990)................................................................6

*Tracinda Corp. v. DaimlerChrysler AG,*
    362 F. Supp. 2d 487 (D. Del. 2005)................................................15, 16

*Utter v. Hiraga,*
    845 F.2d 993 (Fed. Cir. 1988)................................................................8

**Statutes**

35 U.S.C. § 112................................................................7

**Other References**

Irving Kayton, Kayton on Patents (2d ed. 1983)................................................................7

MPEP § 2164.02 (8th ed., rev. Oct. 2005)................................................................7

ii

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SMITH KLINE & FRENCH LABORATORIES LIMITED and SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE, | ) ) ) ) ) ) | **PUBLIC VERSION** |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 05-197-GMS |
| TEVA PHARMACEUTICALS USA, INC., | ) ) ) | |
| Defendant | ) ) ) | |

**PLAINTIFF GLAXOSMITHKLINE'S OPPOSITION TO DEFENDANT'S MOTIONS *IN LIMINE* NO. 3 TO LIMIT EVIDENCE AND ARGUMENT REGARDING THE ALLEGED INVENTION OF THE PATENTS-IN-SUIT AND NO. 4 TO EXCLUDE EVIDENCE AND TESTIMONY ON PATENT PROSECUTION**

Plaintiff GlaxoSmithKline ("GSK") respectfully submits this opposition to two motions *in limine* of Teva Pharmaceuticals, USA, Inc. ("Teva") seeking to preclude GSK from offering at trial evidence, testimony, and argument pertinent to Teva's belated charges of inequitable conduct.[1] Having fallen so far short of its burden of proof,[2] Teva now presumes to deny the Court the ability to hear and rule on the evidence and testimony at trial. Teva's tactic of bringing an eleventh-hour inequitable conduct claim that lacks merit and then seeking to bar GSK from

---

[1] Because the issues in Teva's Motions in Limine No. 3 and No. 4 and the relevant background overlap substantially, GSK is providing a combined response in the interest of efficiency.

**REDACTED**

presenting evidence in its defense illustrates the "plague" such charges rain on the patent system.[3/]

# I.  SUMMARY OF ARGUMENT

## A.  The Court Should Deny Teva's Motion in Limine No. 3.

The Court should deny Teva's motion to limit evidence and argument regarding the invention of the subject matter claimed in U.S. Patent No. 4,452,808 ("the '808 patent") and U.S. Patent No. 4,824,860 ("the '860 patent").

Not surprisingly, Teva cites no case law in support of its motion. Teva's motion, if granted, would amount to a sanction precluding GSK from presenting its case at trial. There would be no point in even putting GSK's inventors on the stand, because by Teva's motion they could not utter a word not found in their depositions. Yet Teva has made no argument, much less a showing, of any sanctionable conduct by GSK or GSK witnesses that would justify limiting GSK in such a manner. Indeed, Teva never even complained about the scope of GSK's discovery responses with respect to inventorship or brought a motion to compel further testimony or document production on that topic.

A party is, of course, free to use deposition testimony to impeach trial testimony it views as inconsistent, and the Court may consider this in determining how much weight to accord to witness testimony at trial. Teva's motion, to preclude GSK from "presenting evidence and argument regarding the alleged conception of the claims of the patents-in-suit beyond that evidence provided during fact discovery in its responses to Teva's contention interrogatories and Rule 30(b)(6) discovery," borders on the absurd.

---

[3/] *See Burlington Indus. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed. Cir. 1988) ("[T]he habit of charging inequitable conduct in almost every major patent case has become an absolute plague.").

Teva fails to note that the inventors' depositions, to which it now seeks to limit GSK, were taken before Teva amended its answer and counterclaims to allege inequitable conduct against those inventors with respect to patent claims not even asserted against Teva in this lawsuit. Teva further fails to acknowledge in its motion that GSK did supplement its answers to Teva's interrogatories and clearly did not waive any of its rights to present evidence at trial. To the extent that, in Teva's words, "basic principles of fairness" compel any result, those principles compel denial of Teva's motion.

**B.    The Court Should Deny Teva's Motion in Limine No. 4.**

The Court should deny Teva's motion to exclude evidence and testimony on patent prosecution. Teva's Motion *in Limine* No. 4 seeks to limit GSK from presenting evidence and argument regarding the prosecution of the '808 and '860 patents beyond the evidence provided during fact discovery. It is ironic that Teva now complains that GSK represented that it "had no corporate knowledge related to the prosecution of the '808 patent." Teva was dilatory in prosecuting this lawsuit, one result of which was that the retired GSK attorney who drafted and prosecuted the '808 patent more than 20 years ago, and whose name was known to Teva even before this lawsuit was filed, passed away as Teva inexplicably waited until the very end of the discovery period to seek discovery regarding that prosecution.

Teva charges that GSK "repeatedly invoked the attorney-client privilege" during depositions in "refusing to provide testimony." This charge is baseless, reflecting instead the inability of defendant's counsel to pose questions designed to elicit facts rather than privileged communications and ignoring the clear and proper instructions given by GSK's counsel to witnesses to answer as to facts if that could be done without waiving privilege. Notably, Teva never challenged GSK's privilege instructions or filed any motions seeking to compel further

testimony on patent prosecution. GSK intends to maintain the privilege with respect to these attorney-client communications in accordance with the Federal Rules of Civil Procedure, and that does not in the least justify Teva's motion. Moreover, precedent makes clear that, should Teva at trial use any evidence in an incomplete or misleading manner, GSK is entitled to correct that, even if that means relying on information previously withheld as privileged. The preclusion order Teva seeks would deprive GSK of that opportunity.

Therefore, GSK should not be precluded from introducing evidence or argument on the topic of the prosecution of either the '808 patent or the '860 patent.

## II.    BACKGROUND

GSK initiated this lawsuit on April 6, 2005, alleging infringement by Teva of two GSK-owned patents relating to ropinirole hydrochloride: United States Patent No. 4,452,808 ("the '808 patent") which claims certain compounds and pharmaceutical compositions including ropinirole hydrochloride; and United States Patent No. 4,824,860 ("the '860 patent") which claims methods of treatment of Parkinson's Disease with compounds including ropinirole hydrochloride. GSK developed, manufactures, and sells REQUIP®, a commercial formulation of ropinirole hydrochloride that has been approved by the FDA for treatment of Parkinson's Disease and Restless Legs Syndrome. GSK filed suit after receipt of a February 21, 2005 letter from Teva ("the Teva Notice Letter") notifying GSK that Teva had submitted an Abbreviated New Drug Application ("ANDA") containing a Paragraph IV Certification to the FDA for approval to engage in the commercial manufacture, use, offer for sale, and sale of generic ropinirole hydrochloride tablets prior to the expiration of the '808 and '860 patents.

### A.    Teva's Challenge to the Validity of the Patents-in-Suit

In considering the present motions *in limine*, the history and timing of Teva's defenses must be borne in mind, because Teva failed to introduce its inequitable conduct charges against

4

GSK until after the close of fact discovery. Prior the Court's Order granting Teva's motion to amend its answer and counterclaims to add claims of inequitable conduct to this patent infringement action, this litigation had been focused on a narrow challenge by Teva to the validity of the patents-in-suit. Specifically, and consistent with its ANDA filing and the Teva Notice Letter, Teva articulated in its October 2005 interrogatory responses a single validity challenge to each patent – an allegation that certain claims of the patents are invalid as obvious under 35 U.S.C. § 103 in light of allegedly relevant prior art.[4] In April 2006, Teva supplemented its interrogatory responses but made no mention of the inequitable conduct claims and defenses it thereafter raised.[5] In the spring of 2006, the parties agreed to narrow the claims at issue. The parties reached this agreement in principle in May and ultimately submitted a Joint Stipulation and Proposed Order to the Court on June 23, 2006. The Court approved the Order on June 26, 2006. [D.I. 61] In the Order, GSK stipulated that the only claims asserted by GSK to be infringed by Teva are claim 5 of the '808 patent and claim 3 of the '860 patent (the "Asserted Claims"). The Asserted Claims are directed specifically to ropinirole hydrochloride, in contrast to some other claims that cover a broader genus of compounds including ropinirole hydrochloride. Teva, in turn, stipulated that it would not raise any non-infringement defense with respect to the Asserted Claims. Teva thereafter amended its answer and counterclaims to include inequitable conduct claims challenging the validity of claims the parties had mutually agreed to drop from the case. [D.I. 87] (July 31, 2006).

---

[4] See Teva's Responses to GSK's First Set of Interrogatories, Responses to Interrogatory Nos. 3, 4 (Oct. 3, 2005) (Ex. 1).

[5] See Teva's Second Supplemental Responses to GSK's First Set of Interrogatories, Response to Interrogatory No. 4 (Apr. 10, 2006) (Ex. 2).

### B.    The Course of Fact Discovery

Following an exchange of initial disclosures in August 2005, the parties exchanged interrogatories and document requests in September 2005. Written discovery responses were served in October 2005 and later supplemented in 2006.[6/] In response to Teva's broad document requests, GSK gathered, reviewed, and produced a large volume of documents. GSK's document production, which began in 2005, exceeds 400,000 pages.

### III.    ARGUMENT

### A.    Teva's Motion Mischaracterizes the Inventors' Deposition Testimony.

Teva's Motion *in Limine No. 3* focuses almost entirely on facts and circumstances about the conception and reduction to practice of the genus claims of the '808 and '860 patents.[7/] Teva argues that GSK should be limited entirely to deposition testimony of the inventors (as incorrectly characterized by Teva in its motion) to support Teva's charge of inequitable conduct. Teva does not in its motion even allude to any evidence satisfying its high burden of demonstrating by clear and convincing evidence an intent to deceive, which is "a separate and essential component of inequitable conduct." *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 552 (Fed. Cir. 1990).

The arguments presented by Teva in its motion *in limine* reflect a basic misunderstanding of what it takes to claim a generic formula and the manner in which patent claims are drafted. In particular, there is no rule limiting patents to the precise product or method developed by an inventor. Patents routinely seek protection going beyond the specific work of the named inventor. If such protection could not be obtained, the value of patents would be severely compromised. The understood role of the patent attorney is to obtain claims as broad as possible

---

[6/] Each party served and responded to additional written discovery requests in the spring of 2006.

[7/] Teva also attacks claims 8-12 of the '808 patent, unasserted by GSK in this action, but does not include these claims in its motion *in limine* for preclusion.

under the patent statute consistent with what is described in the patent specification. Irving

Kayton, Kayton on Patents at 3-1 (2d ed. 1983) ("During the prosecution stage the drafter will

naturally attempt to write one claim that is as broad as the prior art of which he is aware will

permit and that is supported by the disclosure in his patent application").

In seeking such claims, patent lawyers are guided by well-established principles

concerning when an inventor is entitled to a generic claim. For example,

- The scope of enablement must only bear a "reasonable correlation" to the scope of the claims. *In re Fisher*, 427 F.2d 833, 839 (C.C.P.A. 1970). As long as the specification discloses at least one method for making and using the claimed invention that bears a reasonable correlation to the entire scope of the claim, then the enablement requirement of 35 U.S.C. § 112 is satisfied. *In re Fisher*, 427 F.2d at 839.

- "Although one may envision a general concept, what one usually does first in making or isolating a chemical or chemical-related invention is to obtain a specific material or materials. One then broadens the concept to extend it as far as one envisions that other materials will have the same utility and can be similarly made. That broadened concept becomes the genus in a patent application that is both the broadest statement constituting a written description and usually claim 1." *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956, 974 (Fed. Cir. 2002) (Lourie, J., concurring in decision to deny rehearing *en banc*).

- The number and variety of examples are irrelevant if the disclosure is "enabling" and sets forth the "best mode contemplated." *In re Borkowski*, 422 F.2d 904, 953 (C.C.P.A. 1970). A disclosure is enabling even if a considerable amount of experimentation is involved, if it is merely routine. *Ex parte Forman*, 230 USPQ 546 (B.P.A.I. 1986).

- "The presence of only one working example should never be the sole reason for rejecting claims as being broader than the enabling disclosure, even though it is a factor to be considered along with all the other factors." MPEP § 2164.02 at 2100-195 (8th ed., rev. Oct. 2005).

- The presence of inoperative embodiments within the scope of a claim does not necessarily render a claim nonenabled. *Atlas*

*Powder Co. v. E.I. du Pont de Nemours & Co.*, 750 F.2d 1569, 1577 (Fed. Cir. 1984).

- Every species need not be described in order that a generic claim meet the written description requirement. "A specification may, within the meaning of 35 U.S.C. §112 ¶ 1, contain a written description of a broadly claimed invention without describing all species that claim encompasses." *Utter v. Hiraga*, 845 F.2d 993, 998 (Fed. Cir. 1988).

1.    <u>The '808 Patent and Mr. Gallagher's Testimony</u>

Upon the discovery of ropinirole, Mr. Gallagher was entitled to a claim, commensurate with the scope of his discovery, without regard to how many embodiments of the invention he had synthesized or whether or not some of the embodiments within a generic claim might be inoperative. An appropriately broad claim was drafted by a patent attorney at GSK and prosecuted with success in the United States Patent and Trademark Office ("USPTO"). This utterly ordinary process of obtaining patent protection does not lead to an inference that there was some unnamed inventor responsible for the generic claim, much less does it support a plausible claim of inequitable conduct. Instead, the facts surrounding the patenting of Mr. Gallagher's invention reflect the way patent protection is routinely obtained.

**REDACTED**

The USPTO allowed claim 1 with this fact clearly before it.

8

REDACTED

REDACTED

### B.    The '860 Patent and Dr. Owen's Testimony

With respect to the '860 patent, Teva implies in its motion that Dr. Owen, the named inventor, committed inequitable conduct merely by claiming a genus broader than ropinirole, and Teva's amended answer and counterclaim adds to this misguided inventorship argument a second argument suggesting that Professors Brenda Costall and R.J. Naylor of the University of Bradford should have been named inventors based on the non-sequitur that they authored the first document describing the use of ropinirole as an anti-Parkinson's agent after conducting tests commissioned by Dr. Owen.

As with the '808 patent, there is no basis for Teva's suggestion that an inventor of a chemical compound or a method of using such a compound cannot claim a genus covering the compound to the fullest extent supported by the patent specification.  The basis of patentability of the '860 patent was that the indolone derivatives described in the '808 patent surprisingly showed an anti-Parkinson's effect.  *See* '860 Patent, col. 1, lines 48-58 (Ex. 4).

### REDACTED

Naturally enough in light of the nature of the invention and the prior art (which included the '808 patent), the application for the '860 patent presented claims that generally correspond to the compounds described in the '808 patent for use as an anti-Parkinson's treatment.  Notwithstanding the lack of an express disclosure of test results using specific compounds other than ropinirole, the patent office agreed that Dr. Owen was entitled to claim 1 and issued the patent.

**REDACTED**

Furthermore, as with the '808 patent, it can "hardly be inequitable conduct" when, as here, the alleged omitted co-inventor does not claim to be an inventor. *Pro-Mold*, 75 F.3d at 1576.

**B.**    <u>GSK's Invocation Of Attorney-Client Privilege Was Proper.</u>

The testimony of the 30(b)(6) witnesses offered by GSK regarding the prosecution and preparation of the '808 and the '860 patents was complete.  GSK only invoked the attorney-client privilege when counsel for Teva insisted on asking questions that were directed at the contents of a communication between an attorney and the client.

**REDACTED**

Thus,  what Teva was asking about during the deposition of the GSK 30(b)(6) witnesses was not their factual knowledge, as it had every right to do, but rather the substance of attorney-client communications.

C.    GSK Responded Appropriately to Teva's Discovery Requests.

Teva complains that GSK "provided minimal information regarding conception and reduction to practice of the claims" and about GSK's designation of the inventors of the '808 and '860 patents in response to Teva's Rule 30(b)(6) deposition notice. Neither complaint is well-founded, and neither aids Teva's motion.

GSK provided Teva with facts concerning the inventions described in the '808 patent in the normal course of discovery. In September 2005 interrogatories, Teva asked GSK to "identify the alleged inventor(s) of the subject matter of the claim, and describe with particularity the facts and circumstances surrounding any alleged conception, reduction to practice, and/or claim to diligence from conception to reduction to practice." In its October 3, 2005 response, GSK clearly described the conception and reduction to practice of the inventions claimed in the '808 patent, stating in part:

> At least as early as 1982, Gallagher conceived of the idea of removing the *para*-OH group from the aromatic ring of 4-aminoalkyl-7-hydroxy-2(3H)-indolone compounds. At least as early as 1982, Gallagher synthesized ropinirole, which lacks the *para*-OH group of the corresponding 4-aminoalkyl-7-hydroxy-2(3H)-indolone compound, thereby reducing to practice the invention claimed in the patent.

Plaintiff GSK's Responses to Defendant's First Set of Interrogatories, Response to Interrogatory No. 3 (Oct. 3, 2005) (Ex. 7). GSK also provided to Teva facts related to its claims about the inventorship of the '860 patent. GSK's October 2005 interrogatory responses state in part:

> In 1985, the development work relating to ropinirole was transferred to the Welwyn Garden City office of SK&F. Dr. Owen was the Director of the Pharmacology Division at the time of the transfer and became a project team member for ropinirole. Based on tests of ropinirole conducted under his direction, Dr. Owen determined that ropinirole caused central nervous system ("CNS") activity and conceived of using ropinirole to treat central nervous

13

> system disorders including Parkinson's disease. Further CNS
> evaluations performed by SK&F in Welwyn and by researchers at
> the University of Bradford engaged by SK&F further demonstrated
> ropinirole's potential as an anti-Parkinson's agent.

Plaintiff GSK's Responses to Defendant's First Set of Interrogatories, Response to Interrogatory

No. 3 (Ex. 7). GSK supplemented its responses to Teva's interrogatories twice more during the

course of fact discovery in accordance with the Federal Rules of Civil Procedure.[8] GSK further

produced to Teva documents responsive to Teva's broad requests for the production of

documents and directed Teva to subsets of those documents, which Teva apparently did not

bother to review, but which it now contends GSK should be precluded from presenting at trial.

Teva never complained about or brought a motion to compel concerning the sufficiency of

GSK's discovery responses regarding inventorship.

Moreover, Teva delayed in seeking testimony regarding the prosecution of the patents-in-

suit by GSK's patent department. Teva had early notice of the individuals within GSK's patent

department involved in the prosecution of the patents-in-suit. GSK's October 3, 2005

interrogatory responses provided Teva with the names of persons involved in drafting the patent

application for the '808 patent (William Edgerton) and the '860 patent (Vincent Fabiano and

Peter Giddings).[9] Nonetheless, Teva waited until the final days of the fact discovery period to

seek depositions regarding patent prosecution.

- Vincent Fabiano. Teva did not request the deposition of Vincent
  Fabiano.

---

[8] *See* Plaintiff GSK's Second Supplemental Response to Defendant's First Set of Interrogatories (Jun. 29, 2006) (Ex. 8); Plaintiff GSK's Third Supplemental Response to Defendant's First Set of Interrogatories (Aug. 16, 1006) (Ex. 9).

[9] *See* Plaintiff GSK's Responses to Defendant's First Set of Interrogatories, Responses to Interrogatory Nos. 2, 9 (Oct. 3, 2005) (Ex. 7). In its responses, GSK also noted that additional individuals may be identified from documents to be produced by GSK. Teva could have identified relevant individuals involved in patent prosecution even before GSK's October 2005 discovery responses, as names of relevant individuals are listed on the patents themselves as well as in the publicly available patent prosecution files.

- William Edgerton. Teva did not request the deposition of William Edgerton until *May 24*, one week before the close of fact discovery. After receiving this request, GSK attempted to contact Mr. Edgerton but learned that he had passed away in April.

- Peter Giddings. Teva first requested the deposition of Peter Giddings on *May 23*. Teva noticed this deposition for May 31. Mr. Giddings, who is a UK resident, was not available on that date, but GSK nonetheless agreed to make Mr. Giddings available for deposition in the United States after the May 31 fact discovery deadline.

- Rule 30(b)(6) Deposition of GSK regarding patent prosecution issues. Teva did not request a Rule 30(b)(6) deposition of GSK regarding patent prosecution issues until *May 19*.[10]

Teva was dilatory in noticing these depositions regarding patent prosecution issues and should not now be heard to complain about a lack of "additional or substantially different information." Teva's attempt to preclude GSK from "presenting evidence and argument" at trial on this basis should be rejected.

### D.   This District's Precedent Supports GSK's Invocation of Attorney-Client Privilege.

GSK does not intend to waive its privilege on any confidential communications surrounding the '808 and the '860 patents, but should it be necessary to do so to correct mischaracterizations or inaccuracies proffered by Teva, the courts in this district have held that GSK is allowed the opportunity to correct the record.

GSK is not, as Teva contends, using "the attorney client privilege as both a sword and a shield." *Tracinda Corp. v. DaimlerChrysler AG*, 362 F. Supp. 2d 487, 513 (D. Del. 2005). Indeed, as noted above, GSK does not at present intend to waive privilege in this matter.

---

[10] Teva served a Rule 30(b)(6) notice to GSK after the close of business on Friday, May 19, 2006. *See* Letter from Corey Manley to Michael Gordon, enclosing deposition notices (May 19, 2006) (Ex. 10). GSK subsequently informed Teva on May 30 that GSK was not aware of any current GSK employees other than Mr. Giddings (who was already noticed for deposition) with relevant personal knowledge of the prosecution of the '808 and '860 patents. Therefore, GSK suggested that a Rule 30(b)(6) deposition on patent prosecution issues would be unnecessary because it would not yield information in addition to that already made available to Teva through the production of the relevant files and deposition of Mr. Giddings. *See* Letter from Michael Gordon to Charanjit Brahma (May 30, 2006) (Ex. 11).

Nevertheless, *Tracinda* makes clear that GSK should have the right to do so should Teva create a misleading impression at trial.

The factual context of *Tracinda* involved alleged securities violations in connection with the acquisition of Chrysler Corporation by Daimler-Benz AG. The plaintiff objected to testimony about legal advice given to the Chrysler board. *Id.* Tracinda argued that DaimlerChrysler invoked the attorney-client privilege with respect to that advice and at trial questioned two other witnesses about the communication. *Id.* at 513. DaimlerChrysler asserted that the privilege did not shield the advice from Tracinda because its designee was a member of the board and heard the advice directly at the board meetings. *Id.* Further, while DaimlerChrysler produced a redacted version of the minutes in the litigation to assert the privilege, Tracinda produced a non-redacted version. *Id.* DaimlerChrysler further contended that Tracinda, and not DaimlerChrysler, introduced the privileged communications at trial and did so in a "misleading way." *Id.* In response, DaimlerChrysler "put into evidence the complete advice of [the attorney] . . . in order to correct the misleading impression" created by the defendant. *Id.* The court in Tracinda recognized that the attorney-client privilege should not be used as a sword and a shield. *Id.* Nor should "a party . . . be permitted to use the privilege to shield information which it has deliberately chosen to use offensively." *Id.* The court held, however, that DaimlerChrysler did not use the privileged communication offensively, but rather it was Tracinda that used the information in an "incomplete and misleading" manner. *Id.* Furthermore, "[b]ecause Tracinda opened the door to [the attorney's] testimony and Defendants used it defensively to complete the record the court will overrule the objection." *Id.*

In the instant case, barring GSK from presenting evidence at trial on the prosecution of the patents at issue would be unfairly prejudicial. An order limiting GSK from putting on

16

evidence at trial would not allow it an opportunity to correct any incomplete or misleading evidence that Teva might proffer, and this is contrary to the holding of *Tracinda*. GSK is entitled to correct any inaccuracies in the record or misleading testimony that may be offered at trial.

In addition, GSK supplemented its written discovery responses after Teva's late amendment adding the inequitable conduct claims, it has not hidden anything from Teva or this court, and there is no reason to sanction GSK with a preclusion order. Therefore, both the principle of fairness and the holding of *Tracinda* compel that the preclusion order Teva seeks be denied.

## IV.  CONCLUSION

For the reasons set forth above, GSK respectfully requests that the Court deny Teva's Motions *in Limine* Nos. 3 and 4.   Granting Teva's motions would amount to a sanction against GSK, and Teva has made no showing of any sanctionable conduct by GSK or GSK witnesses that would justify such orders by this Court.   Accordingly, Teva's motions should be denied.

SMITH KLINE & FRENCH LABORATORIES
LIMITED AND SMITHKLINE BECHAM
CORPORATION, D/B/A GLAXOSMITHKLINE
Respectfully submitted,

*Patricia S Rogowski*

Patricia Smink Rogowski (#2632).
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building, 1107 North Orange Street
Wilmington, DE  19801
Phone: (302) 658-9141
Fax:    (302) 658-5614

17

OF COUNSEL
William F. Lee, Esq.
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Phone: (617) 526-6000


William G. McElwain, Esq.
Henry N. Wixon, Esq.
Amy K. Wigmore, Esq.
Michael E. Gordon, Esq.
Mark L. Rienzi, Esq.
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
Phone: (202) 663-6000
Fax:    (202) 663-6363

Dated: October 30, 2006

18

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SMITH KLINE & FRENCH LABORATORIES LIMITED and SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE, | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 05-197-GMS |
| v. | ) ) | |
| TEVA PHARMACEUTICALS USA, INC., | ) ) | |
| Defendant. | ) ) | |

**PROPOSED ORDER DENYING TEVA'S MOTION *IN LIMINE* NO. 3**

The Court, having considered Defendant Teva's Pharmaceuticals USA Inc.'s ("Teva")

Motion *In Limine* No. 3 to Limit Evidence and Argument Regarding the Alleged Invention of the

Patents-In-Suit and the response of Plaintiff Smith Kline & French Laboratories Limited and

SmithKline Beecham Corp, d/b/a/ GlaxoSmithKline ("GSK"), and all further arguments by the

parties, hereby ORDERS this _____ day of _____, 2006 that Teva's Motion is

DENIED.

_____
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SMITH KLINE & FRENCH          )
LABORATORIES LIMITED and      )
SMITHKLINE BEECHAM            )
CORPORATION d/b/a             )
GLAXOSMITHKLINE,              )
                              )
          Plaintiff,          )          Civil Action No. 05-197-GMS
                              )
v.                            )
                              )
TEVA PHARMACEUTICALS USA, INC., )
                              )
          Defendant.          )
                              )

## PROPOSED ORDER DENYING TEVA'S MOTION *IN LIMINE* NO. 4

The Court, having considered Defendant Teva's Pharmaceuticals USA Inc.'s ("Teva")

Motion *In Limine* No. 4 to Exclude Evidence and Testimony on Patent Prosecution and the

response of Plaintiff Smith Kline & French Laboratories Limited and SmithKline Beecham

Corp, d/b/a/ GlaxoSmithKline ("GSK"), and all further arguments by the parties, hereby

ORDERS this _____ day of _____, 2006 that Teva's Motion is DENIED.


_____
United States District Judge

## CERTIFICATE OF SERVICE

I, Patricia Smink Rogowski, hereby certify that on November 6, 2006 **Public Version of Plaintiff GlaxoSmithKline's Opposition to Defendant's Motions In Limine No. 3 To Limit Evidence and Argument Regarding the Alleged Invention of the Patents-in-Suit and No. 4 to Exclude Evidence and Testimony on Patent Prosecution** was filed with the Court Clerk using CM/ECF which will send notification of such filing(s) to Josy W. Ingersoll.

I hereby further certify that on November 6, 2006, I have also served this document on the attorneys of record at the following addresses as indicated:

**Via Hand Delivery**
Josy W. Ingersoll, Esq.
Young Conaway Stargatt & Taylor LLP
1000 West Street, 17th Floor
Wilmington, DE 19801

**Via Federal Express**
Stephen D. Dove, Esq.
Steven A. Engel, Esq.
Karen M. Robinson, Esq.
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, DC 20005-5793

Patricia Smink Rogowski (#2632)
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19801
(302) 658-9141
progowski@cblh.com

396460_9.DOC